ALCOHOL USE INVENTORY

INTERPRETIVE REPORT

Demographic Information

ID No:  1102390
Date:  24-OCT-90
Age:  19
Gender:  Female
Ethnic group:  Hispanic
Years of education:  7
Marital status:  Single
Employment status:  Unemployed
Employed during the last 6 months:  No
Usual occupation:  Other
Alcohol treatment in immediate family:  Yes
Age when drinking interfered with daily living:  Under 20
Treatment setting:  None
DSM-III-R code:
No. of previous inpatient treatments:  None
No. of previous outpatient treatments:  3-5

Duration and Frequency of Use of Alcohol
Duration and Frequency of Use of Alcohol

| Alcohol consumed: | Beer | Wine | Liquor |
|---|---|---|---|
| last 24 hr. period | 11-15 cans | | 1-3 drinks |
| usual 24 hr. period | 4-6 cans | | |
| most in 24 hr. period | 16+ cans | | |

No. of days/month alcohol used in past 3 months:  30
No. of days/month alcohol used when using alcohol most:  30

Reported Use and Problems With Drugs
Reported Use and Problems With Drugs

| Drugs | Use Over Past 12 Months | Problem With Recent Use |
|---|---|---|
| Caffeine | Some use | Moderate problem |
| Nicotine | Some use | Moderate problem |
| Alcohol | Very much use | Major problem |
| Marijuana/Hashish | Some use | Minor problem |
| Tranquilizers | No use | No use or no problem |
| Barbiturates | No use | No use or no problem |
| Amphetamines | No use | No use or no problem |
| Cocaine | Very much use | Major problem |
| Opiates | Very much use | Major problem |
| Hallucinogens | Much use | Moderate problem |

Copyright 1973, 1974, 1983, 1987, 1990, John L. Horn, Kenneth W. Wanberg, and F. Mark Foster, Denver, CO  U.S.A.  All Rights Reserved. Published by National Computer Systems, Inc., Minneapolis, MN.

001030

EX 60   990



```
              PROFILE REPORT FOR THE ALCOHOL USE INVENTORY                    2
ID Number:  1102390                                     Date:  24-OCT-90
                    No     Raw                    Decile Rank
                   Omit   Score    | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10|
_____
                                    |    |    |    |    |    |    |    |    |    |    |
PRIMARY SCALES                      |    |    |    |    |    |    |    |    |    |    |
PRIMARY SCALES                      |    |    |    |    |    |    |    |    |    |    |
                                    |    |    |    |    |    |    |    |    |    |    |
Benefits                            |    |    |    |    |    |    |    |    |    |    |
   1. SOCIALIM       0      8       | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX |    |
   2. MENTALIM       0      5       | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX |
   3. MANGMOOD       0      7       | XXXXXXXXXXXXXXXXXXXXXXXXXXXXX |    |    |
   4. MARICOPE       0      8       | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX |
---------------------------------------|---|---|---|---|---|---|---|---|---|---|
                                    |    |    |    |    |    |    |    |    |    |    |
Styles                              |    |    |    |    |    |    |    |    |    |    |
   5. GREGARUS       0      6       | XXXXXXXXXXXXXXXXXXXXXXXX |    |    |
   6. COMPULSV       0      7       | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX |
   7. SUSTAIND       0     10       | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX |
---------------------------------------|---|---|---|---|---|---|---|---|---|---|
                                    |    |    |    |    |    |    |    |    |    |    |
Consequences                        |    |    |    |    |    |    |    |    |    |    |
   8. LCONTROL       0     13       | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX |
   9. ROLEMALA       0      9       | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX |
  10. DELIRIUM       0      7       | XXXXXXXXXXXXXXXXXXXXXXXXXXXX |    |
  11. HANGOVER       0      8       | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX |
  12. MARIPROB       0      5       | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX |
---------------------------------------|---|---|---|---|---|---|---|---|---|---|
                                    |    |    |    |    |    |    |    |    |    |    |
Concerns and                        |    |    |    |    |    |    |    |    |    |    |
Acknowledgements                    |    |    |    |    |    |    |    |    |    |    |
  13. QUANTITY       0      3       | XXXXXXXXX |    |    |    |    |    |
  14. GUILTWOR       0      8       | XXXXXXXXXXXXXXXXXXXXXXXXX |    |    |
  15. HELPBEFR       0      0       | XXXXXXXXX |    |    |    |    |    |
  16. RECEPTIV       0     12       | X |    |    |    |    |    |    |    |
  17. AWARENES       0      9       | XXXXXXXXX |    |    |    |    |    |
---------------------------------------|---|---|---|---|---|---|---|---|---|---|
                                    |    |    |    |    |    |    |    |    |    |    |
SECOND ORDER                        |    |    |    |    |    |    |    |    |    |    |
SECOND ORDER                        |    |    |    |    |    |    |    |    |    |    |
FACTOR SCALES                       |    |    |    |    |    |    |    |    |    |    |
FACTOR SCALES                       |    |    |    |    |    |    |    |    |    |    |
                                    |    |    |    |    |    |    |    |    |    |    |
   A  ENHANCED      0     14       | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX |
   B  OBSESSED      0     16       | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX |
   C. DISRUPT1      0     21       | XXXXXXXXXXXXXXXXXXXX |    |    |    |
   D  DISRUPT2      0     11       | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX |    |
   E. ANXCONCN      0     20       | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX |
   F. RECPAWAR      0     21       | XXXXX |    |    |    |    |    |    |
---------------------------------------|---|---|---|---|---|---|---|---|---|---|
                                    |    |    |    |    |    |    |    |    |    |    |
GENERAL ALCOHOL                     |    |    |    |    |    |    |    |    |    |    |
INVOLVEMENT SCALE                   |    |    |    |    |    |    |    |    |    |    |
                                    |    |    |    |    |    |    |    |    |    |    |
   G. ALCINVOL      0     50       | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX |    |
                                    |    |    |    |    |    |    |    |    |    |    |
_____
                    No.    Raw     | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10|
                   Omit   Score
```

001032

ALCOHOL USE INVENTORY                              3

ID Number:  1102390                        Date:  24-OCT-90

The Client did not omit or double-mark any responses to the
administered items.

The following items were answered in a way that is often considered
to be critical for understanding extreme conditions or particular
circumstances.

| Item No. | Response | Critical Information |
|----------|----------|---------------------|

Duration of drinking

| 141 | D | Drank almost every day in recent months |
| 179 | C | Reports daily drinking over past year or more |
| 180 | B | Binges of several days |
| 66 | B | Alternates between heavy use and no use |

Disruption(s) in behavioral control

| 162 | B | Reports tendency to be physically harmful to others when drinking |
| 181 | B | Reports attempt at suicide when drinking |
| 199 | C | Have smashed/broken objects when drinking several times |
| 11 | D | Unemployed more than three months in past year due to drinking |

Disruption(s) in mentation

| 126 | B | Reports history of drinking-related confusion about time |

Perceptual withdrawal symptom(s)

| 31 | B | Reports history of drinking-related visual hallucinations |
| 50 | B | Reports history of drinking-related auditory hallucinations |
| 107 | B | Reports history of delirium tremens |
| 88 | B | Reports history of tactile hallucinations |

Physical withdrawal symptom(s)

| 32 | C | Reports having had shakes when sobering up |
| 89 | C | Reports history of drinking-related tachycardia |
| 165 | C | Reports history of chills or sweats when sobering up |
| 108 | C | Reports history of diaphoresis after drinking several times |

00103

EX 60   992

ALCOHOL USE INVENTORY                                    4

ID Number:  1102390                          Date:  24-OCT-90

Item No     Response    Critical Information

Physical problem(s) related to drinking or when sober

109          B           Reports history of coughing up blood
                         or blood in stools
52           B           Reports history of numbness or tingling
                         of hands, fingers, feet, toes more than
                         a couple of times for a day or more at a
                         time

001036

ALCOHOL USE INVENTORY                                        5

ID Number:  1102390                          Date:   24-OCT-90

This interpretive report is based on the Alcohol Use Inventory (AUI) and
provides hypotheses concerning an individual's use and misuse of alcohol.
This information should be considered confidential and should be made
available only to properly qualified persons.

Because the AUI is a self-report instrument, this report is dependent on
the respondent's ability and willingness to validly respond to the
questions.  The interpretations arise from both research results and
clinical judgments.

Other information about the respondent should be considered in addition to
the information in this report, particularly if the profile and report will
be used to make important life decisions for the respondent.

The term "alcoholic" masks several distinct conditions of maladjusted and
maladaptive alcohol use.  The authors feel that it is better to seek an
understanding of such separate conditions than to put the label "alcoholic"
on any of them.  For these reasons, this report should not be used for
diagnosing a respondent as "alcoholic."

*See also*
*CD Profile*

                    PROFILE TRUSTWORTHINESS AND CONSISTENCY

Overall, this profile appears to be highly valid.  The client reports that
the information she provided is very accurate, that she usually was open
and frank in answering the questions, and that the AUI questions enabled
her to describe her alcohol use patterns moderately well.  The
trustworthiness of the client's responses may be reduced somewhat because
she was encouraged to complete the AUI.  This client's responses appear to
be consistent and reliable.

              DESCRIPTION AND ASSESSMENT OF ALCOHOL USE CONDITIONS


Background and General Alcohol Involvement
_____

This 19 year old Hispanic female is currently being seen in an unspecified
setting.  She uses more than one kind of alcoholic beverage, but typically
consumes more beer than other alcoholic beverages.  In a typical 24-hour
period, this person reports that she drinks four to six cans of beer.  The
largest amount of alcohol consumed in any particular day is reported to be
sixteen or more cans of beer.  On the last day she drank, this person
reports that she consumed eleven to fifteen cans of beer and one to three
drinks of liquor.

The degree of alcohol involvement acknowledged by this person is in the
highest range.  This means that she is reporting a large number of symptoms

001038

EX 60   994

ALCOHOL USE INVENTORY                                    6

ID Number:  1102390                              Date:  24-OCT-90

commonly associated with chronic, severe conditions of alcohol use.
Individuals at this level of involvement are often classified by clinical
staff as having chronic, severe alcoholism.  The specific nature of this
person's debilitating symptoms will be discussed in later sections of this
report.

Manner of Drinking
───────────────────

Individuals differ in the ways they use alcohol.  This person often drinks
in a gregarious manner in social settings such as those at bars and
parties.  On some occasions she may drink at home, possibly even alone.
She tends to drink consistently every day.  This pattern has existed for
less than six months.

Beliefs About Benefits Associated With Drinking
────────────────────────────────────────────────

Alcohol is often used to enhance positive experiences, neutralize the
effects of negative experiences, manage interpersonal conflict, alter mood,
or reduce psychic or physical pain.  It is important to understand how a
person rationalizes her use of alcohol.

Overall, this person is highly committed to the use of alcohol to derive
psychological and social benefits.  Specifically, she says that alcohol is
very important in enhancing social involvement and mental functioning—to
help her get along with others, improve sociability, and stimulate thinking
and creativity.  She is very likely to use alcohol to manage states of
depression, anxiety, and tension.  This mood management through the use of
alcohol is a consistent, sustained feature of this person's drinking.

This individual says she uses alcohol to cope with problems in her marital
or intimate-partner relationships.  This is an important condition in her
profile.  Jealousy is often a central feature of this condition.  She
reports drinking to deal with tension in the relationship, and arguments
and fights with her partner.  This condition may have existed prior to the
onset of alcohol use.  This person also reports that her drinking has
caused serious problems in her intimate-partner relationship.

There is an indication that she has used alcohol to manage or relieve
physical pain.  She indicates that she has used alcohol to sometimes
relieve stomach/abdominal pain, sometimes relieve cramps, and sometimes
relieve headaches.

Preoccupation With Alcohol
───────────────────────────

An individual can become preoccupied with thinking about alcohol.  This
focus can occur in both the sustained or periodic user.

001050

EX 60    995

ALCOHOL USE INVENTORY                        7

ID Number:  1102390                              Date:  24-OCT-90

Such obsessive-compulsive preoccupation with alcohol characterizes this
client.  She is highly focused on drinking.  She reports that she almost
constantly thinks about alcohol, may panic because she fears she may not
have a drink when she needs it, plans ahead to be sure that alcohol is on
hand, usually has a bottle by her bed, sneaks drinks or hides bottles,
keeps a bottle close at hand, drinks during the workday, and drinks
throughout the day.  Consistent with her compulsion, this person reports
she has used alcohol in a consistent and sustained manner in the last six
months.

Disruptions
_____

Disruptions can take on different patterns and characteristics which will
differ from individual to individual.

This particular individual is reporting some very specific signs and
symptoms which indicate a moderate range of life-functioning disruptions
due to alcohol use.  This suggests definite alcoholic problems related to
drinking and signs of alcohol dependence or abuse.

She reports a high degree of disruption related to her loss of control over
behavior when drinking.  She is very unpredictable with respect to her
behavioral acting out when drinking.  The specific loss-of-control
behaviors when drinking as reported by this individual include getting
belligerent or mean, smashing or breaking objects, becoming physically
harmful to others, stumbling and staggering, passing out, having blackouts,
and having attempted suicide at least once.

Furthermore, she is experiencing disruptions of her interpersonal
relationships and social-role functioning in many areas and at a high level
of severity.  For this individual such social-role dysfunctions due to
drinking include being irresponsible toward herself or others, causing
hardships to family and/or friends, breaking up a marriage or
intimate-partner relationship, living alone because of drinking, being
drunk in public at least once, breaking the law other than an
alcohol-related driving offense, missing work during the past year because
of drinking, losing a job because of drinking, being unemployed during the
last year, and moving from place to place in order to stop drinking and
make a new start.

She reports having had definite symptoms of cognitive-perceptual disruption
in the moderate to high range of severity as a result of withdrawal from
alcohol.  The specific symptoms of disruption this person reports as a
result of drinking include fuzzy or unclear thinking, mental confusion and
disorientation, weird and frightening sensations, visual hallucinations,
auditory hallucinations, and tactile hallucinations.

She is also reporting a history of physical withdrawal symptoms in the
moderate-to-severe range of alcoholic disruption.  It appears that this
person has experienced these kinds of episodes and symptoms on numerous



001052

EX 60   996

ALCOHOL USE INVENTORY                                        8

ID Number:  1102390                              Date:  24-OCT-90

occasions.  The more specific physical or hangover symptoms this person
reports having had in the past include severe headaches, shakes or
trembling hands, drinking in the morning to relieve a hangover, tachycardia
or rapid heart beat, inner shakes, diaphoresis or sweatiness, chills or
cold sweats, nausea or vomiting, and disruption of sleep pattern.

This individual is reporting considerable disruption in the area of
psychological or emotional functioning due to the use of alcohol.  This
individual has experienced emotional and affective disruptions associated
with drinking in the areas of worry over drinking occurring at unaccustomed
times, guilt or remorse after getting drunk, sadness and crying, fears and
anxieties, suspicion and mistrust of others, and decreased ambition.  This
individual is also experiencing severe anxiety and depression associated
with alcohol use.

This person has also experienced some significant and possibly serious
disruptions in marital or intimate-partner relationships due to drinking.
The specific nature of these disruptions include that her partner gets
angry over her drinking, her partner nags her about her drinking, she gets
irritated when her partner makes comments on her drinking, she argues and
fights with her partner when she is drinking, she argues with or belittles
her partner when she is drinking, and there have been periods of separation
due to drinking.


Concerns
_____

The extent to which a person feels guilty or concerned about her drinking
can be identified by the individual's report of feeling remorseful over the
use of alcohol or by her having had a prior treatment experience.

This individual is very concerned about conditions and problems associated
with her alcohol use.  She is ego-dystonic in that she feels something is
very wrong and she must take action to correct her problem.  Specific
concern(s) of this person include drinking occurring at unaccustomed times,
guilt or remorse after a drunk, fearing that drinking is getting worse,
noticeable fear caused by drinking, avoiding talking to others about her
drinking, making excuses or lying to cover up drinking, and drinking
causing hardships for her family and/or friends.


Acknowledgement and Awareness
_____

This person seems to be indicating some awareness of having an alcohol use
problem.

She says that recent notable events have made her feel a need for help.
This person does believe that her drinking problem can be corrected.

001054

EX 60   997

ALCOHOL USE INVENTORY                                    9

ID Number:  1102390                          Date:  24-OCT-90

Other Drug Involvement

This individual is acknowledging the use of one or more psychoactive drugs
in the past 12 months in addition to the use of alcohol.  With respect to
marijuana/hashish she reports some use with recent minor problems due to
use.  She also reports very much use of cocaine with recent major problems
due to use.  She also reports very much use of opiates such as morphine or
heroin with recent major problems due to use.  Finally, she reports much
use of hallucinogens such as LSD, PCP, or mushrooms with recent moderate
problems due to use.


Somatic/Medical Complaints

It is also common for alcohol clients to report medical and physical
problems that may or may not be directly associated with alcohol use.

This particular client reports having been unsteady on her feet even when
having had little or nothing to drink, once or twice; having experienced
numbness or tingling in her hands (fingers) or feet (toes) that continued
for a day or more, once or twice; having developed swelling or puffiness in
her hands, feet, or other parts of the body, five or more times; having had
stomach pains or disruptions of digestion that continued for several days,
five or more times; and having had blood in her stools or coughing up
blood, once or twice.

                        SUMMARY OF ASSESSMENT


Summary of Major Conditions

Based on the previous descriptive analysis, this 19 year old female client
has several alcohol-related conditions which should be addressed.

This client is reporting that the overall influence of alcohol on her life

is very high and there is an extremely serious disruptive impact of use on
life functioning.

With respect to the specific conditions of disruption from alcohol use,
they are clearly apparent and moderately symptomatic of alcoholic problems.
More specifically, because of drinking this client has had serious problems
in controlling behavior, serious disruptions in social role and
interpersonal functioning, definite mental withdrawal symptoms, serious
emotional disruptions, and disruptions in her marriage or intimate-partner
relationship.

Case 2:07-cv-07072-CJC   Document 15-6   Filed 08/01/08   Page 10 of 94   Page ID #:1575

ID Number:  1102390                                Date:  24-OCT-90

This individual has a need for social involvement and peer interaction in a
drinking setting.  She finds some sense of self-worth and importance by
drinking in a gregarious setting.  She is very dependent on alcohol to meet
her social-involvement needs.  Overall, alcohol is very important to this
person for enhancing her sense of self-worth and importance.

There is a strong obsessive-compulsive quality to this client's drinking
pattern that seriously dominates her cognitive and behavioral responding.
This person's life tends to revolve around alcohol use.  Associated with
this obsessive-compulsive pattern is a sustained, continuous pattern
indicating strong alcohol dependence with a history of an
alcohol-abstinence withdrawal syndrome.  This person is a sustained,
continuous drinker who has drunk almost daily for the past several months.
This client may be indicating a pattern of antisocial and irresponsible
behavior in relationship to drinking.  Further assessment needs to be done
to determine if this pattern is independent of drinking.  She may have
serious acting out problems of an aggressive nature.

