report or information contained within to
an unauthorized person is a misdemeanor.

**ALTERNATE
PUBLIC DEFENDER**

ORANGE COUNTY PROBATION DEPARTMENT
PRESENTENCE REPORT
SUPERIOR COURT OF CALIFORNIA
NORTH JUSTICE CTR. - DIV. D5N
JANUARY 29, 1999, 8:00 AM

**Defendant:** ALFARO, JOSE LUIS      **Court #:** 98NF2974

**AKA:** "PUPPET"      **Probation #:** A-259902

**Address:** ███████████, ANAHEIM, CA 92804

**Telephone:** 714-772-5119      **Present Whereabouts:** O.C.J.

**DPO:** PATRICIA A. NEAL/bll      **Attorney:** MICHAEL CAMBER

_____ COURT STATUS _____

**Present Offense:** 664/187(a) P.C. (ATTEMPTED MURDER), A FELONY;
186.22(b)1 P.C. (STREET GANG ENHANCEMENT);
         SEE ADDITIONAL DATA

**Off. Date:** 9-5-98   **Arr Date:** 10-9-98   **Arr Agn:** ANAHEIM P.D.

**Filed:** 10-13-98      **Guilty by:** PLEA      **Date:** 10-22-98    **Days Custody:** ░░

**Codefendants:** LUIS JOSE SOTO - PRELIMINARY HEARING SET FOR 1-15-99.
JEFFREY GENE CHRISTENSEN - PRELIMINARY HEARING SET FOR 1-15-99.

_____ DESCRIPTION _____

**Age:** 19      **DOB:** ███/1979      **POB:** ORANGE, CA

**Sex:** MALE      **Ethnicity:** HISPANIC      **Arrival in CA:** BIRTH

**Height:** 5-10      **Weight:** 175      **Hair:** BLACK    **Eyes:** BROWN

**Citizenship:** U.S. CITIZEN    **ID Marks:** SEE ADDITIONAL DATA

**DMV:** CAB7345154    **Expires:** 6-2-02    **SSN:** ████████    **CDC:** NONE

**FBI:** N/R      **CII:** A10169833      **OCSO:** 956661      **Booking #:** 1842757

_____ EMPLOYMENT HISTORY _____

**Last or Present Employer:** OMNI PAK

**Date Began:** 6-98      **Date Term:** 8-98      **Reason:** QUIT

**Type of Work:** SHIPPING/REC.      **Work Phone:** UNKNOWN      **Salary:** $5.60/HR.

**Job Skills Possessed:** WAREHOUSE

Previous Employment

| From | To | Employer | Type Work | Salary | Reason |
|------|----|----------|-----------|--------|--------|
| | | NONE | | | |

001234

## MARITAL HISTORY

| Current Spouse | Home Address | DOB | Date/Place Marriage | Sta: |
|---|---|---|---|---|
| NONE | | | | |

Occupation:    Employment Address:              Phone:

| Children | Address | | DOB | Sex | Other Parent |
|---|---|---|---|---|---|
| NONE | | | | | |

| Previous Spouse | Address | | Date Married | Date Terminated |
|---|---|---|---|---|
| NONE | | | | |

## FAMILY DATA

**Father:** JOSE ALFARO          **Age:**    **POB:**              **Occupation:**
**Address:** DECEASED – 1996   **Phone:**
**Mother:** SYLVIA MELENDEZ          **Age:**45   **POB:**UNKNOWN     **Occupation:**HOTEL SPVR.
**Address:** ███████████, ANAHEIM, CA 92804   **Phone:** 714-772-3473

| Brothers/Sisters | Age Address | Phone | Occupation |
|---|---|---|---|
| ROSIE ALFARO | 27 STATE PRISON, CHOWCHILLA, CA | UNKNOWN | N/A |
| SILVIA ALONZO | 24 S.A.D. – 1/2 SISTER | S.A.D. | ASST. SCHOOL TEACH |
| RICKY ALONZO | 10 S.A.MO.– 1/2 BROTHER | S.A.MO. | STUDENT |
| SALVADOR ALONZO | 08 S.A.MO.    "     " | S.A.MO. | STUDENT |
| ALEX ALONZO | 06 S.A.MO.    "     " | S.A.MO. | STUDENT |

| Former Residences | From | To |
|---|---|---|
| 1724 SOUTH NUTWOOD STREET, ANAHEIM, CA 92804 | 6-97 | 8-98 |

## EDUCATIONAL BACKGROUND

**Highest Grade Completed:** 11          **Where:** IN PLACEMENT
**Degrees Held:** NONE                   **Job Training:** NONE

## PERSONAL INFORMATION

**Current Health:** GOOD     **Past Health Problems:** SEE ADDITIONA DATA
**Religion:** CATHOLIC       **Military Record:** NONE
**Hobbies and Interests:** FOOTBALL & BASKETBALL
**Alcohol:** SEE ADDITIONAL DATA
**Drugs:** SEE ADDITIONAL DATA
**Previous Treatment Programs:** NONE

| Year | Vehicle(s) Owned/Model | Color |
|---|---|---|
| NONE | | |

**Firearms Owned/Possessed:** NONE

001235

C-98NF2974  A-259902

ADDITIONAL DATA:

PRESENT OFFENSE:

     245(a)(2) P.C. (ASSAULT W/FIREARM), A FELONY;
     12022(a)1 P.C. (VICARIOUSLY ARMED W/FIREARM ENHANCEMENT)

I.D. MARKS:

     RIGHT INNER FOREARM "O"; LEFT INNER FOREARM "C";
     RIGHT ELBOW: SPIDER; BACK: PICTURE OF GANG MEMBER;
     BACK: "MYRA"; CHEST: "SYLVIA"; LEFT WRIST: SMALL SCAR;
     FOREHEAD: SMALL SCAR; LEFT KNEECAP: SMALL SCAR.

PAST HEALTH PROBLEMS:

     SEIZURES AT BIRTH, RECURRED AT APPROX. AGE 11, NONE SINCE.

ALCOHOL:

     1ST TRIED AT AGE 15 OR 16, 2-3 BEERS ON WEEKENDS.

DRUGS:

     1ST TRIED MARIJUANA AT AGE 13, USED DAILY FROM AGE 18
       UNTIL ARREST.
     1ST TRIED METHAMPHETAMINE AT AGE 17, USED ON WEEKEND
       VISITS HOME FROM PLACEMENT, SNORTED APPROX. $20 WORTH.
     1ST TRIED HEROIN AT AGE 18, USED BETWEEN $10 - $60 DAILY
       UNTIL ARREST. USUALLY SMOKED OR SNORTED, INJECTED TWICE.

COURT STATUS

     On October 13, 1998, a felony complaint was filed in Orange
County Superior Court charging the defendant with:

     Count 1:  Section 664-187(a) of the Penal Code (Attempted
            Murder), a felony, (Victim: Joel B.).

     It was further alleged that the above offense is a serious
felony within the meaning of Penal Code Section 1192.7(c)(1).

     It was further alleged that on count 1, the defendant, a
principal, was vicariously armed with a firearm, and knew that another
principal was personally armed, said arming not being an element of the
above offense and within the meaning of Penal Code Section 12022(a)(1).

     Count 2:  Section 245(a)(2) of the Penal Code (Assault with a
            Firearm), a felony, (Victim: Joel B.).

001236

1       It was further alleged that on counts 1 and 2, and pursuant
2   Penal Code Section 186.22(b)(1), the above offenses were committed for
    the benefit of, at the direction of, and in association with a crimina
3   street gang, to wit: East Side Anaheim, with the specific intent to
    promote, further and assist in criminal conduct by gang members.

4       On October 22, 1998, the defendant plead guilty to Counts 1

5   and 2 as charged.  Further, he admitted the enhancement 186.22(b)1 of

6   the Penal Code and 12022(a)1 of the Penal Code.  The court indicated a

7   maximum punishment of 13 years.  A probation and sentencing hearing wa

8   set for January 29, 1999, at 8:00 a.m. in D5N.  The probation departme

9   was ordered to prepare a presentence report.

10  CIRCUMSTANCES OF THE OFFENSE

11      According to records of the Anaheim Police Department (DR# 9

12  33920), on September 5, 1998, at approximately 10:50 p.m. an officer

13  responded to the area of 1821 Sallie reference a shooting which had ju

14  occurred.  Upon arrival, the officer saw a male subject lying on the

15  street whom he recognized as Joel B., (a Jeffrey Street Gang member)

16  from previous contacts.  The victim told the officer he was at a party

17  when he was shot by unknown subjects who yelled "Eastside" prior to

18  shooting him.  The victim was transported to U.C.I. Medical Center.  X-

19  Rays revealed a bullet in the victim's abdomen.  The attending physicia

20  stated the bullet entered the victim's left shoulder and lodged near hi

21  spleen.  His left lung collapsed.  A second bullet went into the

22  victim's right forearm, broke his right ulnar and lodged in the biceps

23  area.  The doctor indicated the bullet in the abdomen would probably be

24  left there and the bullet in his right bicep would possibly be removed

25  when surgery was performed, to repair the broken bone.  The victim's

26  condition was listed as guarded.

