DECLARATION OF LISA Di MEO

I, LISA ALLYN DiMEO, hereby declare:

1. I am a forensic specialist trained in bloodstain pattern analysis; latent print examination and identification, shoeprint and tire tread impression evidence, and crime scene investigation. I am the owner of Arcana Forensic Services, Inc. located in La Mesa, California. I hold an undergraduate degree in criminal justice from Chapman University. From 1979 through 1994, I was employed as a deputy for the San Diego County Sheriff's Department. During the six years I was assigned to the patrol division between 1981 and 1987, I responded to radio calls to investigate crimes and crimes scenes, process physical evidence and prepare reports. From 1990 through 1994 I was assigned to the Sheriff's Regional Crime Laboratory where I worked as a forensic specialist, specializing in latent print analysis and impression evidence examinations. My duties included crime scene investigation, collecting and processing physical evidence for latent prints and trace evidence, latent print identification, shoeprint and tire tread impression analysis, physical comparisons and forensic photography. From 1997 to 2002, I worked as a private contractor for the United States Department of Justice, Immigration and Naturalization Service as a fingerprint identification specialist. I hold certifications from the International Association for Identification as a Latent Print Examiner and Senior Crime Scene Analyst. These credentials require the completion of on-going formal forensic training and testing.

2. I have conducted physical evidence examinations for over twenty-five years. I have evaluated crime scene evidence both for the prosecution and defense. I have

testified for both the defense and prosecution in Superior Courts in several states, and in the United States District Court, Southern District of California.

3. At the request of petitioner's counsel in the case of In re Maria Del Rosio Alfaro, District Docket Number CV07-7072-CJC, I reviewed crime scene photographs, police reports, and forensic reports regarding shoeprint impression evidence and fingerprint analysis provided by the Los Angeles Federal Public Defender. I also personally examined several trial exhibits retained by the Orange County Superior Court under their Case No. C-82541 on February 13, 2009.

4. The victim in this case, 9-year old Autumn Wallace, was found deceased on the floor of the master bathroom within her residence, with multiple stab wounds to her torso and head. There was ransacking in the home, and numerous items of property and clothing were reported stolen. A witness reported seeing a light brown older Chevrolet Monte Carlo backed into the victim's driveway, with two Hispanic male adults and a small child in front of the residence on the afternoon of the murder. Shoeprint impressions were documented in the soil near the front door of the residence, and bloody shoeprints were recovered from the bathroom area near the victim's body. The scene was processed for fingerprint evidence, including the surface of a microwave oven that had been moved by the suspect(s). A search of the latent prints collected in this case resulted in the identification of the Petitioner, Maria Del Rosio Alfaro. Articles of clothing reportedly associated with Ms. Alfaro were seized and examined. These items included a pair of white hi-top L.A. Gear women's tennis shoes, a pair of black denim jeans, and a black short-sleeved T-shirt, which all appeared to have bloodstains.

The tread pattern of the L.A. Gear shoes matched the bloody shoeprints observed in the victim's bathroom.

5. In reviewing the trial exhibits at the Orange County Courthouse I examined and photographed partial bloody shoeprint impressions that were present on sections of linoleum flooring that had been collected from the bathroom scene (Exhibits 93, 94, 95 and 129). I also examined a pair of white L.A. Gear hi-top women's tennis shoes (Exh 66). As I attempted to make a comparison quality impression of the outsole pattern of the tennis shoes by non-destructive means, I was stopped by the exhibit custodian and told I had to have a court order. I was prevented from properly documenting the shoeprint evidence, and was therefore unable to conduct an independent forensic examination of the evidence, and provide an opinion to Petitioner's counsel.

6. I observed a second footwear pattern on the piece of linoleum flooring marked #129 that exhibited a herringbone, or zigzag pattern. The second pattern was not made in blood, and did not match the L.A. Gear tread. A partial L.A. Gear print pattern in blood was deposited over the top of the zigzag pattern. The investigators at the scene had also observed this second impression. They checked all the shoes at the residence and those worn by other personnel, but were unable to identify the source of the prints.

7. In reviewing the photographs of the shoeprint impressions recovered from the soil in front of the victim's residence, I noted two different shoeprint patterns. Several partial prints were observed that exhibited a zigzag pattern. Also noted were prints made by a different design of athletic shoes. These shoeprints are in the area of the front door where witnesses reported seeing the occupants of the Monte Carlo. The source of

these impressions was never determined. However, a comparison between the partial zigzag shoe tread pattern of the imprints documented outside the residence to the zigzag prints on the floor in the bathroom correspond in size, shape and design to each other, and may have originated from the same source shoes. Several shoe manufacturers use the herringbone or zigzag tread pattern within their shoe designs. The manufacturer of this shoe that made these impressions cannot be determined by the limited information in the partial prints documented at the scene.

8. I examined and photographed the pair of black "Sivan" women's denim jeans marked as Exhibit 67. Numerous self-adhesive labels were present on areas of the pant' exterior. Some of the labels had fallen off the pants and were found loose within the evidence bag. The original locations of the labels cannot be determined. Laboratory personnel had cut out numerous small sections of the fabric on the front of the pant legs, and the swatches were not available for my examination. I was unable to conduct an independent examination of the areas that were removed from the pants, or determine whether the swatches bore bloodstains or other foreign materials. Assuming these were areas that bore bloodstains, I cannot provide Petitioner's counsel with any forensic analysis of their size, shape or distribution, or manner of deposition without personal observation.

9. Also examined was a black short-sleeved "Stedman" t-shirt (Exh 84). Large areas of the front of this shirt that reportedly bore bloodstains were excised by laboratory personnel and not available for my examination. I am unable to provide Petitioner's counsel with any pattern analysis, or manner of deposition of these stains without personal observation

10. I examined and the Kenmore microwave oven that was recovered at the scene (Exh 64). I was prepared to process the microwave for evidence of latent prints; but was not permitted by the exhibit custodian to do so without a court order. I photographed the microwave and returned it to its evidence container.

11. Based upon my examination of the written reports and photographic materials provided to me in this case, I determined that additional identifiable latent prints from disturbed items in the residence remain unidentified in this case. Also, additional sets of shoeprint impressions were located in the front of the residence where the unknown male subjects were lingering, and within the scene adjacent to the victim's body, that have never been identified or accounted for.

I declare under penalty of perjury the foregoing is true and correct. Executed this 25 day of February at La Mesa, California.

_L. allyn De_
LISA ALLYN Di MEO