This individual indicates considerable anxiety and depression and has used
alcohol to manage her moods.  Her emotional distress has also resulted from
the alcohol use.  The continuous and sustained use of alcohol suggests this
client is medicating her unhappy or anxious moods on a daily, or almost
daily, basis.  This individual may be experiencing levels of stress and
mood disruptions to suggest mental health problems of a significant, if not
serious, nature.

This client is experiencing (or has recently experienced) problems or
distress in her marital or intimate-partner relationship.  This client
appears to be using or has used alcohol to manage her marital or
intimate-partner relationship problems.  Her marital or intimate-partner
relationship problems appear to have preceded the onset of alcohol use and
also have resulted from alcohol use.

This client appears to have developed a dependence on alcohol to deal with
physical pain and somatic problems.  This individual is reporting a number
of medical symptoms which may or may not be related to alcohol use but
which should be evaluated medically.

Diagnostic Impression - DSM-III-R Criteria

Responses to selected items of the AUI for determining whether the client
meets DSM-III-R conditions for diagnosis of Alcohol Dependence or Alcohol
Abuse indicate that the following seven criteria are met:

    DSM-III-R Criterion One.  Alcohol is often taken in larger amounts over
    longer periods than the client intended.  She is tending toward
    sustained, consistent, or daily use.

    DSM-III-R Criterion Three.  A great deal of time and effort is spent by
    the client in activities necessary to obtain and use alcohol.

EX 60   999

ALCOHOL USE INVENTORY                               11

ID Number:  1102390                        Date:  24-OCT-90

   DSM-III-R Criterion Four.  The client is frequently intoxicated or has
   withdrawal symptoms when expected to fulfill major role obligations at
   work, school, or home.

   DSM-III-R Criterion Five.  The client has given up or reduced important
   social, occupational, or recreational activities because of alcohol
   use.

   DSM-III-R Criterion Six.  The client continues to use alcohol despite
   the knowledge of having a persistent or recurrent social,
   psychological, or physical problem that is caused or exacerbated by the
   use of alcohol.

   DSM-III-R Criterion Eight.  With continued use, the client experiences
   characteristic withdrawal symptoms associated with the cessation or
   reduction of the intake of alcohol.

   DSM-III-R Criterion Nine.  Alcohol is used by the client to relieve or
   avoid withdrawal symptoms.

These results very strongly suggest a diagnosis of Alcohol Dependence.  One
should not take this conclusion as final, however, as further clinical
assessment may disclose that a different diagnostic impression is more
appropriate for this person.

Further assessment through other methods, such as a clinical interview,
should be done to determine whether or not a client does meet DSM-III-R

criteria for diagnosis of Alcohol Dependence or Alcohol Abuse.

                 INTERVENTION AND TREATMENT RECOMMENDATIONS

Suggested Treatment Strategies

Based on the conditions described by this client through the AUI
self-report, the following treatment strategies may be relevant.  Depending
on circumstances, any of several specific kinds of treatment approaches or
methods (e.g., relaxation therapy, group therapy, marital therapy,
cognitive restructuring) may be employed with each strategy.

1.  Restructure awareness of the serious effects and dangers of continuous
use of alcohol by this client and help the client restructure the defenses
which may prevent her from becoming aware of the serious nature of her
problem.

2.  Structure a pattern of alcohol-abstinence maintenance and a cognitive
orientation of alcohol-free living in order to intervene in a chronic use
pattern.  This may need to be initiated and established through a long-term

001060

EX 60   1000

ALCOHOL USE INVENTORY                                    12

ID Number:  1102390                         Date:   24-OCT-90

residential care program although other circumstances may require or
indicate a need for a shorter or even less structured program.

3.  Structure an awareness of the realities and danger of loss of control
over her behavior when drinking and help the client develop outlets for the
expression of angry and destructive behaviors and mental control over these
feelings and behaviors without the use of alcohol.

4.  Restructure life patterns to compensate for the deterioration of
social-role responsibility which may have resulted from the use of alcohol
and help the client reconstruct life patterns to reestablish social-role
and interpersonal responsibilities.

5.  Structure alcohol withdrawal syndrome.  This client's alcohol use
history indicates that there may be a current or future need to structure
treatment for an alcohol-withdrawal condition.  Medical treatment for such
a condition may be indicated.

6.  Restructure the client's mental obsessions and behavioral compulsions
around alcohol use.  Cognitive restructuring approaches may be helpful in
intervening in the client's alcohol use preoccupations.

7.  A combination of obsession with the use of alcohol and sustained use
points to the need to structure time involvement in nondrinking activities
to replace almost all free time spent in drinking activities.

8.  Restructure the marital or intimate-partner relationship (if the client
is in such a relationship) to resolve major problems resulting from alcohol
use.  Involvement of her spouse/partner/family in treatment may be
appropriate, although many factors not indicated in the AUI need to be
considered in making this kind of decision.                            .

9.  Restructure the individual's marital or intimate-partner relationship
(if the client is in such a relationship) to deal with the dysfunction of
that relationship which tends to lead to this client's drinking.  Marital
conjoint therapy may be called for, but in making such a decision, one will
want to consider factors not indicated in the AUI.

10.  Restructure the emotional disturbances of guilt and worry caused by
alcohol use.  The goal is to help the client resolve these emotional
disturbances while allowing her to experience healthy concerns that
motivate involvement and effort in treatment.

11.  The evidence of gregarious drinking calls for a strategy which
recognizes the rewards which the client experiences from convivial use of
alcohol, yet which restructures the social involvements and peer
interactions which provide potent alcohol-reduced or alcohol-absent
alternatives for realizing these rewards.  The strategy is to intervene in
the alcohol-related peer-dependent needs of this client where these
involvements and needs have led to alcohol use problems.

12.  Restructure a self-attitude which will increase self-esteem,
self-confidence, and self-worth.  Because this client has developed a

ALCOHOL USE INVENTORY                                13

ID Number:  1102390                                  Date:  24-OCT-90

strong belief in the value of alcohol to enhance her self-worth, a number
of different treatment approaches may have to be used to help her build
social competence without alcohol use.

13.  The presence of substantial levels of anxiety associated with the use
of alcohol, coupled with evidence of using alcohol to medicate depression
and anxiety, point to the treatment strategy of restructuring the
management of anxiety and depression without the use of alcohol  Specific
treatment methods, such as relaxation therapy, may be helpful in achieving
this strategy.

14.  The strategy of helping the client to structure ways to deal with
physical pain other than through the use of alcohol is indicated.


## Recommendations for Further Evaluation

The client's responses to the AUI indicate specific workups that could be
done.  Other clinical data also should be considered in making these
referral decisions.

1.  Several of the client's responses suggest that a medical workup might
be needed--particularly if this is not already part of the client's
treatment program.

2.  Further assessment is indicated to examine the possibility of serious
aggressive tendencies.

3.  Further assessment is indicated to explore the client's anger,
resentments, and the possibility that these will result in destructive
expressions that could do harm to self or others.

4.  Because of responses pertaining to being unemployed either currently or
during a part of the past year, the need for involvement in a vocational
development or job placement program should be explored.

5.  Further assessment of this client's stress and anxiety condition is
indicated.

6.  Further assessment of this client's level of self-esteem and
self-confidence is indicated.

7.  Assessment of this client's depression is indicated.

8.  This client reports having attempted suicide when she was drinking.  An
evaluation for suicide potential is thus indicated.

9.  Further assessment of a polydrug abuse problem is indicated in the
client's responses.


End of Report.

001064

EX 60   1002

```
Id:Alfaro, R. 1102390      Age: 19  Sex: F  Setting: 5  DSM-III: #####
Treatment Inpatient: 1  Treatment Outpatient: 3  Educ.: 7

Marital: 1  Ethnic: 3  Employed: 2  Occupation: 6  Family: 1  Job Status: 7
 Interfer: 1
1A: 3  2A: 3  1B: 3  2B: 3  1C: 5  2C: 4  1D: 3  2D: 2  1E: 1  2E: 1
1F: 1  2F: 1  1G: 1  2G: 1  1H: 5  2H: 4  1I: 5  2I: 4  1J: 4  2J: 3
Question 3 Beer: 5  Question 3 Wine: #  Question 3 Liquor: 2
Question 4 Beer: 3  Question 4 Wine: #  Question 4 Liquor: #
Question 5 Beer: 6  Question 5 Wine: #  Question 5 Liquor: #

Question 6A: 30  Question 6B: 30


TEST RESPONSES
            ...5 ...0 ...5 ...0 ...5 ...0

  1 -   30   22232 22213 43142 21432 22322 22122
 31 -   60   23432 11422 23112 11312 22121 13222
 61 -   90   24322 23222 23213 12222 24242 21231
 91 -  120   12113 22241 42222 32321 11332 32222
121 -  150   23422 22132 14213 32243 42232 22221
151 -  180   33233 21433 22323 31212 23232 21332
181 -  210   23233 23111 33331 22232 23332 21222
211 -  228   23222 24212 22123 322
```

001066

EX 60   1003

ORANGE COUNTY
JUVENILE COURT
**MODIFICATION PETITION**
Nonappearance

Minor's Name    **ALFARO, Maria Rosio**    DOB ████ **71** Number   134618

Minor's Address    ████████ Anaheim, CA  92804

Parent's Name    **Father: Jose Alfaro, Mexico**

**FILED**

Address    **Mother: Sylvia Alfaro,** ████████ Anaheim CA  92804

NOV 15 1989

JUDGE/COMMISSIONER    **Mueller**

GARY L. GRANVILLE, County Clerk

REASON FOR PETITION:    Termination of Wardship

By ▨▨▨
DEPUTY

COURT RECORD:  Please see attached ward card.

CONDITIONS OF PROBATION:  8•2•88:  Rest. fund $20 and rest. fine $20, paid
in full.

10•30•89:  CWP 15 days vacated 2•1•89.

DISCUSSION:  On ████████, 1989, the minor became 18 years of age.  The
minor has made a satisfactory adjustment and has derived maximum benefit from
probation supervision.  No significant problems are apparent.  Checks with
the local police department, the Central Juvenile Index, the Department of
Motor Vehicles and the Bureau of Criminal Identification reveal no pending
actions.

RECOMMENDATION:  It is respectfully recommended that wardship jurisdiction be
terminated.

I have read this modification petition. I certify under penalty of perjury that it is true by my own knowledge except those matters which
I believe to be true based on information and belief.

MICHAEL SCHUMACHER
Chief Probation Officer

NOV 15 1989    Dated: **November 8, 1989**

6·D

By _Milton J Olson_
Deputy Probation Officer   Milton J. Olson:sl

_Jim Mulhern_
Supervising Probation Officer   Jim Mulhern

☒   Ordered as recommended:

**JUVENILE COURT ORDER**

I concur with the above
recommendation.

☐   Order of Court:

_(signature)_
JUDGE/COMMISSIONER

11/14/89
DATE

DEPUTY DISTRICT ATTORNEY

DATE

**MODIFICATION PETITION**
Nonappearance

JUVENILE COURT CLERK

F0SO2-5120-10 (R2·85)

`001068`

ORANGE COUNTY PROBATION DEPARTMENT · JUVENILE RECORD   F 0502 5082 4

8/2/88:dr
PRETRIAL FINDINGS:  WARD.  Pet. 6/21/88, as amended - 25662 B&P, Misd.  Maximum confinement
6 months.  Pet. 6/21/88 Amended, to wit:  Minor's first name is "Maria"; middle name is
"Rosio."  Released to parents.  Associates.  Therapy; Counseling.  School.  No
alcohol/drugs.  CWP 15 days.  Search and seizure.  Restitution fine and fund $20 ea.  Comm.
Mueller.

ALFARO, Maria Rosio                          J-134618          /71      DPO#

ORANGE COUNTY PROBATION DEPARTMENT · JUVENILE RECORD   F 0502 5082 4

2/1/89:bmm
PRETRIAL FINDINGS:  CONTD.  RD.  Supp. Pet. 12/8/88 - 777 W    Committed to BC for 35
days.  Released to parent on termination of commitment.  Search and seizure day or night
by any peace or PO with or without a warrant at JH.  Prior work program order of 8/2/88
vacated.  Court finds the previous disposition of the Court has not been effective in the
rehabilitation of the minor.  Waived counsel.  Comm. Mueller.

ALFARO, Maria Rosio                          J-134618          /71      DPO #

C001063





# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

## SITTING AS JUVENILE COURT

| | |
|---|---|
| IN THE MATTER OF:<br><br>*Alfaro, Maria*<br><br>A Minor | **F I L E D**<br>FEB -1 1989<br>GARY GRANVILLE, County Clerk<br>By_____ County Clerk<br>_____ DEPUTY |
| **STIPULATION FOR THE APPOINTMENT OF COURT COMMISSIONER AS TEMPORARY JUDGE** | Case Number<br>J *134618* |

It is hereby stipulated by and between the parties to the above entitled cause that **GILBERT N. MUELLER** _____, a Court Commissioner of Orange County and a member of the Bar of this State, in accordance with Article Six, Section Twenty-One of the Constitution of this State, and further, in accordance with an appointment of said Commissioner by the Presiding Judge of the Superior Court as Temporary Judge heretofore made under the authority of Article Six, Section Twenty-Two of said Constitution and Section 259 of the Code of Civil Procedure of this State may as Temporary Judge try the Jurisdiction Hearing in said cause and be empowered to act in such capacity in the said cause until the final determination thereof.

It is understood that by Order of the Presiding Judge of the Superior Court, said Commissioner has heretofore been appointed to act as a Temporary Judge as to all matters assigned to him by a Judge of this Court for hearing by him as such Temporary Judge and that he has taken the necessary oath of office as to all matters so assigned.

Dated: ____2/1/89_____    By _____
                                              Attorney for Minor

CECIL HICKS, DISTRICT ATTORNEY        _____
                                                                    Minor

By _____                _____
              Deputy                                                Parent

**STIPULATION FOR TEMPORARY JUDGE (COMMISSIONER)**

FO182-544.1

## SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF ORANGE, SITTING AS JUVENILE COURT

| | | |
|---|---|---|
| JUDGE/COMMISSIONER | | PRESENT IN COURT |
| Reporter | | ☒ Minor ☒ Mother ☐ Father ☐ |
| Dep. Sheriff | | ☐ Counsel ☐ No parent present |
| Clerk | | ☐ Dep. P.D. ☒ Interpreter |
| Dep. P.O | | ☐ Dep D.A. ☐ |

PETITION DATED _____ 12-8-88 _____ alleging: 602/ 777 W&I

Hearing re: ☐ Regular☒ ☐ Pretrial ☐ Detention

☐ New ☐ Subsequent ☒☒ Supplemental

PP 5   IN RE: J—   134618   NAME: ALFARO, MARIA   DATE: 2-1-89   TIME: 8:03

☒ Petition dated _____ 12/8/88 _____ ☒ read to those present ☐ served ☐ Minor ☐ Mother ☐ Father ☐ Attorney

☒ Minor ☐ Parents advised right to counsel. Court finds ☒ Minor ☐ Parents intelligently, knowingly and voluntarily waives right to counsel.

☐ Court appoints Public Defender to represent minor.☒ Minor ☒ Mother ☐ Father informed financial obligation for legal services.

☐ Counsel for minor waives reading of Petition and advisement of rights.

☒ Minor advised constitutional rights including rights to speedy trial, to confrontation and cross-examination, against self-incrimination and right to subpoena witnesses. ☒ Possible consequences. ☒ Nature of proceedings.

☒ Court finds minor intelligently, knowingly and voluntarily waives constitutional rights as advised.

☐ COURT ORDERS Petition _____ ☐ Amended ☐ Corrected as incorporated in original petition, to wit:
_____ ☐ Defects Waived

☒ Allegations of (Amended) Petition _____ ☒ Admitted by minor ☐ Denied through counsel

☐ Court Orders Petition dated _____ dismissed on motion of District Attorney

☐ Court read, considered and accepted into evidence ☐ Detention Calendar Memo ☐ Information for Court Officer ☐ Probation Officer's Report

☐ Court heard and considered ☐ Oral Report of Probation Officer. ☐ Notice of rights re: Sealing and Destruction of Records served to minor.

☒ Stipulation for Temporary Judge filed. ☐ This is a negotiated ☐ Plea ☐ Disposition. ☐ TAHL Form filed. ☐ Abstract to DMV

☒ Court Finds: Allegations of (Amended) Petition _____ true beyond a reasonable doubt.

Minor comes under Section ☐ 601 ☒ 602 of the W.&I. Code ☐ Court finds factual basis for plea.

☒ Court Orders minor ☐ declared ☒ continued ☒ Ward of the Orange County Juvenile Court under Section ☐ 601 ☒ 602 W&I Code.

☒ Court Finds ☒ Welfare of minor requires custody to be taken from _____ ☐ Continued custody with _____ would be

detrimental to the minor. ☐ Minor has been tried on probation and has failed to reform, that custody of minor be taken from _____

DISTRIBUTIONS:
* Original to Clerk after copy of
  citation served to person so named.
* Copy to person served.
* Copy to Probation file.

*handwritten note, partially illegible*

For Clerk's use only

SUPERIOR COURT OF THE STATE OF CALIFORNIA COUNTY OF ORANGE

SITTING AS THE JUVENILE COURT

IN THE MATTER OF

ALFARO, MARIA ROSIO

CASE NO. J  134618

A Minor

CITATION

THE PEOPLE OF THE STATE OF CALIFORNIA:

TO    MARIA ALFARO; ███████████  ANAHEIM, CA.
      MS. SYLVIA ALFARO;"                "

Pursuant to the law you are hereby cited and required to appear in the Juvenile _____
Court, 301 City Drive South, in the City of Orange, County of Orange, State of California, on FEBRUARY 1,
19 89 at  8:00   o'clock  A M.

1.   (X)   And have the minor with you at the time and place stated above. A notice and petition is on file, to
           which reference is made for further particulars. A parent or guardian may be required to participate
           in a counseling program with the minor concerning whom the petition has been filed.

2.   ( )   And have the minor with you at the time and place stated above. A signed notice to appear is on file, to
           which reference is made for further particulars.

3.   ( )   And then and there show cause why expense of the support and maintenance of the minor should not be
           paid by you.

4.   ( )   And then and there show cause why this Court should not find you guilty of contempt and punish you
           for willfully disobeying the order of _____ to reimburse the County for the
           cost of care of the minor.

DATED:   DECEMBER 22      , 1988

GARY L. GRANVILLE
███████████████
County Clerk and Clerk of the Superior Court of the
State of California, in and for the County of Orange.