27      Interviews of numerous witnesses, revealed that two subjects,

28  witnesses Francisco A. and codefendant Jeff Christensen, were standing

001237

C-98NF2974  A-259902

1   outside a residence near 1821 Sallie prior to the shooting, arguing wi

2   witness Isreal M.  The argument attracted the attention of several

3   subjects (Jeffrey Street gang members) standing across the street.

4   Reportedly, witness Fransico A. "hit them up" and the subjects replied

5   "Jeffrey Street."  Witness Isreal M. said two of the subjects "rushed

6   him" and he ran off saying he would be back.

7        Witness Isreal M. met up with three subjects, witness Adam C

8   (a South Side Demons's gang member), and codefendant Luis Jose Soto,

9   aka: "Chino" and Jose Luis Alfaro, aka: "Puppet", the defendant.  Both

10  the defendant and the codefendant are known to be Eastside Anaheim gan:

11  members.  Witness Adam C. had a gun in his waistband.  Witness Isreal :

12  told all three subjects that some Jeffrey Street gang members were

13  causing problems.  Codefendant Soto said "I know those guys, I'll take

14  care of them."  Codefendant Soto took the gun from witness Adam C. and

15  he, the defendant and witness Isreal M. returned to the scene.

16  Codefendant Soto immediately began confronting the victim in a hostile

17  manner and the victim, who was reportedly intoxicated, did likewise.

18  The defendant took the gun from codefendant Soto and pointed it at the

19  victim.  The victim's girlfriend pleaded with the defendant and

20  codefendant, asking them to "please leave him alone, he's just drunk."

21  Codefendant Soto grabbed the gun from the defendant and fired three

22  shots, hitting the victim twice.  Codefendant Soto, the defendant and

23  witness Isreal M. ran off to where they originally met that evening.

24  Witness Adam C. was there and codefendant Soto told witness Adam C. to

25  get rid of the gun. Codefendant Soto and the defendant ran to the

26  defendant's grandfather's house, which is located nearby.

27        Further investigation revealed codefendant Christensen told

28  his girlfriend, witness Irene A., that he had been standing next to the

064238

C-98NF2974  A-259902

1  shooter when the shooting occurred, and had seen the whole thing.

2  Codefendant Christensen also told her after the shooting they took the

3  gun to witness Partria M.'s apartment, and she hid it for them.  A few

4  days later, codefendant Christensen said he was going to throw the gun

5  in the trash or a ditch.

6          After extensive police investigation, witnesses identified

7  codefendant Luis Jose Soto as the shooter and the defendant as having

8  pointed the gun at the victim.  The defendant went to the Anaheim Poli

9  Department voluntarily to be interviewed by an investigator.  The

10  defendant said he and his "homeboy," Chino (Luis Jose Soto), were

11  looking for drugs.  He and Chino met up with Jeff (co-defendant

12  Christensen) who was supposedly from Southside Demons, and a new guy

13  from Southside Demons (who had a gun in his waist band).  A little kid,

14  (witness Isreal M.) came running up and told them Jeffrey Street was

15  causing problems.  The defendant said Chino said, "lets go blast them"

16  and then he walked over to the guy who had the gun, grabbed it, and put

17  in his own waistband.  The defendant said he, Chino, and the little kid

18  proceeded to the area where the Jeffrey Street gang members were

19  located.  The three of them walked up to the victim, then he and Chino

20  and the victim started "talking shit to each other."  The defendant sai

21  he grabbed the gun from Chino and pointed the gun at the victim and his

22  girlfriend.  At this point the victim began hiding behind his

23  girlfriend.  The verbal confrontations continued, and the victim's

24  girlfriend said "please don't, he's drunk, he's drunk."  Chino took the

25  gun from the defendant and fired it three times.  After the shooting,

26  the defendant said he, Chino, and the little kid ran to the area where

27  they were earlier in the evening.  Chino gave the gun back to the guy h:

28  got it from, and then he and Chino ran to his grandfather's house.  Whe:

- 001239

C-98NF2974  A-2599C2

1   the interview concluded, the defendant was released.

2       On October 9, 1998, the defendant was arrested for driving

3   without a license, failure to stop at a stop sign, and for possession

4   a plastic tube with residue inside of it.  Later, the charge of

5   attempted homicide was added.  On October 10, 1998, codefendant Luis

6   Jose Soto was arrested for attempted murder and denied his involvement

7   in the crime.  Subsequently, a warrant was obtained for Jeffrey Gene

8   Christensen, alleging attempted murder and assault with a firearm.  He

9   was arrested on October 14, 1998, and transported to Orange County Jail

10  and booked on the warrant.

11  VICTIM'S STATEMENT

12      A letter was sent to victim, Joel B., on November 16, 1998,

13  soliciting his comments and any request he might have for restitution.

14  The victim did not respond to the letter.  The victim does not have a

15  telephone.  Investigator Briggs of the Anaheim Police Department, gang

16  unit, indicated that officers contact the victim on a regular basis.

17  The undersigned requested investigator Briggs or any other officer to

18  tell the victim to contact the undersigned.  As of the date of this

19  dictation, the victim has not responded.

20  DEFENDANT'S STATEMENT

21      The defendant was interviewed at Orange County Jail on January

22  8, 1998.  In regard to the instant offense, the defendant said his

23  "homeboy" "Chino" came down from San Jose to visit.  They were looking

24  for drugs on Jeffrey Street, but didn't find any.  When they were

25  walking home they ran into Jeff (a Southside Demons gang associate) and

26  Adam (a Southside Demons gang member) and asked "what's up?"  Jeff said

27  some guys from Jeffrey Street were causing problems and wanted to shoot

28  them.  Adam had a gun, but didn't want to get involved.  Chino took the

0C1240

C-98NF2974 A-259902

1  gun from Adam and said to the defendant, "let's go."  Chino and the
2  defendant proceeded to where the Jeffrey Street gang members were
3  located.  Chino asked the victim where he was from and the two of them
4  started arguing about neighborhoods.  The defendant said he wanted to
5  a "bad ass" and took the gun from Chino and pointed the gun at the
6  victim.  The defendant said he had never held a gun before.  The
7  defendant said he became upset when the victim continued to argue
8  despite the fact the gun was pointed at him.  The defendant felt the
9  victim should have stopped arguing.  Then the victim got behind his
10  girlfriend.  The defendant said he could not shoot the victim, something
11  inside of him stopped him.  He gave Chino the gun and told Chino to
12  "shoot him."  Chino fired three shots.  The defendant said he and Chino
13  ran to his grandfather's house.  The defendant thought the victim had
14  been shot in the head and was dead.  He also thought the victim's
15  girlfriend had been shot.  They could hear the police helicopter from
16  his grandfather's house.

17       The defendant said that after the shooting he told Chino he
18  was glad about the shooting, but inside he didn't feel glad.  He said he
19  was scared that people on the street would tell other Jeffrey Street
20  gang members where his grandfather lived and would retaliate, possibly
21  injuring or killing him or one of his family members.  The defendant
22  said he was sorry for telling Chino to shoot the victim.  He is sorry
23  for what happened to the victim and for what his family must have gone
24  through.  The defendant said he regrets what he did because of the
25  things he'll be missing.  He helped his grandparents by cleaning their
26  house and now they have no one to help them.  He also plans to marry his
27  girlfriend.  If it weren't for his grandparents, his girlfriend, etc. he
28  would not mind "doing time."  The defendant said the stupid thing is

061241

C-98NF2974  A-259902

1   that Eastside Anaheim, his gang, actually gets along with the Jeffrey
2   Street gang, and it is Southside Demons that don't.