By _____ Deputy

ORIGINAL

004072

F0182-357.2 (R 1-78)

EX 61   1008

DEC 21 1988

COURT DATE:  December 21, 1988          NAME:  ALFARO, Maria Rosio

TYPE OF HEARING:  Pretrial              J-134618    DOB: ███-71

PETITION DATE:  December 8, 1988        DAYS IN CUSTODY:  0

ALLEGATIONS:  777 W&I (a)(b) WIC (CWP Suspension)

---

PRESENT OFFENSE

        On August 2, 1988, the Court ordered the minor to success-
fully complete 15 days on the Juvenile Court Work Program (JCWP).
Thereafter, the minor completed a physical and appeared for indoctrina-
tion on August 15, 1988.  On that date, the minor signed the standard
JCWP rules form which requires contact with the program office in case
of absence or emergency.  The minor was also advised that any unexcused
absence may lead to suspension from JCWP and return to court.  The
minor completed two days, however, the minor failed to appear for
scheduled work on September 4, 11, 24, and 25, 1988, and violated the
signed agreement to make contact (as instructed)  concerning absences
on all four dates.  The minor failed to contact the JCWP office the
Wednesday following each of her absences.  Furthermore, the minor
failed to submit a medical verification regarding her absences.  On
August 20, 1988, the minor was given an unexcused absence for arriving
at the meeting site with inappropriate shoes and failing to provide a
medical clearance form.  On September 3, 1988, the minor was given an
unexcused absence for going home ill and not providing a doctor's note.
On September 10, 1988, the minor again, was given an unexcused absence
for stating she was pregnant but failing to provide a doctor's note
excusing this absence.  The minor was suspended from JCWP on September
27, 1988, for the above violation.

001973

ALFARO, Maria Rosio                                    Page 2

PRIOR RECORD

| DATE | AGENCY | OFFENSE | DISPOSITION |
|------|--------|---------|-------------|
| 2-27-86 | Anaheim PD | 11359 H&S<br>11357(b)<br>4143(2) B&P<br>148.9 PC | Application rejected by DA. |
| 6-1-8 6 | Anaheim PD | 484-488 PC | Handled informally by PO.<br>Mother stated she would<br>take minor to Mexico to<br>reside with her father. |
| 4-7-88 | NBPD | 25662 B&P | 8-2-88: Ward. 25662 B&P,<br>misd., sust., 15 days CWP;<br>S&S, rest. fine and fund<br>$20 each. |

ADJUSTMENT TO PROBATION

        The minor and her mother had responded to the office on 8-22-88 for indoctrination.  Since that time the minor's whereabouts are uncertain, as it does not appear she is really living at home.  The minor neither reported in September nor in October.  Two attempted home calls did not result in contact with the minor.  She called on September 20, 1988, and stated that she was seeing the doctor and would be home for her appointment on the following day – she was not.  Again, the minor called on September 22, 1988, but failed to report to her Probation Officer.  Should she fail to appear for a Pre-trial Hearing, it would appear that her whereabouts are unknown and a warrant should appropriately be issued.

EVALUATION

        The minor does not appear to be working nor attending school. Her whereabouts are unknown as she appears to be staying with friends, since she will not follow rules at home, and her mother is just as

001074

ALFARO, Maria Rosio                                    Page 3

happy to see her elsewhere.  The minor leaves her child at home for he
sister or mother to take care of.  She claims that she is again preg-
nant, although unmarried, and was just unable to participate in the
Work Program.  However, she has provided no medical information
confirming this claim.  In order to gain her attention and stabilize
the minor, it appears appropriate to recommend a commitment of 45 days
and vacate the previous Community Work Program order.  Since her mother
and sister take care of the child anyway, there should be no difficulty
in her not being able to take care of her baby.

She has made no payments on her restitution fine and restitu-
tion fund and is delinquent $20.00 Her parents were apparently in
Mexico and attempts to contact anyone at her home, other than
fragmentary interview with a Spanish-speaking relative at an attempted
home call, have been unsuccessful.  She has made no contact in November
or December.

RECOMMENDATION

In view of the foregoing, if the petition is sustained, it is
respectfully recommended that the minor be continued a ward of the
Court under Section 602 W&I Code and that for the welfare of the minor,
custody be taken from the mother and the minor be committed to the
care, custody, and control of the Orange County Probation Officer for
commitment to the appropriate facility for 44 days.  Further, that the
minor be ordered to obey the rules and regulations of the facility and
the reasonable directions of the Probation Department staff, and the
minor's person and property be subject to search and seizure without a
warrant during the commitment.  Further, that at the termination of the
commitment, the minor be released to the custody of the mother under

001075

ALFARO, Maria Rosio                                Page 4

1   the usual and heretofore ordered terms and conditions of probation;

2           It is further recommended that the Court order of August 2,

3   1988, be modified to vacate the 15 days Community Work Program.

4                                   Respectfully submitted,

5                                   MICHAEL SCHUMACHER
                                    Chief Probation Officer
6

7

8                                   Milton J. Olson
                                    Deputy Probation Officer
9                                   490-5180

10  Dated this 21st day of December, 1988

11  I have read and considered the foregoing
    report of the Chief Probation Officer.
12

13

14

15  JUDGE/COMMISSIONER

16  sl

17

18

19

20

21

22

23

24

25

26

27

28

EX 61   1012

**SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF ORANGE, SITTING AS JUVENILE COURT**

JUDGE/COMMISSIONER _HICKMAN_

Reporter _____

Dep. Sheriff _____

Clerk _Abbott_

Dep. P.O _Kelly_

PRESENT IN COURT

☐ Minor  ☐ Mother  ☐ Father  ☒ _No appearances_

☐ Counsel _____

☐ Dep. P.D _____

☐ Dep. D.A _____

☐ No parent present _____

☐ Interpreter _____

☐ _____

PETITION DATED _12/8/88_  alleging: _602/777 W+I_

Hearing re: ☐ Regular  ☒ Pretrial  ☐ Detention

☐ New  ☐ Subsequent  ☒ Supplemental

IN RE: J— _134618_   NAME: _ALFARO, MARIA_   DATE: _12/21/89_   TIME: _8:30_

☐ Petition dated _____ ☐ read to those present  ☐ served  ☐ Minor  ☐ Mother  ☐ Father  ☐ Attorney

☐ Minor  ☐ Parents advised right to counsel. Court finds  ☐ Minor  ☐ Parents intelligently, knowingly and voluntarily waives right to counsel.

☐ Court appoints Public Defender to represent minor.  ☐ Minor  ☐ Mother  ☐ Father informed financial obligation for legal services.

☐ Counsel for minor waives reading of Petition and advisement of rights.

☐ Minor advised constitutional rights including rights to speedy trial, to confrontation and cross-examination, against self-incrimination and right to subpoena witnesses.  ☐ Possible consequences.  ☐ Nature of proceedings.

☐ Court finds minor intelligently, knowingly and voluntarily waives constitutional rights as advised.

☐ COURT ORDERS Petition _____ ☐ Amended  ☐ Corrected as incorporated in original petition, to wit: _____

☐ Defects Waived

☐ Allegations of (Amended) Petition _____ ☐ Admitted by minor  ☐ Denied through counsel

☐ Court Orders Petition dated _____ dismissed on motion of District Attorney

☐ Court read, considered and accepted into evidence  ☐ Detention Calendar Memo  ☐ Information for Court Officer  ☒ Probation Officer's Report _filed_

☐ Court heard and considered  ☐ Oral Report of Probation Officer.  ☐ Notice of rights re: Sealing and Destruction of Records served to minor.

☐ Stipulation for Temporary Judge filed.  ☐ This is a negotiated  ☐ Plea  ☐ Disposition.  ☐ TAHL Form filed.  ☐ Abstract to DMV

_____

_____

☐ Court Finds: Allegations of (Amended) Petition _____ true beyond a reasonable doubt.

Minor comes under Section  ☐ 601  ☐ 602 of the W.&I. Code  ☐ Court finds factual basis for plea.

☐ Court Orders minor  ☐ declared  ☐ continued  ☐ a ward of the Orange County Juvenile Court under Section  ☐ 601  ☐ 602 W&I Code.

☐ Court Finds  ☐ Welfare of minor requires custody to be taken from _____ ☐ Continued custody with _____ would be detrimental to the minor.  ☐ Minor has been tried on probation and has failed to reform, that custody of minor be taken from _____

**COURT ORDERS:**

☐ Minor committed to _____ ☐ Credit for _____ days served

☐ Custody of minor (to remain) vested in the Probation Officer for suitable placement.

☐ County of Orange to pay prevailing rate for minor's support and maintenance while in placement excluding services rendered by UCIMC.

☐ Probation Officer authorized to  ☐ Sign medical consent on minor's behalf  ☐ Bill and accept funds from parents for special expenditures

A01077

F I L E D

DEC 1 1988

by X

**SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF ORANGE**
**SITTING AS A JUVENILE COURT**

| IN THE MATTER OF: | CASE NUMBER |
|---|---|
| A MINOR  ALFARO, MARIA | J- 134618 |

**NOTICE OF HEARING ON PETITION**
**AND PROOF OF SERVICE**

**(SUPP., 12-8-88)**

TO: ( )   MARIA ALFARO; █████████████, ANAHEIM, CA. 92804
( )   MS. SYLVIA ALFARO;"              "
( )
( )
( )
( )
( )
( )

**NOTICE IS HEREBY GIVEN THAT:**

1.   A petition, a copy of which is hereto attached, has been filed in this Court on behalf of the above-named minor alleging that said minor comes within Section _____ 602 _____ of the Welfare and Institutions Code.

2.   This matter has been set for a hearing before this Court on December 21, 1988 at _____ 8:00 A. M. The Court is located at 301 The City Drive, Orange, California.   PRETRIAL

3.   You are to appear before the court at this hearing and to bring the minor with you. Failure to attend and bring the minor with you may be deemed contempt of court. At the hearing it will be decided whether or not the allegations in the petition are true.

4.   Said minor and his parent or guardian or adult relative are entitled to have an attorney present at the hearing on the petition. If such parent or guardian or adult relative is indigent and cannot afford an attorney and such minor or his parent or guardian or adult relative desires to be represented by an attorney, such parent or guardian or adult relative shall promptly notify the Clerk of the Juvenile Court.

_____ December 12, 1988 _____
Dated

_Gary L Granville_
Gary L. Granville, County Clerk

**NOTICE OF HEARING ON PETITION**
(See Proof of Service on Reverse Side)

001078

F0182-757 (10/85)

EX 61   1014

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

JUVENILE COURT

F q **I** L E D

DEC ᴗ ᴵᴖᴗ8

GARY L. GRANVILLE, County Clerk

By X _____ DEPUTY

| IN THE MATTER OF | ) |
| | ) |
| ALFARO, MARIA | ) |
| | ) |
| AGE: 16          BIRTHDATE: ███-71 | ) |
| | ) |
| ███████, Anaheim, CA 92804 | ) |
| | ) |
| | ) |

J-134618 **D**

PETITION-SUPPLEMENTAL

CECIL HICKS, DISTRICT ATTORNEY of the County of Orange, alleges that the above named minor(s) is a ward of the Juvenile Court under Section 602 of the Juvenile Court Law of California, and good cause appears for further adjudication by the court, in that:

On 8-2-88 the Juvenile Court ordered the minor to successfully participate in the Community Work Program for 15 days, and said minor failed to obey said order in that on or about 9-27-88 the minor was suspended from the program.

THEREFORE, as the previous disposition of the court has not been effective in the rehabilitation of the minor, the court's previous order should be changed and modified pursuant to Section 777(a) and (b) of the Welfare and Institutions Code of California. Executed on 12-8-88, at Orange, California.

NOT DETAINED

CECIL HICKS, DISTRICT ATTORNEY

BY: *Steve O'Maury*

DEPUTY DISTRICT ATTORNEY

The names and addresses of minor's parents and guardians are:
FATHER:
MOTHER:        SYLVIA ALFARO   ███████, Anaheim, CA 92804
GUARDIAN:

**NOTICE OF FINANCIAL LIABILITY (903, 903.1 & 903.2 W&I CODE):** Notice is hereby given to the Parents and all other persons and Entities liable for the support of the minor, that you are liable, jointly and severally, for the cost of: Care, support, and maintenance in any place of detention or maintenance; and any attorney appointed by the court, for you or the minor.

BV:mm

001079

# CPI

# A

**Juvenile**
**Civil**
**Probate**
**Petition** *12-8-88*   **Amended**   **Criminal**
**Complaint**   **Information**

001080



SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

SITTING AS JUVENILE COURT

| IN THE MATTER OF: *Maria Rosio* *Alfaro, Rosio Maria* A Minor | **FILED** AUG - 2 1988 GARY L. GRANVILLE, County Clerk BY _____ DEPUTY |
|---|---|
| **STIPULATION FOR THE APPOINTMENT OF COURT COMMISSIONER AS TEMPORARY JUDGE** | Case Number J *134618* |

It is hereby stipulated by and between the parties to the above entitled cause that **GILBERT N. MUELLER** _____, a Court Commissioner of Orange County and a member of the Bar of this State, in accordance with Article Six, Section Twenty-One of the Constitution of this State, and further, in accordance with an appointment of said Commissioner by the Presiding Judge of the Superior Court as Temporary Judge heretofore made under the authority of Article Six, Section Twenty-Two of said Constitution and **Section 259** of the Code of Civil Procedure of this State may as Temporary Judge try the Jurisdiction Hearing in said cause and be empowered to act in such capacity in the said cause until the final determination thereof.

It is understood that by Order of the Presiding Judge of the Superior Court, said Commissioner has heretofore been appointed to act as a Temporary Judge as to all matters assigned to him by a Judge of this Court for hearing by him as such Temporary Judge and that he has taken the necessary oath of office as to all matters so assigned.

Dated: _____ *8/2/88* _____                     By _____
                                                             Attorney for Minor

CECIL HICKS, DISTRICT ATTORNEY                    *Rosio Alfaro* _____
                                                                        Minor

By _____                     _____
              Deputy                                              Parent

**STIPULATION FOR TEMPORARY JUDGE (COMMISSIONER)**

F0182-544.1

30190
001681

SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF ORANGE, SITTING AS JUVENILE COURT

JUDGE/COMMISSIONER _____  PRESENT IN COURT

Reporter _____  ☒ Minor  ☒ Mother  ☐ Father  _____
Dep. Sheriff _____  Counsel _____  ☐ No parent present  _____
Clerk _____  ☐ Dep. P.O.  ☐ Interpreter  _____
Dep. D.A. _____  ☐ Dep. P.D.  _____  _____

PETITION DATED _____  reading on _____

Hearing is  ☐ Regular  ☒ Pretrial  ☐ Detention
☒ New  ☐ Subsequent  ☐ Supplemental

IN RE _____  NAME _____  DATE 8-2-88  TIME 8:30 AM

☒ Petition dated _____  ☒ Read to those present  ☐ served  ☐ Minor  ☐ Mother  ☐ Father  ☐ Attorney
☒ Minor  ☐ Parents advised right to counsel; Court finds  ☒ Minor  ☐ Parents intelligently knowingly and voluntarily waives right to counsel
☐ Court appoints Public Defender to represent minor  ☐ Minor  ☐ Mother  ☐ Father informed financial obligation for legal services
☐ Counsel for minor waives reading of Petition and advisement of rights
☒ Minor advised constitutional rights including rights to speedy trial to confrontation and cross examination, against self incrimination and right to subpoena witnesses  ☐ Possible consequences  ☒ Nature of proceedings

☒ Court finds minor intelligently, knowingly and voluntarily waives constitutional rights as advised
☒ COURT ORDERS Petition _____  ☒ Amended as incorporated in original petition to wit _____  ☐ Defects Waived
Minor's true name is MARIA middle name is ROSIO _____
☒ Allegations of (Amended) Petition _____  ☒ Admitted by minor  ☐ Denied through counsel

☐ Court Orders Petition dated _____  ☐ dismissed on motion of District Attorney
☐ Court read, considered and accepted into evidence  ☐ Detention Calendar Memo  ☐ Internement for Court Officer  ☐ Probation Officer's Report
☐ Court heard and considered  ☐ Oral Report of Probation Officer  ☐ Notice of rights re. Sealing and Destruction of Records served to minor
☐ Stipulation to Temporary Judge filed  ☐ This is a negotiated  ☐ Plea  ☐ Disposition  ☐ TAHL Form filed  ☐ Abstract to DMV

☒ Court Finds Allegations of (Amended) Petition _____  true beyond a reasonable doubt.
Minor comes under Section ☒ 601 ☐ 602 of the W. & I. Code  ☐ Court finds (facts) basis for plea
☒ Court Orders minor declared  ☐ continued ☒ a ward of the Orange County Juvenile Court under Section ☐ 601 ☒ 602 W&I Code.
☐ Court Finds  ☐ Welfare of minor requires custody to be taken from _____  ☐ Continued custody with _____  would be
detrimental to the minor  ☐ Minor has been tried on probation and has failed to reform, that custody of minor be taken from _____

COURT ORDERS
☐ Minor committed to _____  ☐ Credit for _____ days served
☐ Custody of minor be remanded to the Probation Officer for suitable placement
☐ County of Orange to pay prevailing rate for minor's support and maintenance while in placement excluding services rendered by UCIMC
☐ Probation Officer authorized to  ☐ Sign medical consent on minor's behalf  ☐ Bill and accept funds from parent for special expenditures

☐ It Appears it is of  ☐ reasonable  ☐ immediate and urgent necessity that minor be detained for protection of  ☐ Minor  ☐ Person or Property of another
☐ Minor  ☐ has violated a Court Order  ☐ is likely to flee jurisdiction  ☐ has escaped from commitment  ☐ of Juvenile Court.

☐ Matter continued to _____ at _____ M for _____ hearing before _____
☐ Minor released to the custody of _____  ☐ Pending hearing  ☐ Under Home Supervision Program
☐ Minor detained in _____  ☐ to return to Court on the hearing date without further order or notice of the Court
☐ Minor detained in ☐ Juvenile Hall  _____  ☐ Pending  ☐ Hearing  ☐ Placement  ☐ Acceptance and Delivery
☐ Warrant of arrest issued for _____  ☐ Withholding  ☐ Recalled
☒ Minor released to parent  ☒ Upon usual terms and conditions of probation  ☐ Heretofore ordered  ☐ On continuation of commitment
☒ Court Finds the matter to be  ☐ Misdemeanor  ☒ Felony and fixes maximum period of confinement at 16 months
CONDITIONS OF  ☐ RELEASE  ☒ PROBATION
☐ Minor not to associate with _____  ☐ persons of whom the Probation Officer disapproves.
☒ Minor to participate in a program of _____  approved by the Probation Officer.
☒ Minor to attend school regularly _____  ☐ and obey the curfew imposed by 10:00 A.M. on any day minor is to be absent from school
☐ Minor not to leave home at any time unless accompanied by a parent or other responsible adult designated by the parent  ☐ except _____

☒ Minor not to use/possess alcoholic beverages, illegal drugs or narcotics.
☒ Minor to obey rules and regulations of _____
☒ Minor to participate successfully in Community Work Program for _____ days and submit person and property to search and seizure by
Probation Officer or Counselor with or without a warrant while on Community Work Program ☐ with 1 day credit for each 4 days work each
☒ Minor to submit person and property to search and seizure day or night by any Peace or Probation Officer with or without a warrant ☐ If Juv Hall institution
☐ Minor to pay cost of probation in the amount of $_____  ☐ as directed by the Probation Officer
☒ Minor to make restitution _____  in amount $_____  ☐ as directed by the Probation Officer  ☐ Pre Rata share
☐ Minor committed to _____, custody and control of Orange County Probation Officer for appropriate commitment to local institution for _____
☐ to receive credit for _____ days time served; location to be determined after evaluation of minor. Probation Officer to inform Court, minor, parent, District Attorney and minor's attorney as to place of commitment within 10 days, same parties may request review of institution selection by delivering written request to Court no later than 12 days from this date.