3          When asked what he thought an appropriate disposition would
4   be, the defendant indicated he believes he will be sentenced to ten
5   years.  He believes a sentence of five years or less would be more
6   appropriate because he did not shoot the victim.  He stated he hoped h
7   would be sent to whatever prison is closest to Orange County so his
8   girlfriend and relatives can visit him.  He expects there will be
9   inmates there who are from rival gangs, such as Westside Anaheim,
10  Pauline Street, Citron - he could go "on and on," but he will just have
11  to keep his mouth shut and stay out of trouble.  The defendant stated :
12  plans to get his G.E.D. in prison and learn a trade.  Someday he wants
13  to have all his tatoos removed.  He hopes to marry his girlfriend in th
14  near future, and when he gets out of prison, he hopes to get a good job

15  STATEMENTS OF REFERENCES AND INTERESTED PARTIES

16  STATEMENT OF DEFENSE COUNCIL

17          Defense Council Michael Camber submitted a written statement
18  which is attached for the Court's consideration.  Mr. Camber indicated
19  the defendant has an insignificant criminal history with no prior
20  violent or serious felony convictions and no prior adult convictions
21  that he is aware of.  The defendant was without a father since the age
22  of nine or ten.  Lacking proper role models, the defendant inevitably
23  fell into the gang lifestyle prevalent in his neighborhood.  The
24  defendant acknowledged wrong doing at the earliest possible stage of th
25  criminal proceedings, pleading guilty at the arraignment.  The defendan
26  did not shoot the victim, despite having the opportunity to do so.  The
27  victim was a rival gang member who, although not responsible for his
28  injuries, did nothing to diffuse the situation, but provoked the shoote

                                                        001242

C-98NF2974  A-259902

by his actions.  Mr. Camber stated that based on the nature of the
charges, a grant of probation is probably appropriate, however, the
defendant appears to have a sincere desire to leave the gang lifestyle
behind and grow-up.  Evidence of this can be seen in his early plea and
his stated desire to get on with his life.  He is also in the process
obtaining his G.E.D.  Mr. Camber hoped that whatever sentence the
defendant receives, it will not discourage the defendant's efforts.

STATEMENT OF DEPUTY DISTRICT ATTORNEY

        A letter was sent to Deputy District Attorney, Mary Anne
McCauley on November 16, 1998, soliciting her comments.  A follow-up
telephone message was left on January 14, 1999.  As of this dictation,
response has not been received.

STATEMENT OF INVESTIGATING OFFICER

        A letter was sent to the investigating officer on November 16
1998, soliciting his comments.  A follow-up telephone message was left
on January 14, 1999.  As of this dictation, a response has not been
received.

PERSONAL REFERENCES

        The defendant submitted written statements from his girlfriend
and cousin which are attached for the court's consideration.  The
defendant's girlfriend stated she and the defendant have been together
for a year and a half, and plan to marry on the defendant's birthday,
June 2nd.  She indicated they spend a lot of time together and although
she doesn't know exactly what happened, she is sure the defendant did
not commit the crime.  She states the defendant used to help his
grandparents in every possible way, and he also spent a lot of time baby
sitting his two little nieces.  She knows him to be a good man.  The
defendant's cousin indicated the defendant is sweet, kind, and

001243

C-98NF2974 A-259902

1  respectful. He told her he wanted to change and she supported him 100

2  per cent. He started working and was going back to school. She feels

3  the program will benefit him.

4       The defendant requested the undersigned to contact his sister

5  Sylvia Alonzo. Ms. Alonzo was contacted by telephone and she stated s

6  is really upset with her brother because he spent all those years in

7  placement and was doing well when he got out. He helped his

8  grandparents and babysat his two young nieces. Then he started to han

9  out with the wrong crowd. Ms. Alonzo stated because her brother is so

10 young, she feels a 2-3 year prison commitment is long enough. If he

11 receives a lengthy prison sentence, she is afraid he may try to commit

12 suicide. She explained their sister Rosie, who is on death row, has

13 tried to commit suicide numerous times. Ms. Alonzo feels her brother

14 still capable of turning his life around.

15 PRIOR RECORD

16      The Bureau of Criminal Identification and Information and the

17 Federal Bureau of Investigation have no record of the defendant.

18 Records of the Orange County Probation Department reveal the following

19 record of sustained juvenile petitions:

20
| Date | Agency | Offense | Disposition |
|------|--------|---------|-------------|
| 5-28-92 | Anaheim P.D. | 417 P.C. (Exhibition of a Deadly Weapon) 2 cts., misd. | 7-7-92: Declared ward, 4 days, CTS 12 days, 30 days stayed, 15 days CWF resti., resti. fine $50 stayed, no assoc. w/East Side Anaheim or Jeffrey St. gangs, gang terms, |

25      According to records of Anaheim Police Department (DR# 92-

26 2773), the victim reported the defendant approached him and asked "wher

27 are you from?" The victim did not reply. The defendant said "don't

    mess with the ground crew." He then pulled a knife from his pants

28 pocket and raised it above his head and stepped towards the victim,

    slashing the knife downward toward the victim's face. The victim

001244

ALFARO, Jose Luis

C-98NF2974  A-259902

Pag:

1   stepped back just in time to avoid being cut.  The defendant then rode away on his bike.

2

3   The second victim reported the defendant approached him and asked "where are you from?"  The defendant pulled a knife from his pocket and charged the victim.  The victim ran off, and the defendant rode away on his bicycle.

4

5   When interviewed, the defendant stated the above report is accurate.

6

| | | | |
|---|---|---|---|
| 7 | 9-18-92 | Garden Grove P.D. | 626(a) P.C. (Poss. of a Knife at School), misd. | 10-1-92: Cont. ward, 60 days, CTS 14 days, 30 days stayed. |

8

9   According to records of Garden Grove Police Department (DR# 92-20642), an officer was dispatched to Ralston Junior High reference a student with a knife on campus.  The principal informed the officer tha students told him the defendant had a knife in his pocket.  The principal took the defendant out of class and asked him for the knife. The defendant took the knife out of his right rear pocket.  The defendant said he knew it was wrong to bring a knife to school, and tha he was on gang terms.

10

11

12

13   The defendant acknowledged the above arrest and stated the report is accurate.

14

| | | | |
|---|---|---|---|
| 15 | 1-28-93 | Anaheim P.D. | 594(b)(4) P.C. (Vandalism), misd. | 4-27-93: Cont. ward, 180 day stay, resti. $250 fine, plus PA, 12 days CWP,driving priv. delaye 360 days from date of eligibility, no graffiti paraphen., matter cont. to 6-18-93 for placement suitability hearing. |

16

17

18

19

20   According to records of the Anaheim Police Department (DR# 93-5139), the defendant wrote "ESA" on a produce sign and a utility box with a marking pen.

21

| | | | |
|---|---|---|---|
| 22 | 7-13-93 | Anaheim P.D. | 647.6 P.C. (Child Molest.), misd. | See below |

23

24   According to records of the Anaheim Police Department (DR# 93-19613), the defendant's sister reported she tried to open the front doc of her residence but it was locked.  She looked through a window and sa the defendant, her brother, with his pants down, get up and run out the back door.  When her three year old daughter, victim Monica A., opened the door, her pants and underwear were down to her ankles.  The victim said the defendant showed her his "toy", "his ugly toy."  When her mother urged her to tell her more, the victim said she didn't want Jose to go bye bye and that Jose told her he'd take her to Chucky Cheese if she didn't tell anyone.  The victim's mother told investigators she was confident she had stopped the incident before the defendant had a chanc

25

26

27

28

001245

ALFARO, Jose Luis                                                    Page

C-98NF2974  A-259902

1   to touch the victim.  When interviewed by investigators, the defendant
2   admitted he had pulled his pants down, exposed his penis and told the
    victim to pull her pants down and lay on the floor.  He denied touching
3   her and wouldn't say what his intentions were.  He said he had just
    started masturbating himself prior to being caught by his sister.  When
4   asked what it was about a three year old girl that was a turn on for
    him, he stated he didn't know.  He admitted knowing what he did wasn't
5   right, but he wanted to do it, so he did it.

6        When interviewed, the defendant stated the molest consisted
    him touching the victim with his fingers on her vaginal area, on the
7   outside of her panties.

| 7-14-93 | Orange Co. Prob. | 777 WIC (Failure to Complete JCWP) | 8-3-93: Petition D & E sustained, cont. ward, days, CTS 22 days, 66 days stayed, placement, counseling, gang terms, VNL, CWP order of 4-27- vacated, rest. fine & fund $20 each, stayed. |

12       The defendant was ordered to complete 12 days of the Juvenile
13  Court Work Program.  He did not show up for indoctrination, nor complete
    any days.