C. ROBERT JAMESON  _____  Dated 8/2/88  _____
Judge of Juvenile Court  _____  Commissioner of Juvenile Court

Order entered, and copies served to minor provided by law together with explanation of right to seek review by Juvenile Court, on _____
Septioration or appeal rights served to minor provided by law on _____

AUG -3 1988  _____  DEPUTY CLERK

COURT COPY

001082

DISTRIBUTIONS:
- Original to Clerk after copy of citation served to person so named.
- Copy to person served.
- Copy to Probation file.

F I L E D

JUL *   1988

GARY L. _____ County Clerk

By _____ DEPUTY

7-11-88 - 13-3 - 152  CP SISTER - CP
ML 2 ATWORK TRY _____
7:30 PM  SERVICE- 82
7-13-88 - 1341 SAME - 42-882

For Clerk's use only

## SUPERIOR COURT OF THE STATE OF CALIFORNIA COUNTY OF ORANGE

### SITTING AS THE JUVENILE COURT

IN THE MATTER OF

ALFARO, ROSIO MARIO

A Minor

CASE NO. J  134618

THE PEOPLE OF THE STATE OF CALIFORNIA:

TO   ROSIO MARIO ALFARO; ███████████, ANAHEIM, CA.
MS. SYLVIA ALFARO;"                        "

CITATION

Pursuant to the law you are hereby cited and required to appear in the Juvenile _____
Court, 301 City Drive South, in the City of Orange, County of Orange, State of California, on ___AUGUST 2,___
19 88 at ___8:00___ o'clock A M.

1.   (XX  And have the minor with you at the time and place stated above. A notice and petition is on file, to
     which reference is made for further particulars. A parent or guardian may be required to participate
     in a counseling program with the minor concerning whom the petition has been filed.

2.   (  )  And have the minor with you at the time and place stated above.  A signed notice to appear is on file, to
     which reference is made for further particulars.

3.   (  )  And then and there show cause why expense of the support and maintenance of the minor should not be
     paid by you.

4.   (  )  And then and there show cause why this Court should not find you guilty of contempt and punish you
     for willfully disobeying the order of _____ to reimburse the County for the
     cost of care of the minor.

DATED:            JULY 6,  , 19  88

GARY L. GRANVILLE

County Clerk and Clerk of the Superior Court of the
State of California, in and for the County of Orange.

By _____ Deputy

ORIGINAL

001083

F0182-357.2 (R.1-78)

FILED

JUL  5 1988

1  COURT DATE:  July 5, 1988          NAME:  ALFARO, Rosio Maria

2  TYPE OF HEARING:  Pretrial         J-134618    DOB: ████/71

3  PETITION DATE:  June 21, 1988      DAYS IN CUSTODY:  0

4  ALLEGATIONS:  25662 B&P

5  _____

6  SUMMARY OF OFFENSE

7       Records of the Newport Beach Police Department indicate that

8  on April 7, 1988 at approximately 11:20 p.m., an officer patrolling the

9  west oceanfront beach area observed the minor and a 19-year-old male on

10  a blanket.  Next to the minor was a 12-ounce container of beer.  The

11  minor persisted in giving a false date of birth until her sister was

12  contacted.

13  PRIOR RECORD

14  | Date | Agency | Offense | Disposition |
    |------|--------|---------|-------------|
15  | 2/27/86 | APD | 11359 H&S; | Application rejected |
16  |  |  | 11357(b) H&S; | by DA. |
    |  |  | 4143(2) B&P; |  |
17  |  |  | 148.9 CPC |  |

18       (Officers observe heroin tracks on minor's arm, estimate her
    habit at $100 per day, marijuana and hypodermic needles and syringes
19  found in minor's purse, initially gives false date of birth.)

    | 6/1/86 | APD | 484-488 CPC | Handled informally by |
20  |  |  |  | PO; mother stated she |
    |  |  |  | would take minor to |
21  |  |  |  | Mexico to reside |
    |  |  |  | with her father. |
22

23       (Shoplift of men's shirts from Mervyn's.)

24  INTAKE INFORMATION

25       The minor was not interviewed with respect to this incident

26  inasmuch as her mother telephoned to report that the minor had run away

27  in order to avoid the appointment set by mail.  The mother stated

28  that Rosio has run away several times and is basically out of the

001084

EX 61   1020

ALFARO, Rosio Maria                                    Page 2

1   mother's control, coming and going as she pleases.  The mother stated
2   further that the minor is not attending school and is abusing not only
3   marijuana but "hard" drugs.

4          It is noted that at the time of a previous intake interview,
5   the minor admitted having had experience with the abuse of heroin, PCP,
6   "crystal," and marijuana.

7   EVALUATION

8          It appears clear that the minor is in need of probation
9   supervision inasmuch as her mother has confirmed that she continues on
10  the self-destructive path of substance abuse and is engaged in virtually
11  no constructive activity.  The following is offered as an appropriate
12  response to the conduct specifically alleged in this petition and in
13  consideration of the social history information available.

14  RECOMMENDATION

15         In view of the foregoing, it is respectfully recommended that
16  should the Court establish jurisdiction in this case, the minor be
17  declared a ward of the Court under Section 602 W&I Code and be released
18  to the custody of her mother under the usual terms and conditions of
19  probation.

20         It is further recommended that, as a specific condition of
21  probation, the minor be ordered to participate in the Juvenile Court
22  Work Program for 15 days, to be served as directed by the probation
23  officer.  Should the minor be precluded from the program by the medical
24  examination, that she be returned forthwith to the Court for further
25  disposition.  Further, that while participating in the Work Program, the
26  minor submit her person and property to search and seizure by any peace
27  officer or Work Program staff during the Work Program.

28         It is further recommended that the administrator of the

001085

ALFARO, Rosio Maria                                                    Page 3

1  Juvenile Court Work Program be authorized to grant one day off the

2  number of days the minor is ordered to serve on the Work Program for

3  each four grades of "A" the minor earns, provided the minor has obeyed

4  all other rules of the program.

5          It is further recommended that the minor be ordered to abide

6  by the following additional specific conditions of probation:

7          1.  That she participate in any program of therapy or

8  counseling as directed by the probation officer.

9          2.  That she attend school regularly as prescribed by law and

10  notify the probation officer by 10 a.m. on any day absent or within two

11  hours of any period missed.

12          3.  That she participate in any educational program as directed

13  by the probation officer.

14          4.  That she not associate with any person of whom her parents

15  or probation officer disapprove.

16          5.  That she not use or possess any intoxicants, narcotics, or

17  illegal drugs.

18          6.  That she submit to search and seizure of her person or

19  property at any time by any peace officer without benefit of a search

20  warrant.

21          7.  That she submit to drug testing as directed by the

22  probation officer.

23          8.  That the minor be ordered to pay restitution in the amount

24  of $20 to the restitution fund, per Section 729.6 W&I Code.

25          9.  That she pay a restitution fine in the amount of $20, per

26  Section 730.6 W&I Code.

27          It is further recommended that the petition and all court and

28  Probation Department records be amended to reflect correct spelling of

001066

ALFARO, Rosio Maria                                              Page 4

1   the minor's middle name as Maria.

2                                          Respectfully submitted,

3                                          MICHAEL SCHUMACHER
                                           Chief Probation Officer
4

5

6                                          Carol D. Gilbertson
                                           Deputy Probation Officer
7

8   Dated this 5th day of July, 1988.

9   I have read and considered the foregoing
    report of the Chief Probation Officer.
10

11

12  _____
    JUDGE/COMMISSIONER
13
    (wp)
14  CDG:cw

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00187

SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF ORANGE, SITTING AS ...

JUDGE/COMMISSIONER _Jameson_

Reporter _Vigil_                    PRESENT IN COURT
                                    ☐ Minor  ☐ Mother  ☐ Father  ☒ _no appearances_
Dep. Sheriff _Barat_                ☐ Counsel _____  ☒ No parent present _of minor_
Clerk _Terilez_                     ☐ Dep. P.D. _____  ☐ Interpreter _____
Dep. P.O _Sebote_                   ☐ Dep. D.A. _____

PETITION DATED  _6-21-88_    alleging: _602/ 35668 b & c_
Hearing re:  ☐ Regular  ☒ Pretrial  ☐ Detention
☒ New  ☐ Subsequent  ☐ Supplemental

IN RE: J— _134618_    NAME: _Alfaro, Rosio Maria_    DATE _7-5-88_    TIME: _8:30 AM_

☐ Petition dated _____ ☐ read to those present  ☐ served  ☐ Minor  ☐ Mother  ☐ Father  ☐ Attorney

☐ Minor  ☐ Parents advised right to counsel. Court finds  ☐ Minor  ☐ Parents intelligently, knowingly and voluntarily waives right to counsel.

☐ Court appoints Public Defender to represent minor.  ☐ Minor  ☐ Mother  ☐ Father informed financial obligation for legal services.

☐ Counsel for minor waives reading of Petition and advisement of rights.

☐ Minor advised constitutional rights including rights to speedy trial, to confrontation and cross-examination, against self-incrimination and right to subpoena witnesses.  ☐ Possible consequences.  ☐ Nature of proceedings.

☐ Court finds minor intelligently, knowingly and voluntarily waives constitutional rights as advised.

☐ COURT ORDERS Petition _____  ☐ Amended  ☐ Corrected as incorporated in original petition, to wit: _____
                                                                                                                    ☐ Defects Waived

☐ Allegations of (Amended) Petition _____  ☐ Admitted by minor  ☐ Denied through counsel

☐ Court Orders Petition dated _____  dismissed on motion of District Attorney

☐ Court read, considered and accepted into evidence  ☐ Detention Calendar Memo  ☐ Information for Court Officer  ☒ Probation Officer's Report _file_

☐ Court heard and considered  ☐ Oral Report of Probation Officer.  ☐ Notice of rights re: Sealing and Destruction of Records served to minor.

☐ Stipulation for Temporary Judge filed.  ☐ This is a negotiated  ☐ Plea  ☐ Disposition.  ☐ TAHL Form filed.  ☐ Abstract to DMV

_____
_____
_____

☐ Court Finds: Allegations of (Amended) Petition _____ true beyond a reasonable doubt.
        Minor comes under Section  ☐ 601  ☐ 602 of the W.&I. Code  ☐ Court finds factual basis for plea.

☐ Court Orders minor  ☐ declared  ☐ continued  ☐ a ward of the Orange County Juvenile Court under Section  ☐ 601  ☐ 602 W&I Code.

☐ Court Finds  ☐ Welfare of minor requires custody to be taken from _____  ☐ Continued custody with _____ would be detrimental to the minor.  ☐ Minor has been tried on probation and has failed to reform, that custody of minor be taken from _____

COURT ORDERS:
☐ Minor committed to _____  ☐ Credit for _____ days served

☐ Custody of minor (to remain) vested in the Probation Officer for suitable placement.

☐ County of Orange to pay prevailing rate for minor's support and maintenance while in placement excluding services rendered by UCIMC.

001083

# FILED

JUN 22 1988

GARY L. GRANVILLE. County Clerk

DEPUTY

By

## SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF ORANGE
### SITTING AS A JUVENILE COURT

| IN THE MATTER OF: | CASE NUMBER |
|---|---|
| A MINOR   ALFARO, ROSIO MARIO | J- 134618 |

## NOTICE OF HEARING ON PETITION
## AND PROOF OF SERVICE

### (NEW, 6-21-88)

TO: ( )
( )  ROSIO MARIO ALFARO; ▌▌▌▌▌▌, ANAHIEM, CA. 92804
( )  MS. SYLVIA ALFARO;"     "        "
( )  MR. JOSE ALFARO; MEXICO
( )
( )
( )
( )

### NOTICE IS HEREBY GIVEN THAT:

1.  A petition, a copy of which is hereto attached, has been filed in this Court on behalf of the above-named minor alleging that said minor comes within Section _____ 602 _____ of the Welfare and Institutions Code.

2.  This matter has been set for a hearing before this Court on _July 5, 1988_ at _8:00_ A.M. The Court is located at 301 The City Drive, Orange, California.  PRETRIAL

3.  You are to appear before the court at this hearing and to bring the minor with you. Failure to attend and bring the minor with you may be deemed contempt of court. At the hearing it will be decided whether or not the allegations in the petition are true.

4.  Said minor and his parent or guardian or adult relative are entitled to have an attorney present at the hearing on the petition. If such parent or guardian or adult relative is indigent and cannot afford an attorney and such minor or his parent or guardian or adult relative desires to be represented by an attorney, such parent or guardian or adult relative shall promptly notify the Clerk of the Juvenile Court.

_June 22, 1988_
Dated

_Gary L Granville_
Gary L Granville, County Clerk

001083
FD 182-757 (10/85)

### NOTICE OF HEARING ON PETITION
(See Proof of Service on Reverse Side)

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

JUVENILE COURT

**FILED**

JUN 21 1988

GARY L. GRANVILLE, County Clerk

By _____ DEPUTY

IN THE MATTER OF

ALFARO, ~~ROSIO MARIO~~ MARIA ROSIO

AGE: 16        BIRTHDATE: ████-71

Anaheim, CA 92804

J-134618

PETITION TO DECLARE
MINOR A WARD

CECIL HICKS, DISTRICT ATTORNEY of the County of Orange, alleges that the above named minor(s) comes under Section 602 of the Juvenile Court Law of California in that:

COUNT I:  On or about 4-7-88, said minor, was a person under the age of twenty-one years, who did unlawfully have in his/her possession an alcoholic beverage on a street and highway and in a public place, and a place open to the public, in violation of Business and Professions Code Section 25662, a Misdemeanor.

THEREFORE, I request that this minor(s) be adjudged and declared a ward of the Juvenile Courts. On information and belief, I declare under penalty of perjury that the foregoing is true and correct.  Executed on 6-21-88, at Orange, California.

NOT DETAINED

CECIL HICKS, DISTRICT ATTORNEY

BY: _____
DEPUTY DISTRICT ATTORNEY

The names and addresses of minor's parents and guardians are:
FATHER:        JOSE ALFARO, MEXICO
MOTHER:        SYLVIA ALFARO, SAME AS MINOR
GUARDIAN:

NOTICE OF FINANCIAL LIABILITY (903/903.1 & 903.2 W&I CODE):  Notice is hereby given to the Parents and all other persons and Entities liable for the support of the minor, that you are liable, jointly and severally, for the cost of:  Care, support, and maintenance in any place of detention or maintenance; and any attorney appointed by the court, for you or the minor.

DA/add

001090

**ORANGE COUNTY
PROBATION DEPARTMENT**

CENTRAL SUPERIOR COURT, Dept. PX __41__   Time __9:00 a.m.__

Defendant's Full Name  ALFARO, Maria Del Rosio   P & S Date: 7-14-92

AKA  GONZALEZ, Rosemary; Gonzalez, Rosie

Address:      (not stated)                              A-208944   **FILED**

Present Whereabouts:  Orange County Jail-Women's Facility   Judge R. Carel/sm   JUL 14 1992

Telephone      (not stated)                   Attorney  William McGate GRANVILL

**ORDERED OPENED** 82541

**COURT STATUS** ine Superior Court

Present Offense  Please see Pg. 2A          Date of Offense 6-15-92     Arresting Agency  OCSO

Inf. Compl. Filed 11-30-90   Guilty by  jury trial   Date of Arrest 6-27-90

Days in Custody    749       Codefendants    none      Date 3-23-92

## DESCRIPTION

Age __20__  DOB ____-71   POB  Orange, CA     Ethnic Background Hispanic  Sex Female

Height  5-4  Weight 140  Hair  Black  Eyes  Brown   Complexion  Olive

Identifying Marks  tattoos                 Social Security No. _____

Date of Arrival in California _____   Date of Arrival in Orange County _____

FBI  none    CII  A08131516  OCSO 740329   Operator's License A6703291 (I.D.)
                                            Expiration Date  10-12-95

| PRIOR PROBATION GRANTS | | | PRIOR PAROLE GRANTS | | |
|---|---|---|---|---|---|
| Year 1988-89  County Orange | | Term (Juvenile) | Year none | State | Term |

## EMPLOYMENT HISTORY

Last or Present Employer  McDonalds  Betty Cleary, Mgr.  Address Brookhurst & Chapman  City Garden Grove

Date Began 1-18-90  Date Terminated 4-29-90  Reason _____

Type of Work  cashier   Work Phone 714/530-0410   Salary  not stated

Previous Employment:

| Dates | | | | | |
|---|---|---|---|---|---|
| From | To | Employer | Type | Salary | Reason Terminated |
| | | | | | |

## MARITAL HISTORY

| Present Spouse | Home Address | DOB | Date & Place of Marriage | Status |
|---|---|---|---|---|
| denies | | | | |

Occupation _____   Employment Address _____

| Children | Address | DOB | Sex | Other Parent |
|---|---|---|---|---|
| Danny Alfaro | ▉ Anaheim | ▉ | Male | Unknown |
| Manny Cuevas | ▉ L.B.CA | ▉ | Male | Manuel Cuevas |
| Eddie Cuevas | " " | " " | Male | Manuel Cuevas |
| Ernie Cuevas | " " | " " | Male | Manuel Cuevas |

| Previous Marriages | Address | Date Married | Terminated |
|---|---|---|---|
| denies | | | |

**ORDERED C...** 001092

The __14__ day of ____ 92

**PRE SENTENCE REPORT**

F0502-10205 (A) (8/79)

## FAMILY DATA

Father  Died _____
Jose Luis Alfaro  Age 39  DOB ███-52  POB Mexico
Address  Mexico  Telephone _____  Ethnic Background  Hispanic
Occupation  disabled/alcoholic  Religion  Catholic
Marriage Date _____  Status  Separated

Died _____
Mother  Silfia Melendez Alfaro Age 39  DOB ███-53  POB Mexico
Address  (not stated)  Telephone  638-7292  Ethnic Background  Hispanic
Occupation  Housekeeping  Supervisor  Religion  Catholic
Other Marriages: Father

| Name | Dates | Status of Marriage | Date of Termination |
|------|-------|--------------------|---------------------|
|      |       |                    |                     |
|      |       |                    |                     |

Other Marriages: Mother  — lives with boyfriend: Salvador Alonso

| Name | Dates | Status of Marriage | Date of Termination |
|------|-------|--------------------|---------------------|
|      |       |                    |                     |
|      |       |                    |                     |

| Brothers & Sisters | Age | Address | | | | Occupation |
|--------------------|-----|---------|--|--|--|------------|
|                    |     | No. | Street | City | State |            |
| Silvia | 19 | ██████ | | Anaheim, CA | | not stated |
| Jose Luis | 13 | " | " | " | " | " " |
| Richardo | 3 | " | " | " | " | N/A |
| Salvador | 1½ | " | " | " | " | N/A |
| Alex | 6 mos. | " | " | " | " | N/A |

| Former Residences | Dates | |
|-------------------|-------|--|
|                   | From  | To |
| Orange County | Birth | Present |

## EDUCATIONAL BACKGROUND

Highest grade completed  7th  Where  Ball Jr. High School  Degrees held

## MILITARY RECORD

Branch  denies  Dates of Service _____  Service No. _____
Highest rate or rank _____  Type of Discharge _____  Job Classification _____
Duty Assignments _____  Honors & Benefits _____

## PERSONAL INFORMATION

Health  not stated  Health Problems  not stated  Organizations—Religion  not stated

Hobbies and Interests
Taking classes - received parenting certificate, self-esteem class; fix
other inmates hair, make-up and nails; listening to soul music; writing
letters (4-5 a day); church when available.