14       When interviewed, the defendant stated he did not recall being
15  directed to participate in a Juvenile Court Work Program.

| 9-7-93 | Anaheim P.D. | 594(b)(4) P.C. (Vandalism), misd. | 10-15-93: Cont. ward, prior placement order in effect, release to placement, resti. on all counts, including those dismissed, resti. fine $10, VNL, 100 hrs. VCS, no assoc. w/Mark Ramos, and no weapons or graffiti paraphen. |

21       According to records of Anaheim Police Department (DR# 93-
22  24481), the defendant was observed by numerous students placing graffiti
    on a school fence.

| 11-8-95 | Orange Co. Prob. | 777 WIC (Abscond Prob. Superv.) | 1-8-96: Cont. ward, all cts. sustained, 90 days, CTS 42 days, after compl release to placement, minor ordered to remain in placement. |

27       According to records of Riverside Police Department the
    defendant was stopped after being identified as having just been
28  involved in a hit-and-run traffic accident.  Investigation revealed that
    the defendant was a missing juvenile from Orange County and the vehicle

CC1246

ALFARO, Jose Luis

C-98NF2974  A-259902

1  he was driving belonged to his passenger's foster father.  The defenda
2  and his passenger admitted taking the vehicle on November 26, 1995,
   without permission.  The defendant was lodged at Riverside Juvenile Ha
3  at the request of the Orange County Probation Department.

4  DMV HISTORY

5          According to records of the California Department of Motor
6  Vehicles, the defendant was issued a California Identification Card on
7  August 29, 1996, that expires on June 2, 2002.  One departmental actio
8  is noted for failure to appear, no convictions are noted, one failure
9  appear for a violation of Sections 22450 V.C., 12500A V.C., 40508A V.C.
10 and 405095 V.C. on April 27, 1998, fine due $436.  No accidents are
11 noted.

12 SOCIAL HISTORY

13         The following information was obtained from probation records
14 and supplemented with information provided by the defendant.

15         The defendant is the youngest of three children born to his
16 parents who were married from 1970 to 1986.  His father passed away in
17 1996 from a diseased liver, caused by alcoholism.  After the divorce,
18 his father deserted the family and went to Mexico to live.  The
19 defendant's mother worked full time, and the defendant and his sister
20 were left to fend for themselves most of the time.  The defendant said
21 he last saw his father in 1995, when visited by him in placement.
22 Previous reports indicate his father was physically abusive to all
23 family members, however, the defendant said he was only physically
24 abusive to his mother.  The defendant denies suffering any type of abus
25 as a child.

26         In 1989 the defendant's mother began a live-in relationship
27 with Salvador Alonzo.  They had three children together, the youngest o
28 which has Downs Syndrome.  When the defendant was approximately 12 year

001247

ALFARO, Jose Luis
C-98NF2974  A-259902

Page

old he became involved with Eastside Anaheim gang.  He also became assaultive towards his younger siblings and seemed preoccupied with killing.  For instance, he walked around the house saying "I was born kill" and told his younger brother to kill the neighbor's rabbit.  He was also having a difficult time dealing with his sister, Rosie's conviction (and death sentence) of a brutal murder of a nine year old girl.  When he was 14, he molested his three year old niece.  On August 3, 1993, the court ordered the defendant to be placed.  The defendant remained in placement until he was 18, and was then released to his mother.  The defendant stated soon after his release he began using heroin and became addicted quickly.  At that point, all he cared about was maintaining his drug habit.

The defendant stated the last grade he completed at a conventional school was the 6th grade.  In 1992, the defendant was expelled from school for bringing a knife to school on two separate occasions.  These incidents resulted in his arrest and subsequent referral to the probation department.  Following the declaration of wardship, the defendant attended school at Horizon Alternative Education Center, although his attendance was poor.  As a result, it was recommended that he attend the Youth Guidance Center Day School.  He attended one day and refused to return.  The defendant attended school in various placement institutions where he has been housed.  The defendant indicated the highest grade he completed is the 11th grade, and he's currently taking classes to obtain his G.E.D.

The defendant stated he has had only one job.  He worked at Omni Pak from June 1998 to August 1998, performing shipping and receiving duties, earning $5.60 per hour.  The defendant stated he quit this job, but did not indicate why.

001248

ALFARO, Jose Luis

C-98NF2974  A-259902

The defendant has never been married and has no children.  The defendant did indicate he has a girlfriend, whom he has been seeing for approximately a year and a half, and they have plans to marry.  He indicates she visits him in jail on a regular basis.

Prior to placement, the defendant was referred to an outpatient mental health and drug counseling, which he refused to attend.  During placement, the defendant attended sex offender therapy where he reportedly made little progress.  When questioned about this, the defendant stated he dealt with the issue, and doesn't feel the need to think about it any further.  The defendant also indicated he saw a psychologist on a one-to-one basis consistently while in placement, which he enjoyed.

The defendant stated he first tried marijuana at age 13 and smoked marijuana on a daily basis until his arrest.  The defendant stated he first tried heroin when he was 18.  He became addicted quickly, and soon he used between $10 and $60 worth per day.  He would obtain the money for heroin by stealing and selling the stolen items for money to support his drug habit.  Most of the time he smoked or snorted the heroin, though he did inject the heroin twice.  He tried methamphetamine at age 17, which he used on his weekend visits home from placement.  The defendant stated that when he was using heroin on a daily basis, he considered himself a "low life" because all he cared about was doing drugs.  Probation records indicate that the defendant may have started using drugs earlier than what he has admitted to.

The defendant stated he was "jumped in" to Eastside Anaheim gang when he was 12 years old.  His cousin was also in the gang, and he considered the gang his family.  He was given the name "Puppet", because he would do anything he was told without question.  He stated he stopped

ALFARO, Jose Luis

C-98NF2974   A-259902

1
2   "gang banging" before entering placement, although he contin
3   associate with "Chino," the shooter in the instant offense, on weekend:
4   The defendant stated his girlfriend and his grandfather told him Chino
5   was a bad influence on him, but he didn't listen to them.

6          In the defendant's leisure time he indicated since his mother
7   worked for Disneyland, he and his girlfriend went frequently.  He also
8   enjoyed "hanging out" with his family and his girlfriend's family.  He
9   also enjoyed going to the park to play football and basketball.

10  According to his girlfriend, the defendant also helped his grandparents
11  on a regular basis.

12         The defendant claims no income, assets or debts.

PROGRESS ON PROBATION

13         The defendant was declared a ward on July 7, 1992, and was
14  placed on juvenile probation and gang terms.  Between July 7, 1992 and
15  January 8, 1996, the defendant had seven sustained petitions, five for
16  misdemeanor offenses and two for probation violations.  When the
17  defendant was 14 years old his mother refused custody of him, and on
18  August 3, 1993, he was ordered suitably placed.  His first placement was
19  at Aurora Community Sex Offender Treatment Program.  On March 3, 1995,
20  the defendant was removed from Aurora Communities because of his
21  frequent intimidating, aggressive, and assaultive behavior.  On April 7
22  1995, the defendant was placed at Children's Therapeutic Communities
23  which offered a sex offender treatment program and intensive therapy,
24  supervision and structure.  He was removed from Children's Therapeutic
25  Communities when he AWOLed on November 8, 1995.  Children's Therapeutic
26  Community termination report indicated he made little progress while
27  there.  Reportedly, the defendant's gang identification interfered with
28  therapeutic progress.  The defendant was then placed at Interim Care

001250

ALFARO, Jose Luis

C-98NF2974   A-259902

Facility, the county's most intensive psychiatric group home placemen·
Reports indicate the defendant did well at Interim Care Facility, and
was released to his mother on June 1, 1997.  On October 2, 1997, the
placement order was vacated, the probation officer was relieved of
supervision except for purposes of collecting restitution, and wardshi
was ordered terminated on June 2, 2000.

ADJUSTMENT IN CUSTODY

        The defendant has been in Orange County Jail since October 9
1998.  According to records of the Orange County Sheriff's Department,
the defendant has not had any rule violations.  The defendant indicate·
he has been taking G.E.D. classes since his incarceration.

EVALUATION

CIRCUMSTANCES IN AGGRAVATION

The Crime

421(a) - 1     The crime involved callousness, in that the
               defendant did not know the victim and had not
               been involved in the events proceeding the
               shooting.  Additionally, the victim was drunk
               and his girlfriend pleaded with the defendant
               and codefendant not to shoot the victim,
               explaining he was intoxicated.  Regardless, th
               defendant told the codefendant to shoot the
               victim, indicating callousness.

421(a) - 8     The defendant and codefendant reportedly talke
               about shooting Jeffrey Street Gang members
               prior to seeking them out and shooting the
               victim, indicating planning.

ALFARO, Jose Luis                                                      Page

C-98NF2974  A-259902

## The Defendant

421(b) - 2   The defendant's sustained petitions in juveni
             delinquency proceedings are numerous and the
             instant offense is of increasing seriousness.

421(b) - 4   The defendant was on unsupervised juvenile
             probation at the time the crime was committed.