Habits
Tobacco:  not stated
lor:  not stated
ugs:  not stated

1738

Vehicle License No.  not stated  Firearms owned / possessed:
Type
Color  001093  not stated
Year

Additional Data:

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                    Page 2A

PRESENT OFFENSES

       Count 1: 187(a) PC (First Degree Murder);

       Count 2: 459/460.1 PC (Residential Burglary - First Degree);

       Count 3: 211/212.5(a) PC (Residential Robbery - First
              Degree).

       Additionally, true findings that in the commission of Counts 1, 2 and 3, the defendant personally used a deadly and dangerous weapon, to wit: a knife, within the meaning of Penal Code Section 12022(b).

       Further, true findings that the murder of the victim occurred while the defendant was engaged in the commission of a robbery, within the meaning of Penal Code Section 190.2(a)(17)(i).

       Also, true findings that the murder of the victim occurred while the defendant was engaged in the commission of a burglary, within the meaning of Penal Code Section 190.2(a)(17)(vii).

001094
1739

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                    Page 3

COURT STATUS

On November 30, 1990, an Information was filed in the
Superior Court of Orange County charging the defendant, Maria Del Rosio
Alfaro, with the following offenses:

      Count 1  Violation of Section 187(a) of the Penal Code
               (Murder).

      Count 2  Violation of Sections 459/460.1 of the Penal Code
               (Residential Burglary - First Degree).

      Count 3  Violation of Sections 211/212.5(a) of the Penal Code
               (First Degree Robbery - Residential).

It was additionally alleged that in the commission of
Counts 1, 2 and 3, the defendant personally used a deadly and dangerous
weapon, to wit: a knife, within the meaning of Penal Code Section
12022(b).

It was additionally alleged that the murder of the victim was
committed by the defendant while the defendant was engaged in the
commission of the the crime of robbery, within the meaning of Penal
Code Section 190.2(a)(17)(i).

Additionally, it was alleged that the murder of the victim
was committed by the defendant while the defendant was engaged in the
commission of the crime of burglary, within the meaning of Penal Code
Section 190.2(a)(17)(vii).

On March 23, 1992, following a jury trial, the defendant was
found guilty of all three Counts and true findings were made that she
had personally used a deadly or dangerous weapon in the commission of
those offenses.  The jury additionally found to be true both special
circumstances which had been alleged.  The matter was subsequently
continued for deliberation by the jury with regard to the penalty phase

001095                                                    1740

EX 62   1030

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                    Page 4

1  of the case.  During subsequent deliberations, the jury deadlocked ten

2  to two in favor of recommending the death penalty for the defendant.  A

3  second jury was impaneled and on June 9, 1992, the jury found that the

4  appropriate penalty to be imposed upon the defendant was death.  The

5  case was continued to July 14, 1992, at 9:00 a.m., in Department 41 of

6  Orange County Superior Court, for a probation and sentencing hearing.

7  The Probation Department was ordered to prepare a court report for that

8  hearing.

9  CIRCUMSTANCES OF THE OFFENSE

10         According to records of the Orange County Sheriff's Office

11  (case #90-26853), on June 15, 1990, numerous officers were dispatched

12  to the residence at 10462 Hedlund Drive, in an unincorporated area of

13  Anaheim, in regard to a reported stabbing.  It was learned that

14  Mrs. Linda Wallace and her sister-in-law, Joyce Wallace, had arrived at

15  the home and discovered Linda's nine-year-old daughter, Autumn Carol

16  Wallace, lying face-down in a large pool of blood on a bathroom floor.

17  Sheriff's officers were called to the scene and it was determined that

18  the child was  deceased and had been stabbed in excess of 50 times.  A

19  paring knife belonging to the residence was found nearby on the  floor.

20  Further investigation revealed that the residence had been burglarized

21  and that property worth approximately $1,350 had been taken.  Among the

22  stolen items was a VCR, television, clothes iron, clock/radio,

23  typewriter, calculator, and women's clothing.  The victim's mother told

24  officers that when she first arrived at the residence that date, her

25  daughter, April Wallace, and a boyfriend told her that it appeared that

26  the dwelling had been broken into and that they did not know where

27  Autumn (who had been home alone after school)  was.  The victim's 001096

28

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                    Page 5

1   mother had then entered the dwelling and discovered her deceased

2   daughter.

3           Contact was made with several neighbors, who indicated that

4   they had seen a vehicle backed into the driveway of the Wallace

5   residence at approximately 4:00 p.m. that date.  They described seeing

6   two Hispanic male adults near the car, one of whom was playing with a

7   Hispanic child approximately one year of age.  During a subsequent

8   interview, the victim's sister, April Wallace, was asked if she knew

9   anyone with a young Hispanic child and she mentioned the defendant,

10  Maria Del Rosio Alfaro, a former friend of her's.  Ms. Wallace

11  described the defendant as being an intravenous drug user who was

12  capable of theft.

13          The defendant's finger prints were found in the bathroom of

14  the dwelling and on a microwave oven, which had been moved during the

15  burglary but which had not been stolen.  The defendant was located on

16  June 27, 1990, and was taken into custody.  A narcotic evaluation was

17  performed on the defendant subsequent to her arrest.  Numerous

18  hypodermic injec .on sites were located on the defendant's hands, left

19  arm, and neck.  During a subsequent lengthy interview, she acknowledged

20  that she had gone to the victim's residence accompanied by two Hispanic

21  males and her son on June 15, 1990 to commit a burglary.  She indicated

22  that she had intended to sell the stolen property and use the proceeds

23  to buy "dope."  She indicated that she told the two men, who did not

24  enter the dwelling, that she used to live there and needed to retrieve

25  some personal items.  She said that she gained entrance to the home by

26  asking Autumn if she could use the bathroom there.  Once inside the

27  dwelling, she lured the victim to a bathroom inside by asking her to

28  001097                                                    1742

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                    Page 6

1   clean an eyelash curler she had in her possession.  She then obtained a

2   paring knife from the kitchen and attacked the child to prevent Autumn

3   from identifying her.  She denied anyone else was involved in the

4   stabbing.   After the murder, she carried various stolen articles to

5   the parked vehicle and placed them into the trunk and on the seats.

6   She and her companions then left the area and she later sold the

7   property to several individuals at a nearby apartment complex for

8   approximately $240.

9          Based on witnesses' descriptions, composite drawings of the

10  two male Hispanics were circulated in the area.  On July 2, 1990, 35-

11  year-old Antonio Moreno Reynoso approached a patrol officer from the

12  Anaheim Police Department and indicated that he was aware that officers

13  were looking for him.  He essentially corroborated the defendant's

14  story and said that he remained outside the dwelling playing with the

15  defendant's young son while she went in the house.  He denied knowing

16  the identity of the second man at the scene.  That individual has, to

17  date, not been identified.

18         On July 2, 1990, contact was made with a man who confirmed

19  that the defendant had been selling items similar to those stolen from

20  the Wallace residence at his apartment complex on approximately

21  June 15, 1990.

22  VICTIM'S STATEMENT

23         The victim's mother, Linda Wallace, was telephonically

24  contacted by the probation officer and was advised of the date and

25  location of today's sentencing hearing and of her right to be present

26  for testimony prior to the defendant's sentencing if she desired.

27  During that conversation, Mrs. Wallace indicated her willingness to

28

1743

EX 62   1033

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                    Page 7

1  submit a letter for consideration by the Court and it was received by

2  FAX transmittal on July 2, 1992.  She also verbally told the

3  undersigned that her two surviving daughters may intend to submit

4  letters for the Court's consideration, but they have not yet been

5  received as of the date of the dictation of this report.  Mrs. Wallace

6  additionally indicated that a friend of her's, Mrs. Linda Hand, would

7  like to submit a letter for consideration.  That letter was also

8  received by FAX transmittal (on July 1, 1992).  Both letters are

9  attached for the Court's consideration.  Mrs. Wallace's letter reads as

10  follows:

11        "I would like to begin by thanking you for allowing
          me to write this letter for you to read and allowing
12        it to be put in Maria Del Rosio Alfaro's file.

13        "It is very important to my family and me, but more
          important, I feel I owe it to my daughter, Autumn.
14
          "In this brief letter it would be very difficult for
15        me to explain how the loss of Autumn affected my
          family and me.  I can tell you however, the pain is
16        unbearable and that our hopes and our dreams for
          Autumn are now lost and right now I see no future for
17        myself.  Autumn filled my home and my life with joy
          for nine years and now my home is empty.  As for my
18        life, I'm only going through the motions.  Autumn was
          one of the most precious gifts I have ever received
19        and she was taken from me so quickly and so
          brutally.
20
          "Maria Del Rosio Alfaro entered my house pretending
21        to be a friend and did the most heinous crimes that
          can be committed.  She took a beautiful child's life
22        for drug money.  She left her to bleed to death after
          stabbing her more than 50 times.
23
          "I thank the County Sheriff's Department, my
24        investigators, and the District Attorney's Office for
          doing an excellent job of finding, incarcerating and
25        convicting Maria Del Rosio Alfaro.  The jury that was
          selected and given all the facts came to the
26        unanimous decision that Maria Del Rosio Alfaro should
          die in the gas chamber.  It is my opinion that she
27        should be held accountable and receive that sentence

28

001099

1744

EX 62   1034

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                        Page 8

1            that the jury recommended.

2            Thank you, Your Honor, Linda C. Wallace."

3            In her letter to the Court's attention, Mrs. Linda Hand

4    pointed out that the victim, Autumn Wallace, and her own daughter,

5    Ronelle, were best friends and had been acquainted for approximately

6    five years at the time that Autumn was murdered.  Mrs. Hand describes

7    an extremely close relationship with Autumn and she stated, "I loved

8    her with all my heart, as if she were my own daughter."  She points to

9    the impossibility of expressing the magnitude of her family's loss with

10   Autumn's death.  She refers to "overwhelming pain" that "continues to

11   be a daily companion" since the offense.  She described the victim as

12   being "a beautiful, sensitive, and gentle child."  She indicated that

13   Autumn was an excellent student and was athletically and artistically

14   inclined.  As to sentencing, Mrs. Hand states:

15           "I believe that Maria Del Rosio Alfaro must be
             accountable for her actions.  There is no sentence
16           that you can impose that will balance the scales.
             Autumn can never be returned to us.

17
             "It is in my opinion that the defendant be required
18           to receive the sentence that the jury has
             recommended."
19
ADJUSTMENT IN ORANGE COUNTY JAIL
20
21           The defendant's inmate records (booking #1233155) were

22   perused on June 15, 1992.  It is noted that as she had been in custody

23   for a substantial length of time at that point, her inmate records had

24   been compiled in six separate "jackets," the first five of which were

25   unavailable for the probation officer's perusal.  As concerns the last

26   "jacket," it was noted that on April 21, 1992, she was ordered held

27   separate from all other inmates.  On May 23, 1992, the defendant was

28

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                    Page 9

classified for a housing change due to the need for "acute mental
health care."  On May 30, 1992, an entry was placed in her "jacket"
indicating that she no longer needed mental health care of that nature.
On June 11, 1992, the defendant was transferred to the administrative
segregation section of Orange County's Women's Jail.

DEFENDANT'S STATEMENT

        On June 11, 1992, a letter was forwarded to the defendant in
custody requesting that she prepare a written statement concerning the
offense, her sentencing, and her social and legal backgrounds.  It was
requested that she return the written statement to the probation
officer's attention by June 26, 1992. She had failed to do so by
June 30, 1992 and, consequently, contact was made with her at the
Orange County Women's Jail on that date.  She explained that a private
investigator, Laura Lawhon, had helped her prepare a portion of the
written statement and that Ms. Lawhon apparently intended to send the
statement to the probation officer.  Telephonic contact was made with
Ms. Lawhon (542-7263) and she indicated that the statement had been
given to a secretary at the defendant's attorney's office.  She
subsequently facilitated the delivery of the statement, which was
received on July 1, 1992.  Attached to her brief written statement were
several other documents which are attached for the Court's
consideration.  The documents include a typewritten statement she
submitted to a psychiatrist from UCLA entitled "Why I Should Live!".
Additionally, a handwritten letter authored by the defendant addressed
to Mrs. Linda Wallace, the mother of the deceased victim, was included.
She also included a handwritten letter addressed to "My Boys."  A
social history report prepared by Sandberg Investigations dated

001101                                          1746

EX 62   1036

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                     Page 10

1   March 22, 1992 was included, as well as a medical history concerning

2   the defendant's treatment for drug abuse (dated February 6, 1986).  All

3   of those documents are attached for the Court's consideration.

4           The defendant submitted a written statement concerning her

5   involvement with alcohol and drugs.  The statement reads as follows:

6           "Alcohol and drugs ended my life at 18, it hurt many
7           of my family members and left 4 innocent babies
            without a mom."

8           As to the offense itself, on page 12 of the report prepared

9   by Sandberg Investigations, the following passage is related:

10          "Rosie states that she knew the Wallaces three years
11          before the death.  She states that deep down inside
            she does feel guilty because she states that if she
12          didn't show her two male companions the house Autumn
            would still be alive.  Rosie says she keeps telling
13          herself that Autumn died because of her.  She claims
            she is always reminded of the pain Autumn must have
14          felt.  She says she has asked herself over and over,
            'Why did I pick that house?'  She cries and states,
15          'I really liked Autumn.'"

16          The defendant's letter to Mrs. Wallace reads as follows:

17          "Mrs. Wallace I know sorry is not enough for what has
            happened sorry won't bring little Autumn back.  I am
18          truely sorry and if I could turn back time I would
            and I would of made it me instead of your inocent 9
19          year old little girl.  I'm sorry we took her life and
            I'm sorry you will never have her there to see her
20          grow up and become a women.  We've both lost
            something hear - you've lost your inocent little girl
21          - I lost my inocent little boys whom I will never get
            to see grow up - who will grow up with out a mother
22          and who will suffer cause of my stupidities and
            mistakes.  I just want to tell you that I will pay
23          for the loss of your girl and for the pain and sorrow
            I've put you and my children and my familey threw.  I
24          could just imagine what you've gone threw cause I'm a
            mother to and my children are my pride & joy and like
25          any mother who loves there children would give her
            life for them, I know you want the murderer of your
26          little girl to burn in hell - but please understand
            that I'm deeply sorry and will pay - even though it
27          wasn't only me who cosed this.  I will live with this

28

001102
1747

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                    Page 11

on my mind for the rest of my life no matter how much
I try to block it out, I pray some day you will find
it in your heart to forgive me."

The defendant's letter to her sons reads as follows:

"Danny, Manny, Eddie & Ernie . . .  My dearest
children - at times I feel I shouldn't even be called
a mother - for all the hurt and sorrow I've put you
inocent children threw.  I pray every night that the
Lord will watch & protect you and that some day you
will find it in your little hearts to forgive me your
mother.  Please don't think and believe I'm that cold
hearted killer people say I am - cause I'm not - if I
were that mean person I would of never brought you 4
in to the world.  You my baby boy's are my pride &
joy and I would & will give my life for you 4.  I'm
sorry I will not be there to see you all grow up and
become men - but I will always have you close at
heart no matter what.  I love you Danny, Manny, Eddie
& Ernie.  Please forgive me some day.  Always praying
for you.  -Love-  Mommy!"

As concerns a disposition for the case, the defendant

offered the following written statement:

"Life without (parole) should of been the appropriate
sentence because I am not a antisocial personality, I
am loving, caring, sharing, compassionate person.

"Share my problems with others and help save life's
of innocent children who'll become victims of drugs
or the ones who are already involved, let them know
that there is no future with drugs if so there future
will be behind bars in a isolated cruel world called
(jail) or prison.  (signed) Maria Alfaro"

STATEMENT OF REFERENCES AND INTERESTED PARTIES

Several contacts were made with Deputy District Attorney

Chuck Middleton concerning the defendant and her sentencing.  On

June 24, 1992, he offered the following statement concerning the

sentencing procedure:

"The circumstances of the crime are so brutal,
vicious and cruel, and the defendant was so cold and
calculating, that the death penalty is the only
option.  If any murder deserves the death penalty,
this one does."

001103                                                    1748

EX 62   1038

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                    Page 12

1    Contact was made with Investigator Gary Bale of the Orange

2   County Sheriff's Office.  He said that he usually tries not to get

3   emotionally involved in cases, but that this was one of the toughest

4   cases that he has ever worked on.  He stated, "There was absolutely no

5   excuse to murder that little girl."  He said that the only reason the

6   defendant had for murdering Autumn was that "she didn't want to be

7   identified" as being responsible for the burglary.  He said that "dying

8   by exsanguination can be painless from a clinical viewpoint, but not

9   when you've been stabbed over four dozen times.  He again cited the

10   "senselessness" of the murder and the "brutality of it."  He offered

11   his opinion that the defendant "had no remorse except for being

12   caught," and that "if anyone ever deserves the death penalty, this

13   woman does."  He said that he has no compassion for the defendant

14   simply because she is a mother because if she truly cared about the

15   welfare of her children, she would not be using heroin  or be involved

16   in prostitution.  He pointed to his belief that the defendant appeared

17   to exhibit "tears and remorse in court," but then as soon as she was

18   returned to Orange County Jail she began playing the "tough role."

19    Contact was made with Investigator Tom Giffin.  He said that

20   it is his belief that the defendant "has shown no remorse for her

21   actions."  He said that he has sat through all of the various trials

22   and he characterized Ms. Alfaro as being "deceptive and deceitful," and

23   said that "she will not accept responsibility for her actions."  He

24   indicated that "her contentions of an involved third party stabber are

25   completely unsupported by the physical evidence and her initial

26   admission/confession."  He said that her story implicating "Beto" was

27   only offered "after legal representation started."  He said that it is

28

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                Page 13

1   his belief that "the brutality of the crime does not merit

2   consideration for anything but the death penalty."  As an example of

3   the deception he has seen in the defendant, he pointed out that after

4   the first jury hung up during the death penalty deliberation, she

5   returned to Orange County Jail after a court appearance and told a

6   deputy in the jail, "I'll never be able to do that again (testify), I'm

7   no actor."  She further stated to the deputy, "Next time, I'm really

8   going to be cold.  I just want to get it over with."  Investigator

9   Giffin said that he had also heard that the defendant had told another

10  inmate that "all she has to do is convince one person on the jury that

11  Beto did it and she would get a hung jury."  He reiterated his belief

12  that the death penalty was the appropriate sentence for this case.