421(b) - 5   The defendant's prior performance on probation
             was unsatisfactory.

### CIRCUMSTANCES IN MITIGATION

## The Crime

423(a) -     None apparent.

423(a) - 3   The defendant voluntarily acknowledged wrong
             doing at an early stage of the criminal
             process.

### PROBATION ELIGIBILITY

413(a) -     The defendant is not eligible for probation
             unless the court finds that this is an unusual
             case and the interest of justice would best be
             served by granting probation, because the
             defendant violated Section 664/187 of the Penal
             Code and admitted the enhancements 12022(a)1
             P.C. and 186.22(b)1 P.C., therefore, probation
             is precluded except in an unusual case of Penal
             Code Section 1203(e)(1).  After reviewing rule
             413(c), the unusual circumstances section, it
             does not appear that the defendant meets any of
             the criteria to be considered an unusual case.

001252

ALFARO, Jose Luis                                                    Page

C-98NF2974  A-259902

## DISCUSSION

        Appearing before the court is 19-year-old Jose Luis Alfaro,
who has entered a plea of guilty to attempted murder, assault with a
firearm, and admitted that he was vicariously armed with a firearm and
that the crimes were committed for the benefit of Eastside Anaheim
criminal street gang.

        In this case the defendant and codefendant Luis Jose Soto,
both Eastside Anaheim gang members, were out looking for drugs.
Reportedly, they were approached by a boy who requested their assistanc
in dealing with some Jeffrey Street gang members who were becoming
aggressive.  Codefendant Soto grabbed a gun from another subject and
told the defendant "Let's go."  They proceeded to the location of the
Jeffrey Street gang members and approached the victim, who was
intoxicated and unarmed, and began to yell challenging gang phrases at
him.  The victim did likewise.  The defendant took the gun from Soto's
waist band and pointed it at the victim, who moved behind his
girlfriend.  The defendant said he could not shoot the victim.  Soto
took the gun from the defendant, and despite pleas from the victim's
girlfriend to please not shoot the victim, that he was just drunk, the
defendant told Soto to shoot him.  Soto fired three shoots, hitting the
victim twice.  Both Soto and the defendant fled.

        The defendant does not appear to feel any moral anguish for
what he did, rather he appears to feel sorry for himself, sorry for the
things he'll be missing out on while he's in prison.  Soto and the
defendant did not even have a "beef" with Jeffrey Street.  Soto just
decided to "take care of them" at the mere suggestion of someone he
barely knew.  The defendant, aka: "Puppet," behaving in the manner whic
earned him his gang moniker, followed Soto without question and

001253

EX 67    1172

ALFARO, Jose Luis

C-98NF2974  A-259902

participated in this callous crime.  It is no surprise (nor is it the first time) the defendant has behaved in a callous manner, considering the abusive family situation he endured as a young boy.  The defendant delinquent behavior started at a young age and extensive resources were utilized in an attempt to rehabilitate the defendant.  However, once outside a highly structured, therapeutic facility, the defendant's behavior quickly deteriorated.

The defendant is young, and to his credit he admitted to his participation in the crime to police.  The defendant claims he wants to be a productive member of society.  This desire is probably true, but sadly, he is either unwilling or unable to remain committed to his own rehabilitation outside a structured facility.  For this reason, it is felt he will continue to present a threat to the community and to himself.  A commitment to state prison appears appropriate.

RECOMMENDATION

In view of the foregoing, it is respectfully recommended that probation be denied and sentencing imposed.  Further, the defendant be ordered to pay a restitution fine pursuant to Section 1202.4(b)(1) of the Penal Code, in the amount of $500.00.

Respectfully submitted,

MICHAEL SCHUMACHER
Chief Probation Officer

Patricia A. Neal /v2
Deputy Probation Officer
569-2061

AA1254

ALFARO, Jose Luis

C-98NF2974  A-259902

1

Dated this 29th day of January, 1999.

2

I have read and considered the foregoing
3    report of the Chief Probation Officer.

4

5

_____
6    JUDGE OF THE SUPERIOR COURT

7    PAN/bll

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

061255

EX 67    1174

# COUNTY OF ORANGE
## SANTA ANA, CALIFORNIA

104-

**CERTIFICATE OF LIVE BIRTH**
**STATE OF CALIFORNIA**
USE BLACK INK ONLY.

STATE FILE NUMBER

1-89-38-25066

LOCAL REGISTRATION DISTRICT AND CERTIFICATE NUMBER

| | | | | |
|---|---|---|---|---|
| THIS CHILD | 1A. NAME OF CHILD—FIRST NAME<br>MANUEL | 1B. MIDDLE<br>- | 1C. LAST NAME<br>CUEVAS JR. | |
| | 2. SEX<br>MALE | 3A. THIS BIRTH-SINGLE, TWIN, ETC.<br>SINGLE | 3B. IF TWIN/TRIPLET, THIS CHILD WAS BORN 1ST, 2ND, ETC.<br>- | 6A. DATE OF BIRTH—MONTH, DAY, YEAR<br>1989 | 4B. HOUR—24 HOUR DESCRIPTION<br>0230 |
| PLACE OF BIRTH | 5A. PLACE OF BIRTH—NAME OF HOSPITAL OR FACILITY<br>UCI MEDICAL CENTER | | 5B. STREET ADDRESS—STREET AND NUMBER OR LOCATION<br>101 CITY DRIVE SOUTH | |
| | 5C. CITY<br>ORANGE | | 5D. COUNTY<br>ORANGE | 5E. PLANNED PLACE OF BIRTH<br>HOSPITAL |
| FATHER OF CHILD | 6A. NAME OF FATHER—FIRST NAME<br>MANUEL | 6B. MIDDLE<br>- | 6C. LAST NAME<br>CUEVAS | 7. BIRTHPLACE—STATE OR FOREIGN COUNTRY<br>MEXICO | 8. DATE OF BIRTH—MONTH, DAY, YEAR<br>07/23/68 |
| MOTHER OF CHILD | 9A. NAME OF MOTHER—FIRST NAME<br>MARIA | 9B. MIDDLE<br>ROSIO | 9C. LAST NAME<br>ALFARO | 10. BIRTHPLACE—STATE OR FOREIGN COUNTRY<br>CALIFORNIA | 11. DATE OF BIRTH—MONTH, DAY, YEAR<br>10/12/71 |
| PARENT'S CERTIFICATION | 12A. I CERTIFY THAT I HAVE REVIEWED THIS CERTIFICATE AND CORRECT | *(signature)* Alpha Alfaro | 12B. RELATIONSHIP TO CHILD<br>MOTHER | 12C. DATE SIGNED<br>07/10/89 |
| CERTIFICATION OF BIRTH | 13. I CERTIFY THAT THE CHILD WAS BORN ALIVE AT THE TIME, DATE, HOUR AND PLACE STATED | *(signature)* | 13A. ATTENDANT—M.D., D.O., ETC.<br>RESIDENT | 13C. DATE SIGNED<br>07/31/89 |
| | 13D. TYPED NAME, TITLE AND MAILING ADDRESS OF ATTENDANT<br>STEVEN J. THOMAS, M.B. SAME AS 5A | | 14. TYPED NAME AND TITLE OF CERTIFIER IF OTHER THAN ATTENDANT<br>SANDRA M. ASHLEY CUSTODIAN OF MEDICAL RECORDS | |
| LOCAL REGISTRAR | 15A. DATE OF DEATH | 15B. STATE FILE NO.<br>(LEAVE THIS BLANK) | 16. LOCAL REGISTRAR *(signature)* | 17. DATE ACCEPTED FOR REGISTRATION<br>AUG 4 1989 |

698440

001256

CERTIFIED COPY OF VITAL RECORDS

STATE OF CALIFORNIA
COUNTY OF ORANGE } SS

DATE ISSUED NOV 2 0 2000

*(signature)* Gary L. Granville

This is a true and exact reproduction of the document officially registered and placed on file in the office of the Orange County Clerk-Recorder.