13          In response to a letter forwarded to the defendant's

14  attorney, William Monroe, he replied in writing in a letter dated

15  June 25, 1992, which is attached for the Court's consideration.  He

16  asks that the Court reduce the penalty in this case from death to life

17  without possibility of parole.  He indicates that the "general

18  objectives" as concerns sentencing as outlined in Sentencing Rule 410

19  "would be as well served as imposing the death penalty" if the

20  defendant was sentenced to life without the possibility of parole.  A

21  sentence of that nature would continue to "protect society, effectively

22  punish the defendant, and certainly ensure that she would be leading a

23  law-abiding life and be deterred from committing future offenses."

24  Mr. Monroe questions "whether or not any punishment effectively deters

25  others from criminal conduct by demonstrating its consequences."

26  Attached to Mr. Monroe's letter is a summary prepared by sentencing

27  consultant Norman M. Morein which compares the circumstances of 19

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                    Page 14

1   female defendants who are presently serving life sentences without the

2   possibility of parole at the California Institution for Women.

3   Mr. Monroe concedes that the nature of the crime was "extremely

4   serious" and that the "vulnerability of the victim was quite apparent."

5   He points out, however, his belief that the defendant was not armed at

6   the time she entered the victim's house and he does not belief the

7   defendant "planned to commit any crime other than burglary at the time

8   she entered the victim's house."  He contends that the defendant had no

9   idea that Autumn would be present in the dwelling when she initially

10  arrived.

11          Mr. Monroe points out that at the time of the offense, the

12  defendant was just 18 years of age "with no prior history of violent

3   conduct."  He also indicated that she had no prior felony convictions

14  on her record and "was not a violent person by nature."  He indicated

15  that the defendant comes from a relatively stable family background,

16  and that her mother has been steadily employed for the past 20 years.

17  He acknowledges that the defendant "had an extensive history of drug

18  and alcohol abuse" beginning at age 12.  He points to his belief that

19  the defendant "is extremely remorseful" and in particular, he cites the

20  letter she authored to Mrs. Linda Wallace.  As concerns the offense

21  itself and the defendant's contention that an unnamed male companion

22  participated in the offense, he offered the following statement:

23          "It appeared that Rosie Alfaro participated in the
24          crime under circumstances of coercion or duress that,
            although not amounting to a defense, should be
25          considered as a mitigating factor.  The evidence
            disclosed that Rosie Alfaro, together with her 14
_6          month old son and two male companions, went to the
            victim's home for the purpose of burglarizing it so
            as to obtain merchandize to convert into cash for the
27          purchase of drugs.  Rosie entered the house and
28          distracted the victim, who was in the house while she

001106
1151

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                    Page 15

1    (Rosie) began to burglarize the house.  One of the
2    male companions came into the house and discovered
     the presence of the victim and, in a fit of rage,
3    told Rosie that the victim must be eliminated because
     she could identify the participants in the burglary.
4    Rosie did not wish to do so but the male threatened
     to harm Rosie Alfaro's baby who was in the possession
5    of the other male outside the house.  Under the
     circumstances of duress, Rosie Alfaro initiated the
6    attack on the victim but, according to Rosie, could
     not complete and left the bathroom where the victim
7    had been lured and apparently this unknown third
     party completed the homicide.  There was no clear cut
8    evidence to demonstrate the presence of a third
     person in the house at the time of the homicide,
9    however, there was circumstantial evidence to support
     the theory that a third person was in the house with
10   Rosie Alfaro at the time of the homicide."

11   The defendant submitted the names and telephone numbers of

12   six references to be contacted in her behalf.  On June 1, 1992, contact

13   was made with Gerardo Rangel (995-8125).  He stated that he met the

14   defendant approximately 10 years ago when he was employed as a

15   bilingual instructional aid teaching and counseling at Ball Junior High

16   School in Anaheim.  He served in a professional capacity through the

17   school system in his contact with the defendant and when she later

18   elected to drop out of school, at her mother's request, he continued

19   for approximately a three-year period on an "on and off basis" to

20   counsel with the defendant at her dwelling.  Mr. Rangel said that his

21   counseling efforts were particularly focused on the defendant's

22   behavior and goals.  He said that he was "very shocked" to hear of the

23   defendant's involvement in the present offense.  He said that he would

24   have never thought her to be capable of such an offense and said "in

25   the absence of drug influence, this would not have happened."  He said

26   that he believes that she "lost her reasoning capacity due to drug

27   influence."  He indicated that he would hope that the defendant does

28

001107

1752

EX 62   1042

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                    Page 16

1  not receive the death penalty because he believes that in the absence

2  of drug influence, she would not have exhibited "the malicious intent

3  of hurting someone, especially a child.

4       Contact was made with Mrs. Arlene Benedict (776-2809).  She

5  said that she had been a next-door neighbor of the defendant since 1979

6  and was well acquainted with the defendant.  She said that as a child,

7  Ms. Alfaro was "very quiet and shy" and was a good companion for her

8  own children.  She indicated that the defendant's father was a "very

9  bad alcoholic" who was physically abusive of various family members.

10  She further stated that the defendant's mother was a "workaholic" and

11  spent as much as 14 hours daily away from the home in employment.

12  Mrs. Benedict conceded that the defendant developed a "drug problem"

13  when she was approximately 12 or 13 years of age.  She referred to

14  Ms. Alfaro as being "a good kid if she wasn't high," and said that she

15  appeared to be a relatively good mother to her two oldest children,

16  Danny and Manny.  She said that at one point, the defendant was

17  employed at a fast food outlet and was attempting to provide well for

18  her children.  She would have difficulty, however, in coping with her

19  abusive boyfriend, Manuel Cuevas, who, according Mrs. Benedict, was "a

20  nasty drinker."  During periods of turmoil between the defendant and

21  Mr. Cuevas, Ms. Alfaro would sometimes become somewhat unfocused on her

22  appropriate goals.  Mrs. Benedict said that she went into "shock" when

23  she learned about the defendant's involvement in the offense.  She

24  characterized Ms. Alfaro as being a "follow-the-leader type," and said

25  that she personally believes that she was the "stooge" for the two men

26  who accompanied her to the scene of the crime.  She said that she

27  firmly believes that Mrs. Alfaro was not alone in the victim's home,

28

001108

1753

EX 62   1043

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                    Page 17

1    and she believes her testimony that she only stabbed the victim three

2    times and that one of her male companions caused all of the victim's

3    injuries.  As to a sentence in this matter, she stated, "I don't think

4    she deserves the death penalty.  Look at all of the multiple murderers

5    who don't get the death penalty."  Mrs. Benedict also said that in

6    addition to the defendant, "drugs should have been on trial."

7            Contact was made with 18-year-old Janell Laird (758-1568).

8    She said that she has lived in the defendant's neighborhood for the

9    past 14 years and during that entire time, has been acquainted with

10   Ms. Alfaro.  She stated that while they were acquainted, they were not

11   extremely close friends.  She conceded that the defendant had a drug

12   problem which, in her opinion, would have contributed to her

13   involvement in the present offense.  As to sentencing, Ms. Laird said

14   that she would prefer to leave that up to the Court.

15           Contact was made with Ms. Toby Silver, a registered nurse who

16   works in the Orange County Jail Mental Health team.  She stated that

17   she has been seeing the defendant therapeutically for the past year and

18   that Ms. Alfaro has never presented any problems to her.  She points

19   out that the defendant has been "very depressed" subsequent to the

20   jury's findings and "sleeps a lot" at present.  She said that the

21   defendant has expressed some remorse for her involvement, but she

22   concedes that Ms. Alfaro has also made some contradictory statements to

23   some other inmates and deputies.  She indicated that the defendant does

24   not express or show her feelings very well, and she concedes that

25   Ms. Alfaro "doesn't always tell the truth."  She said that she believes

26   the defendant may have misled her own attorney by not telling the

27   truth, which in turn of course would impact on her defense.  She said

28

001109                                                    1754

EX 62   1044

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                     Page 18

that the defendant is "not very literate" and appears to have some
difficulty understanding simple words and phrases.  She said that she
believes if Ms. Alfaro is sentenced to death, "she will retreat into a
shell" while in prison.

On July 2, 1992, contact was made with Albert Lopez (532-
2569).  He stated that he is involved as a lay minister and has been
acquainted with the defendant since August of 1991.  He estimates that
he has personally visited her for religious purposes on approximately
25 occasions.  He indicated that she has been very receptive to
Christian teaching and that "in April, she dedicated her life to the
Lord."  He said that he has exchanged letters with Ms. Alfaro on a
number of occasions and that they frequently exchange various passages
from the scriptures.  He said that subsequent to the jury's verdict in
the case, she has noticeably become "depressed."  He referred to the
present offense as being "a tragedy," but expressed his opinion that
"she didn't plan it" and that she "was high on drugs at the time."  He
said, "If they give her life in prison, she could do it."

The defendant requested that the probation officer contact
Manuel Cuevas (310/428-9571).  Mr. Cuevas is reportedly the father of
the defendant's three youngest sons.  On July 1, 1992, telephone call
was placed to that residence and a brief conversation was undertaken
with an adult female acquainted with Mr. Cuevas.  She said that she
would leave a message to call the probation officer on July 2, 1992 in
the morning if he cared to share a statement in the defendant's behalf.
While the probation officer was present to receive the requested call,
Mr. Cuevas did not contact the undersigned.

001110
1755

EX 62   1045

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                    Page 19

PRIOR RECORD (CII #A08131516; OCSO #740-329)

According to records of the Federal Bureau of Investigation and the California Department of Justice, the defendant has no prior record of any type of criminal activity.

Records of the Orange County Probation Department (J-134618) reflect that the defendant was arrested by the Anaheim Police Department (case #86-085J4) on February 27, 1986. The charges were possession of marijuana for sale, possession of less than an ounce of marijuana, and possession of a hypodermic needle and syringe. The applicable police report indicates that officers on a narcotics detail observed the defendant and seven male subjects seated on the front lawn of the residence at 1545 S. Jeffrey. The officers approached the group for routine contact and observed that the defendant had numerous hypodermic injection marks in her left forearm. She was found to have a baggy of marijuana worth approximately $10 in her waist band and three hypodermic needles and syringes in her purse. While the matter was referred by the Anaheim Police Department to the Orange County Probation Department, the requested petition was rejected by the District Attorney's Office due to "defective search and seizure problems and Miranda problems."

Probation Department records further reflected on June 1, 1986, the defendant was arrested by the Anaheim Police Department (case #86-22479) on a charge of petty theft. Her arrest occurred after she was observed to "shop lift" three men's shirts worth $51 from a Mervyn's Department Store. The Application for Petition which was provided to the Probation Department by the Anaheim Police Department was subsequently dismissed on July 1, 1986 when the defendant's mother

EX 62   1046

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                    Page 20

1   agreed to transport her to Mexico to reside with her father.

2         Probation records further reflect that on April 7, 1988, the

3   defendant was arrested by the Newport Beach Police Department (case

4   #88-03989) at approximately 11:20 p.m., when she and her 19-year-old

5   boyfriend, Manuel Cueva were found in possession of open cans of beer.

6   At the time of her arrest, she falsely identified herself as Rosie Mary

7   Alfaro and gave a false date of birth of December 10, 1971.  Her sister

8   Sylvia was contacted by police officers however, and provided the

9   defendant's true name and date of birth.  Subsequently, a petition was

10  filed in Orange County Juvenile Court on June 21, 1988 charging the

11  defendant with violation of Section 25662 of the Business and

12  Professions Code.  She appeared in Court at a hearing on August 2, 1988

13  where findings were made on the charge.  She was declared a ward of the

14  Orange County Juvenile Court and was released to her parents' custody.

15  She was required to complete 15 days on the Court Work Program as a

16  condition of probation, and was ordered to consume no alcohol nor drugs

17  and to submit to search and seizure.  She subsequently completed two

18  days on the Court Work Program, but then failed to report on four

19  additional days.  She also failed to submit a medical verification

20  regarding her absences and she was ultimately suspended from the Court

21  Work Program on September 27, 1988.  She was returned to Orange County

22  Juvenile Court on February 1, 1989 on a probation violation allegation

23  and the Work Program Order was vacated, and she was ordered committed

24  to home confinement for 35 days.  Subsequently, after she completed the

25  Home Confinement Program, wardship was ordered terminated on

26  November 14, 1989.

27         Records of the California Department of Motor Vehicles 001112

28                                                  ารา1757

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                    Page 21

1  indicate that the defendant does not hold a valid California driver's

2  license.  She has an identification card (A6703291) with an

3  anticipated expiration date of October 12, 1995.  The defendant has no

4  reported departmental actions, convictions, failures to appear, nor

5  accidents.

6  SOCIAL HISTORY

7          The defendant is apparently the oldest of three children born

8  to the union of their natural parents.  The defendant's father (who is

9  reportedly a disabled alcoholic) separated from the family in 1986 and

10  moved to Mexico to reside with his mother.  Subsequently, the defendant

11  and her siblings resided with their mother in Anaheim.

12          For an in depth review of the defendant's social background,

13  the attention of the Court is respectfully drawn to the attached

14  evaluation prepared by Sandberg Investigations.  It appears that the

15  defendant began experiencing difficulty in the school setting due to

16  limited intellectual capacity, and she ultimately dropped out of school

17  after having completed just the seventh grade.  The defendant had her

18  first child out of wedlock at age 15 and according to documents she

19  provided to the probation officer, she does not know the father of the

20  child.  She has subsequently had three additional sons who were born to

21  her out-of-wedlock relationship with Manuel Cuevas.  Those children

22  reportedly reside with Mr. Cuevas at his dwelling in Long Beach.  The

23  defendant's oldest son is reportedly being reared by the defendant's

24  sister in Anaheim.

25          The defendant indicated her last employment terminated

26  approximately six weeks prior to the present offense.  At that time,

27  she was employed as a cashier at a local fast food restaurant.

28  001113                                          1758

EX 62   1048

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                    Page 22

1      The evaluation by Sandberg Investigations relates that when

2    the defendant was approximately 14 years of age, she became acquainted

3    with a middle-aged man who ultimately was responsible for getting her

4    and her girlfriend (of similar age) involved in prostitution.  While

5    thus engaged, she was involved in intravenous drug abuse.  At ages 14

6    and 15, the defendant sought brief treatment for drug abuse.  At age

7    15, when she had her first child, she tested positive for syphilis and

8    received medical treatment.  She also acknowledged having used both

9    cocaine and heroine during her early pregnancy.

10      The defendant had apparently been relatively transient prior

11    to the commission of the present offense.  During the present

12    investigation, the defendant did not provide the address or telephone

13    number of any residence.

14    <u>DISCUSSION AND EVALUATION</u>

15      Appearing before the Court for sentencing at this time is

16    20-year-old Maria Del Rosio Alfaro.  Applicable police reports appear

17    to indicate that the defendant and two Hispanic males drove in the

18    vehicle belonging to one of the men to the residence of the victim of

19    this case on June 15, 1990.  The defendant had apparent intentions of

20    burglarizing the dwelling and converting the merchandise into currency

21    for subsequent purchase of drugs or narcotics.  When she arrived at the

22    residence, she apparently made contact with the nine-year-old victim,

23    Autumn Carol Wallace.  Evidently, she gained entry to the dwelling by

24    requesting permission to use the bathroom.  She then apparently lured

25    the child to the bathroom by asking her to clean an eyelash curler she

26    had in her possession.  Ms. Alfaro then obtained a paring knife from

27    the dwelling and attacked the child, according to the jury's verdict,

28

001114

1759

EX 62   1049

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                    Page 23

1   resulting in the victim's death.

2           The defendant has evidently testified to her contention that

3   one of the two men who accompanied her entered the dwelling and

4   prompted her attack on the victim by pointing out that the child would

5   identify them as being the burglars.  It was also apparently contended

6   that while she stabbed the victim several times, the unnamed Hispanic

7   male companion did the majority of the damage to the victim.

8   Correspondence received from the defendant's attorney during the

9   present investigation indicates his contention that his client had no

10  desire to harm the victim, but did so when the unnamed third party

11  threatened the defendant's young child with harm if the defendant did

12  not attack the victim.

13                      CIRCUMSTANCES IN AGGRAVATION

14  The Crime:

15          421(a) - 1   Clearly the offense involved great violence and

16                       great bodily harm disclosing a high degree of

17                       cruelty, viciousness, or callousness in the

18                       defendant.

19          421(a) - 2   The defendant was armed with and used a knife

20                       during the commission of the crime.

21          421(a) - 3   The youthful, diminutive victim is thought to

22                       have been particularly vulnerable.

23          421(a) - 11  It would appear that the victim took advantage of

24                       a position of trust or confidence as a family

25                       friend of the Wallace's to commit this crime.

26  The Defendant:

27          421(b) - Not applicable.

28  001115

1760

EX 62   1050

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie                    Page 24

CIRCUMSTANCES IN MITIGATION

The Crime:

        423(a) - 4  It is noted that the defendant's attorney
contends that the defendant's actions occurred
under circumstances of duress, in that he
maintains that she was induced to commit the
offense out of fear for the safety of her own
child.  It is noted for the Court's
consideration, however, that by its verdict, the
jury appears to have discounted this contention.



The Defendant:

        423(b) - 1  The defendant has no prior record of criminal
activity as an adult and a relatively minor prior
record of delinquent activity as a juvenile.

        423(b) - 2  It appears that the defendant may have been
suffering from a physical condition, namely drug
influence and/or addiction, which may have
significantly reduced her culpability for the
crime.

        423(b) - 3  It appears that the defendant voluntarily
acknowledged wrongdoing shortly after her
arrest.

PROBATION ELIGIBILITY

        413(a) - The defendant is ineligible for probation because
she was convicted of violation of Section 187(a) of
the Penal Code and true findings were made as to the
special circumstances that the murder occurred while

001116

011761

ALFARO, Maria Del Rosio
aka GONZALEZ, Rosemary; GONZALEZ, Rosie

Page 25

1    the defendant was engaged in the commission of a

2    robbery and burglary.

3    The probation officer has determined that the defendant is a

4  person required to pay a fine under Section 13967 of the Government

5  Code.  The suggested fine for the present offense is $10,000.  It

6  appears, however, that the defendant does not have the present ability

7  to pay a fine in that amount.

8    In consideration of the heinous nature of the present offense

9  and the defendant's absolute ineligibility for probation, the only

   logical recommendation which can be tendered at this time is for the

11  denial of probation.