GARY L. GRANVILLE, Clerk-Recorder
ORANGE COUNTY, CALIFORNIA

This copy not valid unless prepared on engraved border displaying seal and signature of Clerk-Recorder.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE



EX 68    1175

# COUNTY OF ORANGE
## SANTA ANA, CALIFORNIA

104-

**CERTIFICATE OF LIVE BIRTH**
**STATE OF CALIFORNIA**
**USE BLACK INK ONLY**

STATE FILE NUMBER

1-91-30-04205

LOCAL REGISTRATION DISTRICT AND CERTIFICATE NUMBER

| | | | | |
|---|---|---|---|---|
| THIS CHILD | 1A NAME OF CHILD—FIRST GIVEN | 1B MIDDLE | 1C LAST FAMILY | |
| | EHDIE BERTO | ----- | CUEVA-ALFARO | |
| | 2 SEX: MALE | 3A THIS BIRTH SINGLE TWIN ETC.: TWIN | 3B IF MULTIPLE THIS CHILD 1ST 2ND ETC.: 1ST | 4A DATE OF BIRTH MONTH DAY YEAR 1991 | 4B HOUR 24 HOUR CLOCK TIME 1323 |

| | | | | |
|---|---|---|---|---|
| PLACE OF BIRTH | 5A PLACE OF BIRTH—NAME OF HOSPITAL OR FACILITY WESTERN MEDICAL CENTER | 5B STREET ADDRESS—STREET AND NUMBER OR LOCATION 1001 NORTH TUSTIN AVENUE | | 5E PLANNED PLACE OF BIRTH |
| | 5C CITY SANTA ANA | 5D COUNTY ORANGE | | HOSPITAL |

| | | | | |
|---|---|---|---|---|
| FATHER OF CHILD | 6A NAME OF FATHER—FIRST GIVEN MANUEL | 6B MIDDLE | 6C LAST FAMILY CUEVA | 7 STATE OF BIRTH MEX | 8 DATE OF BIRTH MONTH DAY YEAR 07-23-68 |
| MOTHER OF CHILD | 9A NAME OF MOTHER—FIRST GIVEN MARIA | 9B MIDDLE DEL ROSIO | 9C LAST FAMILY ALFARO | 10 STATE OF BIRTH CA | 11 DATE OF BIRTH MONTH DAY YEAR 10-12-71 |

| | | | | |
|---|---|---|---|---|
| PARENT'S CERTIFICATION | 12 I CERTIFY THAT THE ABOVE STATED INFORMATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE | 12A PARENT OR OTHER INFORMANT—SIGNATURE Maria Alfaro | 12B RELATIONSHIP TO CHILD Mother | 12C DATE SIGNED 2-6-91 |
| CERTIFICATION OF BIRTH | 13 CERTIFY THAT THE CHILD WAS BORN ALIVE AT THE PLACE AND ON THE DATE AND HOUR STATED ABOVE | 13A ATTENDANT OR CERTIFIER—SIGNATURE Terrell M. Bond | 13B LICENSE NUMBER C30412 | 13C DATE SIGNED 2-5-91 |
| | 13D TYPED NAME, TITLE AND MAILING ADDRESS OF ATTENDANT TERRELL BOND M.D., 801 N. TUSTIN AVE. 407, SANTA ANA | 13E TYPED NAME AND TITLE OF CERTIFIER IF OTHER THAN ATTENDANT | | |

| | | | | |
|---|---|---|---|---|
| LOCAL REGISTRAR | 15A DATE OF DEATH | 15B STATE FILE NO. STATE USE ONLY | 16 LOCAL REGISTRAR R. Cox Abby DeCorona | 17 DATE ACCEPTED FOR REGISTRATION FEB 14 1991 |

698442

001258

**CERTIFIED COPY OF VITAL RECORDS**

STATE OF CALIFORNIA
COUNTY OF ORANGE }ss

DATE ISSUED **NOV 20 2000**

This is a true and exact reproduction of the document officially registered and placed on file in the office of the Orange County Clerk-Recorder.

This copy not valid unless prepared on engraved border displaying seal and signature of Clerk-Recorder.

Gary L. Granville

GARY L. GRANVILLE, Clerk-Recorder
ORANGE COUNTY, CALIFORNIA

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE



EX 69    1176

# COUNTY OF ORANGE
## SANTA ANA, CALIFORNIA

104-

### CERTIFICATE OF LIVE BIRTH
### STATE OF CALIFORNIA
USE BLACK INK ONLY

STATE FILE NUMBER

I-91-30-04206

LOCAL REGISTRATION DISTRICT AND CERTIFICATE NUMBER

| | | | |
|---|---|---|---|
| THIS CHILD | 1A NAME OF CHILD—FIRST GIVEN: ERNESTO | 1B MIDDLE: ----- | 1C LAST: CUEVA-ALFARO |
| | 2 SEX: MALE | 3A THIS BIRTH SINGLE, TWIN, ETC: TWIN | 3B IF MULTIPLE, THIS CHILD 1ST, 2ND, ETC: 2ND | 4A DATE OF BIRTH—MONTH/DAY/YEAR: 1991 | 4B HOUR—24 HOUR CLOCK TIME: 1324 |
| PLACE OF BIRTH | 5A PLACE OF BIRTH—NAME OF HOSPITAL OR FACILITY: WESTERN MEDICAL CENTER | 5B STREET ADDRESS—(STREET) WHERE OR LOCATION: 1001 NORTH TUSTIN AVENUE | | |
| | 5C CITY: SANTA ANA | 5D COUNTY: ORANGE | 6 PLANNED PLACE OF BIRTH: HOSPITAL | |
| FATHER OF CHILD | 6A NAME OF FATHER—FIRST GIVEN: MANUEL | 6B MIDDLE: ----- | 6C LAST: CUEVA | 7 STATE OF BIRTH: | 8 DATE OF BIRTH—MONTH/DAY/YEAR: 07-23-68 |
| MOTHER OF CHILD | 9A NAME OF MOTHER—FIRST GIVEN: MARIA | 9B MIDDLE: DEL ROSIO | 9C LAST: ALFARO | 10 STATE OF BIRTH: CA | 11 DATE OF BIRTH—MONTH/DAY/YEAR: 10-12-71 |
| PARENT'S CERTIFI-CATION | 12A PARENT OR OTHER INFORMANT—SIGNATURE: Maria Alfaro | | 12B RELATIONSHIP TO CHILD: mother | 12C DATE SIGNED: 2-6-91 |
| CERTIFI-CATION OF BIRTH | 13A ATTENDANT OR CERTIFIER—SIGNATURE/DEGREE OR TITLE: Terrell Bond | | 13B LICENSE NUMBER: C36412 | 13C DATE SIGNED: 2-5-91 |
| | 13D TYPED NAME, TITLE AND MAILING ADDRESS OF ATTENDANT: TERRELL BOND M.D., 601 N. TUSTIN AVE., 407, SANTA ANA | | 13E TYPE NAME AND TITLE OF CERTIFIER IF OTHER THAN ATTENDANT: | |
| LOCAL REGISTRAR | 15A DATE OF DEATH | 15B STATE FILE NO. STATE USE ONLY | 16 LOCAL REGISTRAR—SIGNATURE | 17 DATE ACCEPTED FOR REGISTRATION: FEB 14 1991 |

698441

001260

### CERTIFIED COPY OF VITAL RECORDS
STATE OF CALIFORNIA } ss
COUNTY OF ORANGE

DATE ISSUED NOV 20 2000

This is a true and exact reproduction of the document officially registered and placed on file in the office of the Orange County Clerk-Recorder.

GARY L. GRANVILLE, Clerk-Recorder
ORANGE COUNTY, CALIFORNIA

This copy not valid unless prepared on engraved border displaying seal and signature of Clerk-Recorder.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE



EX 70    1177

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# COUNTY OF ORANGE
## SANTA ANA, CALIFORNIA



104 -

**CERTIFICATE OF LIVE BIRTH**
**STATE OF CALIFORNIA**

F-07-30-027714

| | | | | |
|---|---|---|---|---|
| THIS CHILD | 1A. NAME OF CHILD—FIRST **Daniel** | 1B. MIDDLE ---- | 1C. LAST **Alfaro** | |
| | 2. SEX **Male** | 3A. THIS BIRTH, SINGLE, TWIN, ETC. **Single** | 4A. DATE OF BIRTH 1987 | 4B. HOUR **1974** |
| PLACE OF BIRTH | 5A. PLACE OF BIRTH **FHP Hospital** | 5B. STREET ADDRESS **9920 Talbert Ave.** | | |
| | 5C. CITY OR TOWN **Fountain Valley** | 5D. COUNTY | | |
| FATHER OF CHILD | 6A. NAME OF FATHER—FIRST ---- | 6B. MIDDLE ---- | 7. STATE OF BIRTH | 8. AGE OF FATHER --- |
| MOTHER OF CHILD | 9A. NAME OF MOTHER—FIRST **Maria** | 9B. MIDDLE **Rosio** | 9C. STATE OF BIRTH **CA** | 11. AGE OF MOTHER **15** |
| PARENT'S CERTIFICATION | I CERTIFY THAT I HAVE REVIEWED THE STATED INFORMATION AND THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE | | Mother | 12C. DATE SIGNED **08-17-87** |
| ATTENDANT'S CERTIFICATION | I CERTIFY THAT I ATTENDED THIS BIRTH AND THAT THE CHILD WAS BORN ALIVE AT THE HOUR, DATE AND PLACE STATED | | C06116 | 17C. DATE SIGNED **9-17-87** |
| | 14. REQUEST OMISSION FROM SOLICITATION LISTS | **Kimberly Kelly, M.D., 9920 Talbert Ave., Fountain Valley** | | |
| LOCAL REGISTRAR | 15. DEATH—ENTER DATE OF DEATH | 16. LOCAL REGISTRAR—SIGNATURE | 17. DATE ACCEPTED FOR REGISTRATION **SEP 24 1987** | |

697528

001262

**CERTIFIED COPY OF VITAL RECORDS**

STATE OF CALIFORNIA
COUNTY OF ORANGE } SS

DATE ISSUED **NOV 17 2000**

This is a true and exact reproduction of the document officially registered and placed on file in the office of the Orange County Clerk-Recorder.