12  RECOMMENDATION

13    In view of the foregoing, it is respectfully recommended that

14  probation be denied.

15    Respectfully submitted,

16    MICHAEL SCHUMACHER
      Chief Probation Officer

17

18

19    Bruce R. Carel
      Deputy Probation Officer
20    569-2102

21  Dated this 14th day of July, 1992.

22  I have read and considered the foregoing
    report of the Chief Probation Officer.

23

24

25

26  JUDGE OF THE _____ SUPERIOR COURT

27

28  001117

ORDERED SIGNED
The ___ 14 ___ day of ___ JUL ___ 1992

1762

EX 62   1052

JUL-02-1992  17:33  FROM  OC SUPERIOR CT SERVICES  TO  P5642173  P.01



**ORANGE COUNTY SUPERIOR COURT**
**700 CIVIC CENTER DRIVE WEST**
**SANTA ANA, CA 92701**
**FAX PHONE: (714) 834-6171**


## FAX COVER PAGE


**DATE:** 7/2/92

**FROM:** Linda Wallace

**PHONE:** (714) 834-2226


**TO:** Deputy Probation Officer
Bruce Carel


**FAX NO.:** 569-2178


**TOTAL PAGES INCLUDING COVER PAGE =** 2


**REMARKS:**


001118
1783

➡ F0882-216 (4/90)

EX 62   1053

July 1, 1992

Honorable Ted Millard
Superior Court
County of Orange
Santa Ana, California

I would like to begin by thanking you for allowing me to write this letter
for you to read and allowing it to be put in Maria Del Rosio Alfaro's file.

It is very important to my family and me, but more important, I feel I owe it
to my daughter, Autumn.

In this brief letter it would be very difficult for me to explain how the
loss of Autumn affected my family and me.  I can tell you however, the pain
is unbearable and that our hopes and our dreams for Autumn are now lost and
right now I see no future for myself.  Autumn filled my home and my life with
joy for nine years and now my home is empty.  As for my life, I'm only going
through the motions.   Autumn was one of the most precious gifts I have ever
received and she was taken from me so quickly and so brutally.

Maria Del Rosio Alfaro entered my house pretending to be a friend and did the
most heinous crimes that can be committed.  She took a beautiful child's life
for drug money.  She left her to bleed to death after stabbing her more than
50 times.

  thank the County Sheriff's Department, my investigators, and the District
Attorney's Office for doing an excellent job of finding, incarcerating and
convicting Maria Del Rosio Alfaro.  The jury that was selected and given all
the facts came to the unanimous decision that Maria Del Rosio Alfaro should
die in the gas chamber.  It is my opinion that she should be held accountable
and receive that sentence that the jury recommended.

                    Thank you, Your Honor,

                    Linda C. Wallace

                    Linda C. Wallace

001119

1764

Fax Transmittal Memo 7672

To Mr. Bruce Carel
Company Probation Officer
Location

Fax # 569 2178

From Linda Hand
No of Pages 2

July 1, 1992

Honorable Ted Millard
Superior Court
County of Orange
Santa Ana, California

RE:  Sentencing of Maria Del Rosio Alfaro

I would like to begin by thanking you for allowing me to submit this victim impact statement.  It is very important to me, but more important, I want to for Autumn Carol Wallace, who cannot be here today.

I am Linda Hand who loved Autumn very much.  She was like my own daughter.  Autumn and my daughter Ronelle were best friends.  They met when they were four years old at pre-school and remained the best of friends until Autumn was murdered.  Autumn spent many weekends with our family and went on summer vacations with us.  I loved her with all my heart, as if she were my own daughter.

It would be impossible to capture the essence of Autumn with mere words or express the magnitude of my family's loss without her.  But it is my hope that you will be able to be in touch with some of the overwhelming pain that has been and continues to be a daily companion.

It has been 24 months since Autumn's violent death, as a result of the willful, malicious and malignant actions of Maria Del Rosio Alfaro.  Each day since that horrible June afternoon I awaken to the awareness of her absence.

Autumn was a beautiful, sensitive and gentle child.  A special gift from God.  She was loved by everyone who had the joy of sharing her brief life.

Not much was mentioned about Autumn during the trial.  A clear picture of Maria Del Rosio Alfaro had been pained.  She was there in plain sight for all to see.  But little was known about Autumn.  I would like you to know some very special things about her.  She was exactly 9 years and 6 months old.  Her hair was blond and she wore it long with pretty bows.  She had brown eyes, about 4 feet 9 inches tall and weighed 90 pounds.  Her teeth were straight which you noticed right away because she always had a pretty smile on her face.  Autumn was a very happy child.

Autumn was not only gifted with a outer beauty she also had inner beauty.  She also had artistic talent.  Some of the most happiest times were when she could paint, draw and create works of art.  Her dream when she grew up was to become a Artist.

Autumn was a straight A student.  She loved school, her teacher and her friends.  She was a member of the Student Council which was something she was quite proud of.

1765

001120



EX 62   1055

Autumn loved the summer months. She was an excellent swimmer. Autumn even taught her nephew how to swim. She loved to ride her bike, skate and play in the sprinklers. Autumn also liked to read and for her last 2 summers she joined the library book club contest. She enjoyed music and liked to dance and perform with my daughter. They would practice dance routines and then perform them proudly.

For a young girl of 9 Autumn was mature beyond her years. She was sensitive to those around her. In all the time I knew her she never said a mean thing about or to another person. She believed in God. She would wonder what Heaven was like and ask what I thought it looked like. Autumn believed her father was already in Heaven and was looking down on her. Her father died 3 years earlier from cancer. She believed he was up there fishing and probably catching lots of fish.

Although Autumn is now in Heaven her memory will live on, as she touched the hearts of everyone who knew her.

I believe that Maria Del Rosio Alfaro must be accountable for her actions. There is no sentence that you can impose that will balance the scales. Autumn can never be returned to us.

It is in my opinion that the defendent be required to receive the sentence that the jury has recommended.

Thank you, Your Honor.

Linda Hand

1766

001121

EX 62   1056

1630

NOW, BECAUSE I AIN'T, BECAUSE I DESERVE WHAT'S COMING

TO ME.

          BECAUSE I GOT KIDS OF MY OWN AND I THINK AT

TIMES WHAT WOULD I HAVE DONE IF SOMETHING LIKE THAT WERE

EVER TO HAPPEN TO ONE OF MY KIDS, OR MY LITTLE BROTHER.

I GOT A LITTLE BROTHER, TOO.  AND ALL I CAN SAY IS I'M

SORRY AND I'LL PAY FOR WHAT HAPPENED.  AND I WILL PAY.

          Q       ROSIE.  ROSIE, ARE YOU ASKING THE JURY TO

SPARE YOUR LIFE?

          A       YES, I AM, BECAUSE I'M NOT THAT

COLD-HEARTED MURDERER THAT EVERYBODY THINKS I AM.  I

ALWAYS -- I PUT MYSELF IN MISS WALLACE'S SHOES, IN HER

PLACE, AND I TRIED TO THINK OF WHAT WOULD I -- I MEAN,

WHAT WOULD I DO IF SOMETHING LIKE THAT HAPPENED TO MY

KIDS?  I'M A MOTHER, TOO.

          I CAN'T SAY I KNOW EXACTLY WHAT SHE WENT

THROUGH, BUT WHEN I THINK ABOUT IT, JUST THE THOUGHT --

          Q       ROSIE, DID YOU WRITE A LETTER TO AUTUMN?

          A       YEAH.

          Q       WOULD YOU READ IT, PLEASE.

          WHEN DID YOU WRITE THAT?  WHILE YOU WERE IN

JAIL?

          A       A WHILE BACK.

          Q       WOULD YOU READ IT, PLEASE?

          A       "AUTUMN, IF YOU COULD HEAR ME, PLEASE DON'T

TURN AWAY 'CAUSE I WANT YOU TO KNOW THAT I'M SORRY WE 001122

1767

1631

TOOK YOUR INNOCENT LIFE.  I WILL PAY FOR WHAT HAS
HAPPENED TO YOU, AUTUMN.

"IF I HAD A WISH, MY WISH WOULD BE TO BRING
YOU BACK.  BUT I DON'T AND CAN'T CHANGE WHAT IS ALREADY
DONE.

"THERE IS NOT A DAY I DON'T THINK ABOUT
YOU.  I JUST WISH IT WOULD HAVE BEEN ME INSTEAD OF YOU.
YOU NEVER DID ANYTHING TO HURT ME AND I KNOW THAT YOU
ARE -- YOU'RE IN HEAVEN AND YOU KNOW WHAT REALLY WENT
ON.  AND I PRAY TO GOD THAT HE WILL PUT IN YOUR SOUL TO
SOME DAY FORGIVE ME.

"I HAVE A PICTURE OF YOU IN MY BIBLE AND
EVERY TIME I OPEN IT I SEE -- I SEE YOUR INNOCENT FACE
AND I THINK OF MY BOYS AND WHAT I WOULD DO IF SOMETHING
WERE TO HAPPEN TO THEM AND THE THOUGHT JUST DRIVES ME
CRAZY.

"SO PLEASE KNOW THAT I AM DEEPLY TRULY
SORRY, AUTUMN, AND I WILL PAY FOR THE REST OF MY LIFE
FOR WHAT HAPPENED TO YOU."

MR. MONROE:  I HAVE NO FURTHER QUESTIONS.  *1768*

CROSS EXAMINATION

00112511

Linda

M/SS. Wallace i know sorry is not
enough for what has happened sorry
wont bring little Aubrie back. i am
truely sorry and if i could turn back
time i would and i would of made it
me insted of your innocent lil part ll
little girl. I'm sorry we ~~have taken~~
took her life and im sorry you will
never have her there to see her grow
up and become a woman. weve both
lost something here~ youve lost
your innocent little girl - i lost my
innocent little boys whom i will
never get to see grow up - who
will grow up with out a mother
And who will suffer cause of my
stupidities and mistakes. I just
want to tell you that i will pay
for the loss of your girl And
for the pain and sorrow ive
put you and my children And

.1789
001124

my familey ~~threw~~. I could just
imagine what youive gone threw
cause im a mother to and my
children are my pride + joy and
like any mother who lovest here
children would give her life for
them, i know you want the
murderer of your little girl to
burn in hell - but please under
stand that i'm deeply sorry and
will pay - even though it wasnt
only me who ~~xxxx~~ cosed this.
I will live with this on my
mind for the rest of my life
no matter how much i try to
block it out, i pray some day
you will find it in your heart
to forgive me.

pp1125

1770

EX 62    1060

1/31/92

upset nervous

jittery → don't know what is happening

Beto = "Flaco" also

Her partner in crime = stealing drugs,
rip off people, quick money, prostitution

Miguel is Beto, to all intent & purposes
in the main events

older        late 20's, pendleton shirts

did rape     a real mean person, just mean, just don't care
at 9-11      about anything.

+ continued  She considered him her teacher + she
until 13, when  was his puppet. I liked to be used.
she went into  How I hate it.

drug & did   Tatoos = names = 1 across Rt side of neck, one
drugs & her  way, & handwriting, in large middle capital
(mainly + cold in nose)  letter + the others lower case, shaded inner, his
× ?          name, woman's name?

Does not wish to be helped, → she hates herself
so much.  Also feels that Beto will go free
anyway + she for her whole family.
She agreed to B + Sh. on Monday, that she would take the
blame b she was a juvenile + "nothing would happen to her
After Sh. left, Beto told her "you know better than to say anything,
I know where your family live".

001126

EX 63    1061

He had at times beat up people for
their money. When at least 10.
He had a small gun (22??) to threaten you
with, but sometimes it did not even have bullets.

He carried a knife at the time. On it, in
in a holster belt, is in the event...
Told her to get a knife. Can't remember only
in the kitchen she found it.

She wants to remember doing it quickly, in time
X5, we argue. You could recollections
she remembers it as being "real fast," like
one moment of doing it in a flash & then turn out

Other times I remember it as in slow mo-
tion, real slow.
Beto was like a cheer leader; "do it! do it!"

Mo had on 2 wks ago, on a Tuesday, Alejandro (

Dreams of sexual intimacy - upon awake she thinks of her fa first (the man has no face in the dream), but she cannot ever remember her fa abusing her sexually in any way.

001128

Spiders at 13; blackouts when fighting.

Sees children; fair weather

Never mean to any animals.

When high probably she went place
and back) + all she remembers is just
being in some place all the time, only people
around her asking her where did you go,
what did you do.

001123

Cut wrist = XS/1, just disgusted
angry, sour at life.
Broke razor ē teeth + slashed ×3
quickly + lied on bed. Was church
time (6:30 p.m.) + announce + saw
her → alarm → refused medical
attention (pictures) "Yet I wanted to live.
I don't understand"
I must be crazy. I am a dreamer,
do not want to face reality.
I just cared about myself. Now I
am learning.
I am weird = one minute I can be
nice to you + be your best friend, + next
minute I may be talking bad about you.
Or refuse something to you, + next
minute I just turn + offer you some.
I guess I'm 2 faced.
Trying to understand myself.
At times I get very anxious over nothing -
heart beating, shaking, fearful (15-30")
(what might I do when I get excited ?) hours

001130

crying when mentioning me, when is due
today + the fact that she is refusing
to hear anything "like if she does not
know, it will kind of go away"
"She does not want to talk about
my case."

Miguel - "Borracho"

001131

13-14

Martin "Flaco" + China since left lived c.

had a house

lived c Ch (drugs) but involc Martin

either man be the a Danny?

(Someone else was always around?)

#6   Stopped as20c c Then x lv a with
Manuel →4 mos later  liv c him X 2 y. c

① 1 time she left X 2 d for drugs was
when she was 5 mos pr. (Had been clea
returned p she felt bad (remorseful) abt
leaving him + abusing her pregnancy.
Again, when Mommy was 2 mos old.
1-2 d, Ret. p felt guilt.

Both x he did not want her back, but
she cried + begged + lots of promises.
He treated her well, like no other man has. A
she was working (2 McDonalds - Long
Beach + Anaheim)

ie not drug

881 001132

Knew it was wrong ; under fear
+ duress = "Morritos"          tce
Same ~~men~~ who ~~raped~~ her , no
~~protection from anyone~~

Truthful ? Yes = opportunity to fake
oblivion right after Miguel threatened her ;
opportunity to fake exaggerated impulsivity
and take advantage of what she knows
now "5 @ stabbing wounds", On the con-
trary, she has not attempted to exonerate
herself.

001133

PAGE 1

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF ORANGE

Dept. _____41_____

Court convened at __9:00   A____ M ............................................... __July 14,__ .......................... 19 _92_ , presen

Hon ............ __TED MILLARD__ ........................... , Judge: __Marilynn Gushard__ ............... Deputy Clerk

.............. __Tim Dick__ ............................... Bailiff: ....__Doris Curtis__ .......................................... Reporter

and the following proceedings were had:

C-82541  PEOPLE VS. ALFARO, MARIA DEL ROSIO

HEARING RE:   Motion for New Trial
              Motion for Modification of Verdict
              Sentencing

Defendant in court with counsel William Monroe. People represented
by counsel Charles Middleton, Deputy District Attorney. Court
informed counsel that Court has read and considered moving and
responding papers re motion for new trial and motion for
modification of sentence. Court heard argument of counsel as to
both motions. The Court finds under 190.4(e)PC it is the duty of
the Court in every case where the trier of fact has returned a
verdict imposing the death penalty to review the evidence to
consider and take into account and be guided by the aggravating and
mitigating circumstances referred to in Penal Code Section 190.3 and
to determine whether the jury's verdict that the aggravating
circumstances substantially outweighted the mitigating circumstances
is contrary to the law and evidence and to state on the record the
reasons for its findings. The Court specifically makes the
following findings. The factor contained within 190.3(b) PC, the
presence or absence of any criminal activity by a defendant
involving the attempted use of force or violence, is not present in
this case. The factor contained within 190.3(c) PC, the presence or

(continued on page 2)

| Statistical Code Use Only | | 6. | 7. | 8. | 9. | 10. | 11. | 12. | 13. | 14. | 15. | 16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 18|07. | | |

F0182-7.6                    MINUTE ORDER                   001134

ORIGINAL FOR FILE

EX 64   1069

PAGE 2

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF ORANGE**

Dept. ......41........................

Court convened at.............................. M.............................. July 14, .............. 19....92.. presen

Hon. ............................................... Judge: ............................................... Deputy Clerk

.............................................. Bailiff: ............................................... Reporter

and the following proceedings were had:

C-82541   PEOPLE VS. ALFARO

(continued from page 1)

absence of any prior felony conviction: there is no evidence of any prior felony conviction.  The factor contained within 190.3(d) PC, whether or not the offense was committed while the defendant was under the influence of extreme mental or emotional disturbance:  It would appear to this court that the evidence is insubstantial to justify a finding that that factor is present.  The factor contained within 190.3(e)PC, whether or not the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act: that obviously is not present.  There is absolutely no hint in the evidence at all that the victim was any kind of a participant or consented in any of the homicidal act that occurred.  So that item is not present.  The factor contained within 190.3(f) PC, whether or not **the offense** was committed under circumstances which the **defendant reasonably** believed to be a moral justification or extenuation for her conduct: the Court did not hear any evidence in the case of any kind of a moral, legal, or any other kind of a justification for the offense.  So it would appear that the item number (f) is not present in this case.  The factor contained within

(continued on page 3)

| Statistical Code Use Only | 1. | 2. | 3. | 4. | 5. | 6. | 7. | 8. | 9. | 10. | 11. | 12. | 13. | 14. | 15. | 16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | 1808. | | |

F0182-7.6 · **MINUTE ORDER**

001136

ORIGINAL FOR FILE

EX 64   1070

PAGE 3

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**IN AND FOR THE COUNTY OF ORANGE**

Dept. ___41___

Court convened at.................................. M........................................ July 14, ........ 19.. 92 ... presen-

Hon .............................................................. Judge: ...................................................... Deputy Clerk

............................................................ Bailiff: ............................................................. Reporter

and the following proceedings were had:

C-82541   PEOPLE VS. ALFARO

(continued from page 2)

190.3(g) PC, whether or not the defendant acted under extreme duress
under the substantial domination of another person:  the evidence
pointing to this phantom third person being there was argued to the
jury.  The jury apparently didn't feel that factor was there because
that is a kind of a factor that if it was there it would appear to
have some weight.  The Court has gone over the evidence and has
listened to counsel's argument.  It is for the reasons Mr. Giffin
testified to when he was on the stand, that is, he himself when he
conducted this interview and had viewed the crime scene had a hard
time believing that a young woman the age of Rosie Alfaro could in
fact have done this crime by herself.  So he gave her many, multiple
opportunities at that time to come forward and indicate that someone
else was involved in the offense.  Each inquiry Mr. Giffin asked her
on tape she replied in the negative.  No one else was involved in
it.  No one else had anything to do with it.  It's not until after
Miss Alfaro gets legal counsel that this idea of the third party,
the phantom third party, pops up in the case.  The defense even had
an expert who came in and testified about some alleged footprints,

(continued on page 4)

| Statistical Code Use Only | 1. | 2. | 3. | 4. | 5. | 6. | 7. | 8. | 9. | 10. | 11. | 12. | 13. | 14. | 15. | 16. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | 1809 | | |

F0182-7.6

**MINUTE ORDER**

001138
ORIGINAL FOR FILE

EX 64   1071

PAGE 4

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF ORANGE**

Dept. .41

Court convened at _____ M _____ July 14, _____ 19 92 ___ prese:

Hon _____ Judge: _____ Deputy Clen

_____ Bailiff: _____ , Reporte

and the following proceedings were had:

C-82541  PEOPLE VS. ALFARO

(continued from page 3)

things of that nature. If we adopt the argument of the defense, that is to say that Miss Alfaro stabbed Autumn Wallace several times three or four or five times, and then this other unknown person finished off the job stabbing young Autumn Wallace the other 47, 49 times, it's absolutely amazing that Miss Alfaro left bloody footprints on the floor. And this other person who obviously was there, according to their argument, after the pool of blood is even larger than it would have been when Miss Alfaro left the room, somehow this person didn't leave a trace, not a single trace of any footprint in the blood. A fingerprint was also found in the bathroom and it matched Miss Alfaro. It is the Court's belief that the jury rejected the defense's contention that a third person was present, did any of the stabbing in this case. The evidence is grossly insufficient to even raise that as a strong inference in the case, especially when you consider the numerous opportunities Mr. Giffin gave her on the videotape. It appears to this court, after having reviewed its notes and looked carefully at the defense expert testimony in the case, and prosecution's evidence in the

(continued on page 5)

| Statistical Code Use Only | 1. | 2. | 3. | 4. | 5. | 6. | 7. | 8. | 9. | 10. | 11. | 12. | 13. | 14. | 15. | 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | 1810 | | |

**MINUTE ORDER**

001140

ORIGINAL FOR FILE

EX 64   1072

PAGE 5

### IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
### IN AND FOR THE COUNTY OF ORANGE

Dept. ....41.....................