**GARY L. GRANVILLE, Clerk-Recorder**
ORANGE COUNTY, CALIFORNIA

This copy not valid unless prepared on engraved border displaying seal and signature of Clerk-Recorder.



ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

MEMBER NUMBER

MEMBER NAME 5 33 36 89 6

5-676-00
5-676-00  ALFARO ROSIO R

GROUP  5  DATE OF BIRTH 6 87  REL/STATUS  FAMILY NUMBER 10/12/71
DEPT/BR

CIGNA Healthplans of California
a CIGNA company



# INTRODUCTORY INFORMATION
## DEPARTMENT OF MENTAL HEALTH

| NAME: | | | | Birthdate: |
|---|---|---|---|---|
| Last ALFARO | First ROSIO | Nickname | | ███ /71 |

| ADDRESS: | | | Age: | Sex: |
|---|---|---|---|---|
| Street ██████ | Anaheim Calif. 92804 | | 14 | F |

| City | State | Zip Code | Home Phone: |
|---|---|---|---|
| 5-33-36-80-6 | | | 901-0592 |

MEMBERSHIP:  ☐ SUBSCRIBER  ☐ DEPENDENT  ☐ PRIVATE PATIENT

Group Code:  Membership Number: 5 33 36 89 6

| FAMILY MEMBERS (AND ANY OTHER PERSONS LIVING IN THE HOME): | | | | | | |
|---|---|---|---|---|---|---|
| FIRST & LAST NAME | RELATIONSHIP | AGE | MARITAL STATUS (Dates) | OCCUPATION | EMPLOYER OR SCHOOL | WORK PHONE |
| Rosio | PATIENT | 14 | | | Loara High | |
| Silvia | sister | 12 | | | Ball Jr. High | |
| Jose Luis | dad | 34 | | | | |
| Luis | brother | 5 | | | James Madison | |
| Silvia | mother | 32 | | | Disney Inadhotel | 778-6600 |
| | | | | | | |
| | | | | | | |

Continue on back if needed.

Referred By:  ☐ Self  ☐ R-L Dr.  ☐ Pvt. Dr.  ☐ Other:   Name: Rosio Alfaro   Office:

### READ CAREFULLY AND SIGN:

| I understand I will be charged for missed appointments ...ss I cancel 24 hours before the time of my appointment. | Date: |
|---|---|
| ...ereby give my consent for my minor son/daughter to be treated. | Date: |

Signed: Rosio Alfaro   Relationship:

160-31 5/84

001264

PAGE 2
Introductory Information
Dept. of Mental Health

In your own words describe the problems for which you seek help.

PROBLEMS AND SYMPTOMS

Slamming Cocaine -
3 yrs ago

WHEN AND HOW
  PROBLEM STARTED

PREVIOUS TREATMENT

  HOSPITAL

  TESTING

  THERAPY

MEDICAL HEALTH

PRESENT AND PAST
  MEDICATIONS

TYPE OF HELP WANTED

Continue on back if needed.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**FOR OFFICE USE ONLY**

| Contacted by: ☐ Self ☐ Spouse ☐ Parent | ☐ Doctor ☐ Other: | Disposition: ☐ Crisis ☐ Eval. ☐ Wait List ☐ Ref. Out |
|---|---|---|
| Assigned to: | | |
| | Fee: | |
| Assigned by:            Date: | Intake by:              Date: | |
| ____ion Comments: | | |

160-31

001265

Rosa Alfaro - (14)

Slamming Cocaine 3 mo ago (2-3x wk-
Parent found out Sunday -
Tried to run away Sunday
and Monday -

likes to use - ½ hr -

Uses w/ older ♀ - 23 -

in home
Mom, Dad - grandparents
♀12   ♂
    6

Husband Alcoholic - Drinks daily -
Drunk almost all time - mad
2 yrs ago - hospital 10 days
jail - he refused treatment
♂ work - he gets fired, quits

Mo Disneyland Hotel Supervisor.

001266

Group Number: 5676-00  Member Number: 53336896

CIGNA Healthplans of California
a CIGNA company

Member Name: ALFARO Tosio

Family Number

Sex Status

Date of Birth

Department

Date

**CIGNA**

**Progress Notes**

10/29/95  14 yr old Mex Am ♀ with 3 month history of injecting cocaine. Pt has been using with adult friends, missing school. Mother recently found out of a lot of usage.

Pt is sullen & has a negative attitude → sober, attending school etc.

Pt's father is chronic alcoholic who drinks all day every day —

Entire family, including 2 younger sibs, live with maternal grand-parents.

Pt's mother lives w/ pt — only functioning adult in home — supervisor at Disneyland Hotel.

Mother feeling helpless re daughter & husband — angry at husband as he refuses to get help.

Imp: Cocaine Abuse (injecting) in 14 yr old ♀

Plan: (1) Mother referred to Al-Anon
(2) Mother & Daughter to attend Family group Wed

signature LCn

001267

EX 72   1182

CIGNA Healthplans of California
a CIGNA company

**CIGNA**

AFTER HOURS STAFF _Louis_

DATE/DAY _10/23/85_   TIME _900 pm_   _Anaheim, Ca 92804_

ERRAL SOURCE _Dr. Jungwirth/Margolin_   ON CALL ENCOUNTER FORM
_TX# (714) 991-0502_

PATIENT'S NAME _Rosio Alvaro_

GROUP # _30876000_   MEMBER'S # _533368896_

DOB _█████ 71_   SOCIAL SECURITY # _____

CIGNA PERSONNEL _Janis McIntosh_
(NAME & CTR.) _Westminster Center MH_

CHIEF COMPLAINT _Pt ♀ 14yr ♀ abusing marie. Mother (who
is Spanish speaking only) discovered
daughter this pm and family fight ensued.
Pt seen by Dr Jungwirth, who states natural
steps clear. Pt has been using IV cocaine
3 months also smokes marijuana. Denies
alcohol._

SUICIDAL/
HOMOCIDAL _Denied_

IDEATION _Family problems, Pt unable to talk freely_

FRIEND/REL. INVOLVED _Mother_

ASSESSMENT _Pt minded quiet and subdued, willing to see CD
specialist_

DISPOSITION _Mother & patient referred to Janis McIntosh
for CD evaluation then _/10/28/85_

_____ m. fac
**CD SPECIALIST**

001268

MEETING DAY ~~AND~~ TIME: 4:30 PM

MEMBERS:

1. _Charlru P_        6. _Keith J_
2. _Arlene P_         7. _____
3. _Lou X_            8. _____
4. _Rosio A_          9. _____
5. _Sylvia A_         10. _____

THEME OF MEETING:

Rosio - new member - discussing
"mainlining" Cocaine
Charlne doing well - some power
Issues w/ mother

Notes for session and/or focus for next meeting:

~~Sophie~~ Rosio - agreed to attend
2-3 CA mtgs/wk

THERAPIST: _____  Nov

001269

MEETING DAY AND TIME

MEMBERS:

1. _Brian Earde H_ —
2. _John R_        N/S
3. _Charlene R_
4. _Keith O_
5. _James B_

send letters. _Juston C_ N/S

7. _Rosia A._
8. _Silvia A._
9. _____
10. _____

THEME OF MEETING:

_Introduction_

_Word Clarification & Different_
_Meanings ,_

Notes for session and/or focus for next meeting:

_Good Session Verbal_
_Clarification - Different Views —_
_Song identifications & Meaning_