Court convened at.............................. M ........................ July 14, ....................19 92 .... presen

Hon ............................................................ Judge. .................................................................... Deputy Clerk

.................................................................. Bailiff: .................................................................................. Reporter

and the following proceedings were had.

C-82541  PEOPLE VS. ALFARO

(continued from page 4)

the case, it appears it's a figment of someone's imagination to say that another third person was present and that Miss Alfaro acted under the substantial domination of this unknown person.  For those reasons the Court does not feel the circumstances described in subdivison (g) are present in the case.  The factor contained within 190.3(h) PC, the factor that could apply in this case is whether or not at the time of the offense the capacity of the defendnat to appreciate the criminality of her conduct or to conform her conduct to the requirements of law was impaired as a result of any mental disease or defect, or the effects of intoxication.  Some evidence exists on the videotape and there may have been some evidence in the transcript that was read to the jury of the prior testimony of the defendant.  While there is evidence of intoxication, it would not appear that it's of the quality that interfered with the defendant's capacity to appreciate the criminality of her conduct or to conform her conduct to the requirement of the law.  So it does not appear to this court that the factor (h) is present.  The factor contained within 190.3(i) PC, the age of the defendant at the time of the

(continued on page 6)

| Statistical Code Use Only | 1. | 2 | 3. | 4. | 5. | 6. | 7. | 8. | 9. | 10. | 11. | 12. | 13. | 14. | 15. | 16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | 18 | 11 | |

F0182-7.6

**MINUTE ORDER**

001142
ORIGINAL FOR FILE

EX 64   1073

PAGE 6

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF ORANGE

Dept. .........41...................

Court convened at...........................M.............................................July 14,...........................19 92 .....presen

Hon ...................................................................... Judge: ................................................................. Deputy Clerk

......................................................................... Bailiff: ................................................................................. Reporter

and the following proceedings were had:

C-82541   PEOPLE VS. ALFARO

(continued from page 5)

crime:  it does appear that the defendant was eighteen years old at
the time of the crime.  If mere age by  itself without any other
factor is involved, it would appear perhaps that the age of eighteen
might be a mitigating factor in the case.  The Court feels that you
have to put the age in context of what her background shows that she
had dropped out of school at an early age, been out on the streets
for a substantial period of time, been involved in the drug culture
for a substantial period of time, things of that nature.  So it
would appear that in a streetwise sense she was much more mature
than her age would indicate.  So it doesn't appear that the age of
the defendant at the time of the crime is really a substantial
mitigating factor in the case.  The factor contained within 190.3(j)
PC, **whether or not** the defendant was an accomplice to the offense
and **her** participation was only relatively minor:  that factor
obviously is not present in the case substantially for the reasons
the Court indicated when it indicated there wasn't a third person or
the evidence is insufficient to establish any substantial domination
by another person.  The factor contained within 190.3(k) PC, any

(continued on page 7)

| Statistical Code Use Only | 1. | 2. | 3. | 4. | 5. | 6. | 7. | 8. | 9. | 10. | 11. | 12. | 13. | 14. | 15. | 1r |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | 1 8 1 2 | | |

F0182-7.6

**MINUTE ORDER**

001144
ORIGINAL FOR FILE

**EX 64   1074**

PAGE 7

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**IN AND FOR THE COUNTY OF ORANGE**

Dept. 41

Court convened at ................................ M .................... July 14, .................... 19 92 prese

Hon ................................................................ Judge: ................................................................ Deputy Cler

................................................................ Bailiff: ................................................................ Reporte

and the following proceedings were had:

C-82541   PEOPLE VS. ALFARO

(continued from page 6)

other circumstance which extenuates the gravity of the crime ever

though it's not a legal excuse:  Counsel brings in the disadvantaged

background of the defendant, her early involvement with drugs, her

prostitution, things of that nature;  the problems she had with her

father, allegedly, the problems she had with the father of her

second child and third and fourth child, and the fact that she is a

mother of four children.  Obviously at the time this offense

occurred she was only the mother of two children.  But she is now as

she sits there at counsel table the mother of four children.  That's

where counsel tries to fit in all of those factors in item (k).

Those factors have kind of a two-edged sword in a way.  It appears

that the defendant did get involved in drug activity, came from a

separated home, and had a disadvantaged youth.  It also appears to

the Court that people are really the sum total of the choices we

make in our life.  She chose to leave school.  She chose to use

drugs.  She chose to engage in acts of prostitution on the streets.

She chose to hang out in the area on Jeffery Street over there where

the drug culture is involved.  She made all of those choices.  Those

(continued on page 8)

| Statistical Code Use Only | 1. | 2. | 3. | 4. | 5. | 6. | 7. | 8. | 9. | 10. | 11. | 12. | 13. | 14. | 15. |  |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | 18 | 3 | |

F0182-7.6                    **MINUTE ORDER**                    001146
                                                        ORIGINAL FOR FILE

PAGE 8

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF ORANGE

Dept. _____41_____

Court convened at _____ M _____ July 14, _____ 19__92__ present

Hon _____ Judge: _____ Deputy Clerk.

_____ Bailiff: _____ Reporter.

and the following proceedings were had:

C-82541   PEOPLE VS. ALFARO

(continued from page 7)

are all choices.   There was no evidence presented to the Court that
those were involuntary choices, anybody forced her into doing that,
things of that nature.  So on the one hand you say well, she is  the
mother of four children and she is young.   On the other hand, you
can say that she made those choices, she ought to be responsible for
making  those choices.   And it was a little shocking to the Court,
I'm sure it was shocking to the jury, that one of her children was
taken to the crime scene and was cared for in the hands of a
relative stranger, a person who just got out of prison a couple of
days earlier, left to take care of her young boy of about eighteen
months on the front lawn while she went into the house and stabbed
Autumn Wallace over fifty times.  So that all cuts a couple of ways.
 And it would not appear to the Court that the (k) factor has any
substantial  weight  in  our  case.   The  factor  contained  within
190.3(a) PC, the circumstances of the crime for which the defendant
was convicted in the present proceedings:  we know the circumstances
of the offense.   We have gone over them.   Counsel has alluded to
them in their argument.   It appears to the Court that this case is

(continued on page 9)

| Statistical Code Use Only | 1. | 2. | 3. | 4. | 5. | 6. | 7. | 8. | 9. | 10. | 11. | 12. | 13. | 14. | 15. | 16. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | 1814 | | |

F0182-7.6

**MINUTE ORDER**

001148
ORIGINAL FOR FILE

EX 64   1076

PAGE 9

### IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
### IN AND FOR THE COUNTY OF ORANGE

Dept. __41__

Court convened at _____ M _____ July 14, _____ 19 92 , prese

Hon _____ Judge: _____ Deputy Cler

_____ Bailiff: _____ Reporte

and the following proceedings were had:

C-82541   PEOPLE VS. ALFARO

(continued from page 8)

one of the most senseless, brutal, vicious, callous killings that
this Court has ever seen. The description that a picture is worth a
thousand words, the circumstances of this offense shown by the
photographs show a very vicious, senseless killing. I can't imagine
a more vicious, senseless killing. I have never seen one that
compares with this case, nor could I imagine that anyone could ever
dream one up that would match this case. So it does appear to this
Court that the circumstances of the offense in item (a) of Penal
Code Section 190.3, that the circumstances of the crime itself
standing alone far outweigh any mitigating circumstances, if there
are any, that are presented in this case. The Court is satisfied
pursuant to 190.3 PC that the circumstances of the crime itself
standing alone are enough to outweigh the mitigating circumstances
presented here. The Court is satisfied that the jury's verdict
imposing the penalty of death is consistent with the evidence and
with the law and that the factors in aggravation beyond all
reasonable doubt outweigh any factors in mitigation and, therefore
the motion to modify the penalty is denied. Motion for new trial on

(continued on page 10)

| Statistical Code Use Only | 1. | 2. | 3. | 4. | 5. | 6. | 7. | 8. | 9. | 10. | 11. | 12. | 13. | 14. | 15. | 16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | 1815 | | |

F0182-7.6

**MINUTE ORDER**

001150
ORIGINAL FOR FILE

PAGE 10

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
### IN AND FOR THE COUNTY OF ORANGE

Dept. .........41........................

Court convened at.................................... M ........................................ July 14, ........................ 19...92... preser

Hon ............................................................................ Judge: ...................................................................... Deputy Clerk

........................................................................ Bailiff: ................................................................................ Reporte:

and the following proceedings were had.

C-82541   PEOPLE VS. ALFARO

(continued from page 9)

the issue of penalty is denied under 1181.6 and 1181.7 PC.   The
Court finds as to the guilt phase the evidence is overwhelming.   As
to the motion for new trial, the Court incorporates all findings as
recited into the record on the motion pursuant to 190.3 PC.
Defendant waives arraignment for sentencing.   Pursuant to 1203.05(c)
PC Court orders the probation report to remain open.   Court informed
counsel that the Court has read and considered the probation report
and all attachments, including letters, thereto.   Mother of the
victim, Linda Wallace, and sister of the victim, Amber Szabo, made
statements for the record.   Manuel Cuevas, father of defendant's
children, and Silvia Melendez Alfaro, mother of defendant, made
statements for the record.   After inquiry of the Court, no further
**evidence presented.**   The Court finds, pursuant to the probation
report and stipulation by counsel, that defendant has been in
continuous custody since June 27, 1990.   The Court having reviewed
the probation report finds that this is not an unusual case pursuant
to 1203(e) PC.   Probation is denied as to all counts.   No legal
cause why sentence should not be pronounced, it is the judgment and

(continued on page 11)

| Statistical Code Use Only | 1. | 2. | 3. | 4. | 5. | 6. | 7. | 8. | 9. | 10. | 11. | 12. | 13. | 14. | 15. | 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | 1816 | | |

F0182-7.6

**MINUTE ORDER**

001152

ORIGINAL FOR FILE

PAGE 11

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**IN AND FOR THE COUNTY OF ORANGE**

Dept. ............41...................

Court convened at.............................. M ................................... July 14, ......................... 19 92 ...., presen

Hon ................................................................: Judge: ................................................................, Deputy Clerk

.............................................................. Bailiff: .................................      ......................................, Reporter

and the following proceedings were had:

C-82541   PEOPLE VS. ALFARO

(continued from page 10)

sentence of this Court as follows.  With respect to Count 2, the
first degree residential burglary, is selected by the Court as the
principal term, it is punishable in the state prison for two, four,
or six years.   The Court selects the aggravated term of **six** years
under Rule of Court 421(a), subd. 1 for the reason that the crime
involved   great   violence,   great   bodily   harm,   and   other   acts
disclosing a high degree of cruelty, viciousness, and callousness.
The victim was particularly vulnerable - a young 9 year old little
girl under subd. 3 of Rule 421 (a).  Further, the manner in which
the crime was carried out indicates a degree of planning carried out
by the defendant, the defendant planned to do the crime knowing the
little girl would  be home alone defenseless under subd. 8 of Rule
421(a).  **Further,** the defendant took advantage of a position of
trust **and confidence** as a family friend of the Wallace family to
commit this crime under subd. 11 of Rule 421 (a).  With respect to
the use of the dangerous or deadly weapon allegation under Penal
Code Section 12022 (B), found to be true by the jury in relation to
that count, the Court imposes one year term consecutive to the six

(continued on page 12)

| Statistical Code Use Only | 1. | 2. | 3. | 4. | 5. | 6. | 7. | 8. | 9. | 10. | 11. | 12. | 13. | 14. | 15. | 16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | 18 | 17 | |

001154

**MINUTE ORDER**

ORIGINAL FOR FILE

EX 64   1079

PAGE 12

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF ORANGE**

Dept. ........41.........................

Court convened at .............................. M .............................. July 14, .............................. 19...92.. presen

Hon ...................................................... Judge: ...................................................... Deputy Clerk

...................................................... Bailiff: ...................................................... Reporte:

and the following proceedings were had:

C-82541  PEOPLE VS. ALFARO

(continued from page 11)

year term imposed on Count 2.  The total principal term is 7 years.

With respect to Count 3, the first degree residential robbery, the

Court imposes the aggravated term of six years, plus one additional

year with respect to the use of the dangerous or deadly weapon

allegation per Penal Code Section 12022 (B).  The sentences imposed

on Counts 2 and 3 are hereby stayed pursuant to Penal Code Section

654 due to the sentence imposed on Count 1.  As to Count 1, it is

the judgment and sentence of this Court that for the offense of

murder as charged in Count 1, of which defendant was found guilty on

March 23, 1992, the jury also having found the offense of murder to

be of the First Degree and the jury having returned a finding that

the two special circumstances alleged under Penal Code Sections

190.2(a)(17) (i) and (vii) - Murder while engaged in the commission

or attempted commission of burglary and robbery - were true and the

second jury having determined that the appropriate penalty shall be

death, and this Court on this date having denied defendant's motion

for new trial and application for modification of verdict and

finding imposing the death penalty, it is the order of this Court

(continued on page 13)

| Statistical Code Use Only | 1. | 2. | 3. | 4. | 5. | 6. | 7. | 8. | 9. | 10. | 11. | 12. | 13. | 14. | 15. | 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | 1818 | | |

F0182-7.6

**MINUTE ORDER**

001156

ORIGINAL FOR FILE

EX 64   1080

PAGE 13

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**IN AND FOR THE COUNTY OF ORANGE**

Dept. .................... 41 ..........

Court convened at ........................... M ................................... July 14, ........................... 19 92 .... preser

Hon ........................................................ Judge: ................................................................. Deputy Cler

....................................................... Bailiff: ............................................................... Reporte

and the following proceedings were had:

C-82541   PEOPLE VS. ALFARO

(continued from page 12)

that the defendant shall suffer the death penalty in the manner
prescribed by law and at a time to be fixed by this Court in the
Warrant of Execution.   Defendant is remanded to the care, custody
and control of the Sheriff of the County of Orange to be by him
delivered to the Warden of the Central California Women's Facility
at Chowchilla, California (PC 3601), there to be held pending
decision upon appeal for the execution of this sentence on the
offense of murder of the first degree as contained in Count 1 of
which defendant has been found guilty and the special circumstances
having been found to be true, to be held by him or her pending the
final determination of defendant's appeal in this matter, which is
automatic, and said sentence to be executed upon final determination
of said appeal, and defendant shall be held by him or her during
said period of time until further order of this Court.   Commitment;
Judgment of Death is approved, signed and ordered filed this date .
Court orders a transcript of the Court's findings to be prepared and
filed in the court file.   Said findings shall be incorporated in the
court's minutes.   It is so ordered.   Defendant is remanded to the
custody of the Sheriff.   Court in recess at 11:50 a.m.   ENTERED:
7 -14-92.

| Statistical Code Use Only | 1. | 2. | 3. | 4. | 5. | 6. | 7. | 8. | 9. | 10. | 11. | 12. | 13. | 14. | 15. | 1ı |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | 1919: | | |

F0182-7.6                                  **MINUTE ORDER**

001158
ORIGINAL FOR FILE

**EX 64   1081**

(SPACE BELOW FOR FILING STAMP ONLY)

MCDERMED, MONROE & TREBLER
ATTORNEYS AT LAW, IN ASSOCIATION
450 WEST FOURTH STREET, SUITE 101
POST OFFICE BOX 22010
SANTA ANA, CALIFORNIA 92702-2010
(714) 558-8112

**CONFIDENTIAL**
PER 98D.9 PENAL C ?

Attorney Bar No. 038638

Attorneys for  Defendant, MARIA DEL ROSIO ALFARO

**FILED**

OCT 11 1990

GARY L. GRANVILLE, County Clerk

By_____ DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ORANGE

|  |  |  |
|---|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, | ) ) ) | Case No. 90-CF01556 |
| Plaintiffs, | ) ) | ORDER APPOINTING EXPERT WITNESS |
| v. | ) ) |  |
| MARIA DEL ROSIO ALFARO, | ) ) |  |
| Defendant. | ) ) ) |  |

**R E C E I V E D**
SEP 25 1990
CRIMINAL COURT SERVICE

IT IS HEREBY ORDERED THAT:

Martha L. Rogers, Ph.D. is appointed to investigate the case

of MARIA DEL ROSIO ALFARO and to prepare a confidential report

for the Defendant's attorney, WILLIAM M. MONROE and to evaluate

and explain the personality and behavior of MARIA DEL ROSIO

ALFARO and to assist the attorney in cross-examining the expert

testimony of the opposition and to point out the possible flaws

in the conclusions reached by the opposition.

///

///

4

**TO BE SEALED**

001160

1    The costs and expenses of such investigation advice and

2  testimony  will be paid by the Treasurer of the County of Orange,

3  California on certification of such costs and expenses to him by

4  this court.

5

6

7  Date:_____ 10-3-90 _____

8                                                AARON B. BROWN
                                        JUDGE OF THE SUPERIOR COURT
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

:DERMED, MONROE
  & TREBLER
TTORNEYS AT LAW
 IN ASSOCIATION

                                   5

TO BE SEALED
                                                            001162

EX 65   1083