THERAPIST: _____

DC1270

Member Number

533 36896

Group Number
5-676-00

Member Name
ALFARO ROSIO

Family Number

Sex   Status

Date of Birth
-71

Department   H.O.C. #

Date

CIGNA Healthplans of California
a CIGNA company

**CIGNA**

**Progress Notes**

11/5/85   Saw for Message   JMC

HMO-8553                                                                0651  1.84

001271

MEETING DAY AND TIME: _11/20/85_

MEMBERS:

1. _Brian H et_
2. _Sandra H et_
3. _John T R/S_
4. _Maxine R n/s_
5. _Charlene R_

6. _Lewis R_
7. _Keith R_
8. _James B n/s_
9. _Connie B n/s_
10. _Nerene B n/s_
11. _Justin C n/s_
12. _Rosio C_
13. _Silvia C daughter_
14. _Silvia C mother_

THEME OF MEETING:

_Thanks giving plans._
_Honesty in family_

Notes for session and/or focus for next meeting:

_Rosio y Silvia she is not_
_complying with verbal contracts._
_(may need written contract)._
_Open minded discussion of_
_Communication blocks in family._

THERAPIST: _Jim McFitch / Alex Oliver_

001272

MEETING DAY AND TIME: _11/27/85_

MEMBERS:

1. _Sandra H_
2. _Brian H_
3. _Arlene R_ _n/s_
4. _Keith Q_
5. _James B_ _n/s drop_
   _Dr. Kaufman_

6. _John Taylor_ _n/s drop_
7. _Justo C_ _n/s drop_
8. _Rosa a_
9. _Silvia a_
10. _Silvia a_ _(mother)_
11. _Roslyn J_

THEME OF MEETING:

_Film 8p_
_Alcoholism + The Family_

Notes for session and/or focus for next meeting:

THERAPIST: _J. McIntosh CAC_

001273

Same Quality
As
Original

# TELEPHONE ENCOUNTER

100-25

NOTE: This form is part of the patient's progress notes as soon as response has been made forward to medical

| Doctor's Name: | Date | Time | am pm | Taken By: |
| Patient's Name: | Member No. | Phone No. | Time Avail. for From____to____ |

Incoming Message:

☐ LAB RESULT:
☐ X—RAY RESU   11/29/78
☐ Rx REFILL   al records.

Return Call: ___ am/pm   RESPONSE:

Rtn. Call am pm

LTS

pm

11-29-85

made appt.
at 9 AM

pregnant ?

Carol Why
LAMH

M.D.

001274

EX 72   1189

Same Quality
As
Original

## TELEPHONE ENCOUNTER

100-25   11/29/78

NOTE: This form is part of the patient's progress notes, as soon as response has been made forward to medical records.

| ctor's Name. | | Date | Time | am pm | Taken By |
|---|---|---|---|---|---|
| ent's Name: | | Member No. | Phone No. | Time Avail. for Rtn. Call From____ to____ am pm |

oming Message:

- [ ] LAB RESULTS
- [ ] X—RAY RESULTS
- [ ] Rx REFILL

urn Call: ____ am pm   RESPONSE:

pregnant ?

M.D.

0C1275

APPOINTMENT LOG

CIGNA Healthplans of California
a CIGNA company   *ALFARO Rosio*

CIGNA

Number of
free visits _____

Charge _____

Drugs _____

| Date | Family Member (s) | Cumulative Visit Value | Visit Type | Date | Family Member (s) | Cumulative Visit Value | Visit Type |
|------|-------------------|------------------------|------------|------|-------------------|------------------------|------------|
| 10/29/8 | Rosio | 1 | Int | | | | |
| 11/6/8 | Rosio/Sylvia | 2 | Fam Grp | | | | |
| 11/13 | '' | 3 | Grp | | | | |
| 11/27 | Rosio/Sylvia | 4 | Indiv | | | | |
| 11/30 | Rosio/Sylvia/Sylvia | 5 | | | | | |
| 12/4 | '' '' '' | 6 | | | | | |
| 12/ | | 7 | | | | | |

50-26   6/79

OG1276

CIGNA HealthPlans of California   *GAM*
a CIGNA company.                *10-29*
                                        *5. 33  36  89  6*   *80% 1st 10 day*
10000 Warner Avenue  *100%* — 5-6.76-00                      *100% thereafter*
Suite 101                    5-676-00   ALFARO ROSIO R       *A/D - Rehab*
Fountain Valley, CA 92708
(714) 963-6005                  5-333-687-0  FC      *,71*
*80% — 5-451-00*
Department of Mental Health        TELEPHONE CONTACT SHEET

Medi-Cal or Medicare # _____          Date _____

Subscriber _____              Membership # _____
(if not patient)
                                                  Group # _____
Effective date _____
                                                  Soc. Sec.# _____

                                                  HCC _____ Age _____ Sex _____

Name _____                   Birthdate _____
                                                  *714*
Address _____                   Telephone *991 0592*
                                                  *Call afternoon*
_____ Zip _____                 Work Telephone *778 6600*
                                                  *Silvia*  *,1351*
Who called *Mother Silvia*

Referred by _____

Reason for call _____

_____

_____

_____

_____

_____

_____

Disposition _____

_____

_____

_____

_____

_____

                          Therapist _____

001277

**INA**
and Ross Loos Healthplans

**Alcohol & Drug Services**
**Initial Contact**

| ICC Westminster | Physician / Therapist MSLr | Phone / Ext. ( ) | |
|---|---|---|---|
| Patient's Last Name | First Rosa | MI | Social Security No. |
| Address Tomasa Ln | | Phone (714) 891-0592 | |
| City - State - Zip Code Santa Ana Ca 92706 | | County Orange | |
| Coverage ☐ Inpatient ☐ Outpatient | Verified By | Membership No. | Group Code |

| 1. Contact Date | 2. Birth Date | 3. Sex ☐ Male ☐ Female |
|---|---|---|

**4. Ethnicity or race: (Check one by observation)**
- ☐ 1 White
- ☐ 2 Black
- ☐ 3 Oriental
- ☐ 4 Mexican-American
- ☐ 5 Puerto Rican
- ☐ 6 Other Spanish-American
- ☐ 7 American Indian/Alaskan Native
- ☐ 8 Other _____ (Specify)

**5. Place of initial contact:**
- ☐ 1 Detox unit
- ☐ 2 L.A. County A&D Serv
- ☐ 3 Orange County A&D Serv
- ☐ 4 Hospital emergency room
- ☐ 5 Hospital ward
- ☐ 6 HCC
- ☐ 7 Home / Phone
- ☐ 8 Other _____ (Specify)

**. Type of Addiction:**
- ☐ 1 Alcohol _____
- ☐ 2 Drug _____ (Specific Drug)
- ☐ 3 Poly Drug _____ (Specific Drug)

**7. Your estimate of potential client's condition: (Check one)**
- ☐ 1 Sober
- ☐ 2 Intoxicated, but coherent
- ☐ 3 Intoxicated, not coherent
- ☐ 4 Withdrawal, without DT's
- ☐ 5 Withdrawal, with DT's
- ☐ 6 Not ascertainable

**8. Person accompanying potential client at time of initial contact.**
(If more than one, determine who was responsible for getting client there)
- ☐ 1 No one (alone)
- ☐ 2 Spouse
- ☐ 3 Other family member Friend / Co-worker
- ☐ 4 Clergy
- ☐ 5 Social Worker / Nurse
- ☐ 6 Other _____ (Specify)

**9. What Agency or who referred client to this A & D Service?** _____

**10. Is this referral related to substance use and driving?**
- ☐ 1 Yes ☐ 2 No ☐ 3 Don't know

**11. Previous alcohol or drug treatment?**
- ☐ 1 Yes ☐ 2 No
(a) How many times has client received treatment during the past 5 years? Number _____
(b) Were any of these times through INA and Ross Loos?
- ☐ 1 Yes ☐ 2 No
(c) DX: _____
(d) Where: _____

**12. Disposition**
(a) What was the disposition of the potential client? (Check one)
- ☐ 1 Waiting list for intake
- ☐ 2 Crisis intervention
- ☐ 3 Client refused intake (Go on to 13a)
- ☐ 4 Intake, Service Status (Go on to 13a)
- ☐ 5 Hospitalization

**13. Referral**
(a) Was the client referred elsewhere?
- ☐ 1 Yes
- ☐ 2 No
(b) If YES: Where? _____ (Specify)
(c) ☐ Inpatient ☐ Outpatient
(d) How many days authorized? _____

**Comments** _____

_____

_____

_____

The information entered on these forms will be handled in the strictest confidence and no individual patient records containing information concerning the identity of the client will be released to unauthorized personnel.

0220 7/28   White - Chart   Canary - Orange County A&D Serv.   Pink - L.A. County A&D Serv.   Goldenrod - Extra copy

001278